## UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF MICHIGAN
## NORTHERN DIVISION

**DONALD J. ROBERTS, II, and**

**GUN OWNERS OF AMERICA, INC.,**

        **Plaintiffs,**

**v.**

**U.S. JUSTICE DEPARTMENT,**

**BUREAU OF ALCOHOL, TOBACCO, FIREARMS**
**AND EXPLOSIVES, and**

**REGINA LOMBARDO, in her official capacity as**
**Acting Director, Bureau of Alcohol, Tobacco,**
**Firearms, and Explosives,**

        **Defendants.**

**Case No. _____**

**Hon.**

_____

Kerry L. Morgan (P32645)
PENTIUK, COUVREUR & KOBILJAK, P.C.
2915 Biddle Avenue, Suite 200
Wyandotte, MI 48192
Main: (734) 281-7100
F: (734) 281-2524
KMorgan@pck-law.com
*Counsel for Plaintiffs*

Robert J. Olson
William J. Olson
Jeremiah L. Morgan
WILLIAM J. OLSON, P.C.
370 Maple Avenue West, Ste 4
Vienna, VA 22180
T: (703) 356-5070
T: (540) 450-8777
F: (703) 356-5085
wjo@mindspring.com
*Of Counsel*

_____

1

## COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

Now come Plaintiffs, DONALD J. ROBERTS, II, and GUN OWNERS OF AMERICA, INC., by and through Counsel, and for their Complaint, state as follows:

Plaintiffs bring this action seeking a permanent injunction to return to the *status quo* as it existed prior to Defendants' Michigan Public Safety Advisory of March 3, 2020, which rescinded a prior ATF determination that, when transferring a firearm, Michigan federal firearm licensees ("FFLs") may accept a Michigan Concealed Pistol License ("CPL") in lieu of obtaining a background check from the FBI's National Instant Background Check System ("NICS"). Plaintiffs seek permanent injunctive relief restraining Defendants from enforcing the mandates of ATF's Michigan Public Safety Advisory. Finally, Plaintiffs seek a declaratory judgment that Michigan Code 28.426(2) qualifies as a matter of law for the exception provided for in 18 U.S.C. § 922(t)(3),[1] that Defendants' Michigan Public Safety Advisory is invalid because it is *ultra vires*, exceeds the scope of Defendants' authority, violated the Administrative Procedures Act, and that Defendants have no legal authority under federal law unilaterally to disqualify Michigan and its residents from the exemption provided for in § 922(t)(3).

---

[1] 27 CFR § 478.102 is Defendants' regulation implementing 18 U.S.C. § 922(t)(3), which mirrors the statute in pertinent part.

## JURISDICTION AND VENUE

1.     The Court has jurisdiction over this action pursuant to 5 U.S.C. § 702 and 28 U.S.C. § 1331. This Court has authority to grant the remedy Plaintiffs seek under 28 U.S.C. §§ 2201 and 2202 and 5 U.S.C. § 706.

2.     Venue is proper in this district pursuant to 5 U.S.C. § 703 and 28 U.S.C. § 1391(e) and 1391(b)(2).  The events giving rise to this claim occurred in Roscommon County, Michigan.

## PARTIES

3.     Plaintiff, Donald J Roberts, II, is a United States citizen. The events or omissions giving rise to this suit occurred in Roscommon County, Michigan, a county within this district as more fully articulated in Plaintiff's attached Declaration.  He is a law-abiding person and has no disqualification that would prevent him from acquiring, keeping, or bearing arms.  Mr. Roberts is a member of Gun Owners of America, Inc.  Mr. Roberts is a resident of McBain, Michigan.  He possesses a valid unexpired Michigan CPL issued March 16, 2016 and expiring February 24, 2021.  Were it not for the challenged agency action, Mr. Roberts would be able to use his Michigan CPL in lieu of a background check to purchase firearms at a federally licensed firearms dealer, as authorized by 18 U.S.C. § 922(t)(3).

4.     Plaintiff, Gun Owners of America, Inc. ("GOA"), is a California non-stock corporation with its principal place of business at 8001 Forbes Place, Springfield, VA 22151. GOA is organized and operated as a non-profit membership organization that is exempt from federal income taxes under IRC § 501(c)(4). GOA was incorporated in 1976 to preserve, protect, and defend the Second Amendment rights of gun owners. GOA has thousands of members and supporters, including residents of the Eastern District of Michigan, who possess Michigan CPLs, and who would use them to purchase firearms, but for the challenged agency action.

5.     Defendant U.S. Department of Justice ("DOJ") is an executive agency within the federal government of the United States. DOJ is headquartered at 950 Pennsylvania Avenue NW, Washington, D.C. 20530. DOJ is the agency responsible for enforcing federal firearms laws.

6.     Defendant Bureau of Alcohol, Tobacco, Firearms and Explosives ("ATF") is a component within DOJ, and is headquartered at 99 New York Avenue NE, Washington, D.C. 20226. ATF investigates violations of and enforces compliance with federal firearms laws, and instructs licensees and the public on the requirements for use of the NICS system, which is administered by the Federal Bureau of Investigation.

7.      Defendant, Regina Lombardo, is the Acting Director of ATF, currently the senior official at ATF, and thus is responsible for overseeing the agency's action challenged herein.

## STATEMENT OF FACTS

8.      On March 7, 2020, Plaintiff, Donald J. Roberts, II, visited a federal firearms licensee doing business as H&H Fireworks, Guns and Sporting Goods at 8979 W. Houghton Lake Dr., Houghton Lake, MI 48629, located in Roscommon County, Michigan, for the purpose of purchasing a shotgun with his unexpired Michigan CPL.  Upon inquiry and presentment of his CPL, he was advised that sale of the firearm using his unexpired Michigan CPL could not be completed unless he submitted to a FBI NICS background check consistent with the ATF's Michigan Public Safety Advisory ("Michigan PSA").  However, consistent with ATF instructions, the FFL refused to make the sale, and Mr. Roberts left the store without purchasing the firearm.

9.      18 U.S.C. § 922(t) mandates that a FFL may not transfer a firearm to an unlicensed person until the FFL first conducts a background check with the National Instant Criminal Background Check System ("NICS").

10.      However, § 922(t)(3)(A) provides an exception to that requirement, if the transferee:

> has presented to the licensee a permit that—

(I) allows such other person to possess or acquire a firearm; and

(II) was issued not more than 5 years earlier by the State in which the transfer is to take place; and

(ii) **the law of the State provides** that such a permit **is to be issued** only after an authorized government official has verified that the information available to such official does not indicate that possession of a firearm by such other person would be in violation of law....  [Emphasis added.][2]

11.    On October 29, 1998, ATF sent an "OPEN LETTER TO ALL MICHIGAN FEDERAL FIREARMS LICENSEES," stating that "[t]he Michigan permit to purchase a handgun ... will [] qualify as an alternative to the NICS check...."[3]

12.    However, the 1998 letter noted that "the Michigan concealed weapons permit [does] not qualify...."

---

[2]  ATF's regulation at 27 CFR § 478.102 mirrors this language.
[3]  https://www.atf.gov/firearms/docs/open-letter/michigan-oct1998-open-letter-permanent-provisions-brady-law/download

13.     In 2005, Michigan changed its law.  2005 Mi. HB 4978 (Enacted, November 22, 2005) created a requirement that CPLs are not to be issued unless the state officials conduct a NICS check.

14.     On February 7, 2006, then-Attorney General of Michigan, Mike Cox, wrote a letter to Defendant ATF, to request ATF confirmation that the NICS exception applied to Michigan, based on the provisions of the newly-revised Michigan statute.  *See* Exhibit A.

15.     On March 24, 2006, Defendant ATF wrote to acknowledge its agreement with the Michigan Attorney General's assessment that the Michigan statute qualified for a NICS check exemption, and issued an "Open Letter to Michigan Federal Firearms Licensees" ("2006 Open Letter").  Exhibit A.

16.     ATF's 2006 Open Letter stated that, "Michigan's Concealed Pistol Licenses (CPLs) issued on or after November 22, 2005 will qualify as an alternative to a [NICS] check."

17.     ATF's 2006 Open Letter instructed Michigan FFLs that, when transferring firearms, they would be permitted to accept Michigan CPLs in lieu of running a NICS check.

18.     On March 3, 2020, ATF issued a "PUBLIC SAFETY ADVISORY TO ALL MICHIGAN FEDERAL FIREARMS LICENSEES" ("Michigan PSA"), which states that ATF's "March 24, 2006 [letter] is rescinded as of the date of this

letter...." Exhibit B.

19.    The Michigan PSA acknowledges that the language of MCL 28.426(2) still qualifies for a Section 922(t)(3) exemption, because the statutory text still requires a NICS check be run prior to the issuance of a Michigan CPL.

20.    Indeed, MCL 28.426(2) states, in pertinent part, that:

A county clerk shall not issue a license to an applicant under section 5b unless both of the following apply:

(a) The department of state police, or the county sheriff under section 5a(4), **has determined through the federal national instant criminal background check system that the applicant is not prohibited** under federal law from possessing or transporting a firearm.

(b) If the applicant is not a United States citizen, the department of state police has verified through the United States Immigration and Customs Enforcement databases that the applicant is not an illegal alien or a nonimmigrant alien. [Emphasis added.]

21.    However, the Michigan PSA claims that, "in spite of this specific statutory requirement, ATF recently received information ... that Michigan CPLs **have been**, and continue **to be** issued to certain applicants without a determination

8

by Michigan officials as to whether the applicant is prohibited under federal law from possessing or transporting firearms."  Emphasis added.

22.     In other words, although acknowledging that the Michigan statute on its face qualifies for a Section 922(t)(3) exemption, the Michigan PSA claims that the requirements of MCL 28.426(2) are not being adhered to **in practice** by state officials.

23.     For whatever reason, ATF's Michigan PSA does not purport to revoke the NICS exemption for Michigan Licenses to Purchase ("LTP"), but rather only the Michigan CPL, even though both licenses similarly require NICS checks prior to issuance.

24.     This is not the first such letter ATF has issued in recent months.

25.     On July 22, 2019, ATF previously issued a "Public Safety Advisory to All Alabama Federal Firearms Licensees" ("Alabama PSA"), which states that "ATF's [prior 2016] determination was based on the understanding that a full NICS check **would be** conducted...."[4]  Emphasis added.

26.     As with the Michigan statute, the Alabama statute clearly meets the Section 922(t)(3) requirement, as it mandates that a NICS check be run by a county sheriff prior to the issuance of a permit.  *See* Alabama Code § 13A-11-75.

---

[4]  https://www.atf.gov/file/137671/download

9

27.     However, as with the Michigan PSA, the Alabama PSA claims that the requirements of the Alabama statute are not being adhered to **in practice** by some local Alabama sheriffs.

28.     The Alabama PSA orders that "**effective immediately, FFLs in Alabama may no longer accept CCP permits as an alternative to a NICS check**." (Emphasis original.)

29.     On October 23, 2019, ATF also issued an "OPEN LETTER TO ALL MINNESOTA FEDERAL FIREARMS LICENSEES" ("Minnesota Letter") which states that Minnesota permits may no longer be used in lieu of the NICS system.[5]

30.     These actions taken against Alabama, Minnesota, and Michigan are consistent with a memorandum issued on January 16, 2020, by Andrew R. Graham, ATF's Deputy Assistant Director of Field Operations to "All Directors, Industry Operations," announcing a nationwide ATF "NICS Alternative Permit Sampling Initiative" ("2020 Memo"). Exhibit C.

31.     The 2020 Memo notes that "ATF has issued Open Letters recognizing that certain permits issued in 25 States meet the requirements of 922(t)(3)."

32.     The 2020 Memo claims that "it is important for ATF to evaluate whether prohibited persons have still been able to obtain and use them [carry permits] to acquire firearms without a NICS background check."

---

[5]  https://www.atf.gov/file/141161/download

33.     The 2020 Memo explains that "Field Operations is initiating a program in which IOIs [Industry Operations Investigators], during inspections of FFLs, will conduct a NICS re-check of a sampling of transactions where a State permit was used as an alternative to a NICS check...."

34.     The 2020 Memo then instructs that IOIs are to randomly sample ATF Forms 4473 obtained from completed transfers, and "conduct NICS re-checks" in order to determine if any transfers were made to prohibited persons.

35.     The 2020 Memo concludes that, by May 30, 2020, "each field division will send consolidated results...."

36.     Upon information and belief, as evidenced by its actions in the Alabama PSA, the Minnesota Letter, the Michigan PSA, and its 2020 Memo, ATF is implementing a new policy and has begun a campaign to frustrate Congressional intent and effectively negate the benefit to gun owners and dealers offered by 18 U.S.C. § 922(t)(3).

37.     Upon information and belief, ATF currently is undertaking a concerted effort to target all currently exempted states for unlawful elimination from the § 922(t)(3) exception.

38.     As evidenced by its 2020 Memo, part of ATF's campaign involves ordering its regulatory Industry Operation Investigators in various states, during inspections of dealers, to **randomly** (and in violation of federal regulation) run

11

NICS checks on persons who **in the past** purchased firearms using various states' concealed carry permits, in lieu of a NICS check.

39.     This ATF campaign is unlawful because, as the FBI makes clear, "[a]uthorized use of the NICS is limited to the purpose of obtaining information on whether receipt of a firearm by a **prospective transferee** would violate federal or state law.  FFLs, their officers, employees, agents, and/or other representatives are permitted to request background checks of the NICS **only for the authorized purpose**."[6]  Emphasis added.  As the FBI explains, "[a]ccessing or using the NICS or permitting access or use of the NICS by another, for any unauthorized purpose, is a violation of Federal law, for which sanctions may include criminal prosecution; a civil fine not to exceed $10,000; and subject to cancellation of NICS inquiry privileges."

40.     Indeed, 28 CFR § 25.6(a) states unambiguously that only "FFLs may initiate a NICS background check," and "only in connection with a proposed firearm transfer as required by the Brady Act."

41.     28 CFR § 25.6(j) outlines three enumerated exemptions from the prohibition on contacting NICS, the only potentially relevant one of which is "[r]esponding to an inquiry from the Bureau of Alcohol, Tobacco, Firearms, and Explosives in connection with a civil or criminal law enforcement activity...."

---

[6] https://www.fbi.gov/services/cjis/nics/enrollment-instructions-for-ffls

42.     ATF's 2020 Memo and "NICS Alternative Permit Sampling Initiative" does not constitute a "civil or criminal law enforcement activity,"[7] based on any investigation of wrongdoing by a dealer or specific purchaser.  Rather, this Initiative constitutes a random and suspicionless sampling of past sales in the hopes to disqualify states from the benefit of Section 922(t)(3).

43.     Neither the statute nor governing regulations permit ATF to run suspicionless FBI background checks on buyers related to past completed sales of firearms, any time the agency wishes, especially during compliance inspections of dealers.  That is not the purpose of the NICS system.

44.     Upon information and belief, ATF's 2020 Memo reveals a strategy designed to collect data to support ATF's predetermined mission, in open hostility to Congress' will as set out in Section 922(t)(3), by assembling data to be used only to achieve a *de facto* repeal of Section 922(t)(3) and force as many gun sales as possible to take place through the federal NICS system.

45.     Media and news sources have reported on various proposals by state and federal politicians to require "universal background checks."  To date, none of these proposals has been enacted into law at the federal level.

---

[7]  Similarly, 18 U.S.C. § 923(g)(1)(D) explains that, during compliance inspections of FFLs, ATF inspectors "shall not ... seize any records or other documents other than those records or documents constituting material evidence of a violation of law."

46.     Moreover, Plaintiffs aver that none of these proposals would be constitutional.

47.     Yet President Trump has indicated a willingness to "explore executive action" when it comes to gun control.[8]

48.     Upon information and belief, the ATF's Alabama PSA, Minnesota letter, Michigan PSA, and its 2020 Memo, represent the first steps in implementing ATF's agenda to force as many gun sales into the federal background check system as possible, moving toward a "universal background check" system achieved through administrative agency action rather than congressional legislation.

49.     Upon information and belief, the ATF campaign also constitutes part of an agency effort to create a prohibited national registry of gun owners, in violation of 18 U.S.C. § 926(a).

50.     Upon information and belief, ATF's Michigan PSA, Open Letter, and 2020 Memo represent an attempt to feed information about specific gun buyers and gun transfers into an illegal ATF database.

51.     Plaintiffs aver that 18 U.S.C. § 922(t)(3) does not authorize Defendants to investigate and exercise control over the concealed carry permitting process operated by the states.  Nor does federal law provide any authority to

---

[8]  https://www.politico.com/story/2019/08/05/trump-executive-action-guns-1448612

Defendants to disqualify or "revoke" any states' concealed carry permits from the Section 922(t)(3) exemption.

52.    Qualification for exception under 18 U.S.C. § 922(t)(3) is not based on whether state officials **in practice** conform their behavior to the requirements of state law in every instance.  Rather, Section 922(t)(3) was clearly written to base eligibility solely on whether state statutes meet certain requirements **as a matter of law**, which Defendants admit the Michigan statute does.

53.    Under Defendants' view of Section 922(t)(3), a single rogue or anti-gun sheriff or other law enforcement officer could thwart the intent of Congress and undermine the Section 922(t)(3) exception for an entire state, by failing to or refusing to adequately screen one or more candidates for concealed carry permits for a period of time.

54.    Defendant ATF's unauthorized and unlawful Michigan PSA has harmed and continues to harm Plaintiff Roberts, along with thousands of other Michigan CPL holders, many of whom (like Plaintiff Roberts) are members and supporters of GOA.

55.    As this case presents a pure question of law (whether the Michigan statute qualifies for the exception in Section 922(t)(3)), requires no factual determinations, and involves no technical or scientific issues, there is no deference due to the agency's purely legal conclusion that Michigan CPLs may not be used

in lieu of NICS.

56.     Defendants have provided no standard for Michigan's disqualification, and no reasoned (much less adequate) explanation for their arbitrary reversal in position, when neither the federal statute nor the Michigan law at issue has changed in any way.

## FIRST CAUSE OF ACTION

## (VIOLATION OF APA 5 U.S.C. § 706(2)(A))

## ARBITRARY, CAPRICIOUS, ABUSE OF DISCRETION,

## NOT IN ACCORDANCE WITH LAW

57.     Plaintiffs reallege paragraphs 1 through 56, as though fully set forth herein.

58.     Defendants' Michigan PSA constitutes "agency action" pursuant to 5 U.S.C. § 551(13) for purposes of review under the APA, 5 U.S.C. § 702.

59.     Defendants' Michigan PSA adopts erroneous legal conclusions and asserts administrative authority that is contrary to the plain language of the statute and regulation.

60.     Defendants' Michigan PSA constitutes a complete reversal of policy made without a reasoned explanation, and without application of any fixed standards.

61.    Defendants' Michigan PSA is arbitrary, capricious, an abuse of discretion, and otherwise not in accordance with the law in violation of 5 U.S.C. § 706(2)(A).   It also undermines a Congressional program set out in Section 922(t)(3).

62.    Plaintiffs are adversely affected because they are being and will continue to be harmed by Defendants' action, in that they are prohibited from using their Michigan concealed carry permits as a lawful and Congressionally authorized alternative to the NICS system.

## SECOND CAUSE OF ACTION

## (VIOLATION OF APA 5 U.S.C. § 706(2)(A))

## IN EXCESS OF STATUTORY JURISDICTION OR AUTHORITY

63.    Plaintiffs reallege paragraphs 1 through 62 as though fully set forth herein.

64.    Defendants' Michigan PSA is *ultra vires*, in excess of ATF's statutory jurisdiction or authority, in violation of 5 U.S.C. § 706(2)(C), as federal law does not grant the agency authority to administratively review and enforce compliance with the provisions of 18 U.S.C. § 922(t)(3).

## THIRD CAUSE OF ACTION

## (VIOLATION OF APA 5 U.S.C. § 706(2)(D))

## NOTICE AND COMMENT

65.    Plaintiffs reallege paragraphs 1 through 64, as though fully set forth herein.

66.    Defendants' Michigan PSA is a substantive or legislative rule because it purports to amend 27 C.F.R. § 478.102(d)(1)(iii) by imposing additional requirements beyond the "law of the State," changes the obligations and legal consequences for firearm purchasers and sellers in Michigan, and "effect[s] a change in existing law" because it "effectively amends a prior legislative rule." *Wilson v. Lynch*, 835 F.3d 1083, 1099 (9th Cir. 2016).

67.    Before a substantive rule like the Michigan PSA may take effect, the APA requires the agency to issue a notice of proposed rulemaking that includes "either the terms or substance of the proposed rule or a description of the subjects and issues involved" in order to "give an interested person an opportunity to participate in the rule making through submission of written data, views, or arguments."  5 U.S.C. §§ 553(b)(3) and (c).

68.    Defendants did not comply with this notice-and-comment requirement in promulgating the Michigan PSA.  Rather, defendants merely purported to

declare it to be applicable to all firearms sales by FFLs in Michigan effective on March 3, 2020

69.    The fact that Defendants labeled their substantive rule change a "Public Safety Advisory" does not excuse their violation of the APA or allow them to evade the notice-and-comment requirement of the APA.

70.    Defendants' action in promulgating the Michigan PSA has harmed and will continue to harm Plaintiffs and their members by impeding the ability of law-abiding Michigan residents to acquire firearms pursuant to the provisions of federal law.

## FOURTH CAUSE OF ACTION

## (VIOLATION OF 18 U.S.C. § 926(a))

## NO NATIONAL GUN REGISTRY

71.    Defendants are prohibited by 18 U.S.C. § 926(a) from creating a national registry of firearms, firearm owners, or firearm transfers.

72.    Federal law requires NICS checks for only a limited subset of firearm transfers, with no NICS check required for (among other things) many private sales, transfers between dealers, and FFL transfers with the transferee using a concealed carry permit under Section 922(t)(3).

73.    Defendants' Michigan PSA is an attempt to eliminate the Section 922(t)(3) exemption, force more firearm transfers into the NICS system, and

thereby collect information on more firearm buyers and transfers, in violation of the clear prohibition of Section 926(a).

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs request that the Court grant all appropriate relief, including:

a.   The issuance of a permanent injunction, halting Defendants' enforcement of the Michigan PSA.

b.   A declaratory judgment, pursuant to the Declaratory Judgment Act (28 U.S.C. §§ 2201-2202) or other applicable law, that holds unlawful and sets aside ATF's Michigan PSA, and declares that MCL 28.426(2) qualifies for the exception contained in 18 U.S.C. § 922(t)(3), and that the Michigan PSA exceeds the scope of Defendants' authority.

c.   An order permanently enjoining Defendants from enforcing the Michigan PSA, or in any other way interfering with use of the Michigan concealed carry permit in lieu of a NICS check.

d.   An order permanently enjoining Defendants from creation of a national registry of firearms, firearm transfers and/or firearm owners.

e.    An award of attorneys' fees and costs to Plaintiffs pursuant to Equal

Access to Justice Act, 28 U.S.C. § 2412(d)(1)(A), and any applicable

statute or authority; and

f.    Any other relief that this Court in its discretion deems just and proper.

 _/s/ Kerry L. Morgan_
Kerry L. Morgan (P32645)
Pentiuk, Couvreur & Kobiljak, P.C.
2915 Biddle Avenue, Suite 200
Wyandotte, MI 48192
Main: (734) 281-7100
F: (734) 281-2524
KMorgan@pck-law.com
*Counsel for Plaintiffs*

Dated: March 9, 2020

Robert J. Olson
William J. Olson
Jeremiah L. Morgan
William J. Olson, P.C.
370 Maple Avenue West, Suite 4
Vienna, VA 22180-5615
T: (703) 356-5070
T: (540) 450-8777
F: (703) 356-5085
wjo@mindspring.com (e-mail)
*Of counsel*
