UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

GUN OWNERS OF AMERICA, INC.
and DONALD J. ROBERTS, II,

                    Plaintiffs,

                                        Case No. **1:20-cv-10639-BC**

vs.

                                        District Judge Thomas L. Ludington
UNITED STATES JUSTICE               Magistrate Judge Patricia T. Morris
DEPARTMENT, *et al.*

                    Defendants.
_____

Kerry L. Morgan (P32645)            Robert J. Olson
PENTIUK, COUVREUR & KOBILJAK, P.C.  William J. Olson
2915 Biddle Avenue, Suite 200       Jeremiah L. Morgan
Wyandotte, MI 48192                 WILLIAM J. OLSON, P.C.
Main: (734) 281-7100                370 Maple Avenue West, Ste 4
F: (734) 281-2524                   Vienna, VA 22180
Kmorgan@pck-law.com                 T: (703) 356-5070
*Counsel for Plaintiffs*            T: (540) 450-8777
                                    F: (703) 356-5085
                                    wjo@mindspring.com
                                    *Of Counsel*
_____

## PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT

Pursuant to Federal Rule of Civil Procedure 56, Plaintiffs move for summary

judgment in their favor.  In support of their Motion, Plaintiffs respectfully submit the

accompanying Memorandum in Support of Plaintiffs' Motion for Summary Judgment

including a Statement of Undisputed Material Facts as to Which There Is No Genuine

Dispute.

                         Respectfully submitted,
                         PENTIUK, COUVREUR & KOBILJAK, P.C.

                         /s/ Kerry L. Morgan
        BY:  KERRY L. MORGAN (P32645)
                         2915 Biddle Avenue, Suite 200
                         Wyandotte, MI  48192
                         T: (734) 281-7100
Dated: September 25, 2020    Kmorgan@pck-law.com
                         *Counsel for Plaintiffs*

UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

GUN OWNERS OF AMERICA, INC.
and DONALD J. ROBERTS, II,

                    Plaintiffs,

                                        Case No. **1:20-cv-10639-BC**

vs.

                                        District Judge Thomas L. Ludington
UNITED STATES JUSTICE             Magistrate Judge Patricia T. Morris
DEPARTMENT, *et al.*

                    Defendants.
_____

Kerry L. Morgan (P32645)            Robert J. Olson
PENTIUK, COUVREUR & KOBILJAK, P.C.  William J. Olson
2915 Biddle Avenue, Suite 200       Jeremiah L. Morgan
Wyandotte, MI 48192                 WILLIAM J. OLSON, P.C.
Main: (734) 281-7100                370 Maple Avenue West, Ste 4
F: (734) 281-2524                   Vienna, VA 22180
Kmorgan@pck-law.com                 T: (703) 356-5070
*Counsel for Plaintiffs*            T: (540) 450-8777
                                    F: (703) 356-5085
                                    wjo@mindspring.com
                                    *Of Counsel*

_____

## <u>MEMORANDUM IN SUPPORT OF PLAINTIFFS'</u> <u>MOTION FOR SUMMARY JUDGMENT</u>

Now come Plaintiffs, by and through undersigned counsel, and for their

Memorandum in Support of Plaintiffs' Motion for Summary Judgment state as

follows:

i

## <u>TABLE OF CONTENTS</u>

ISSUES PRESENTED . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . iv

STATEMENT OF CONTROLLING AUTHORITY. . . . . . . . . . . . . . . . . . . . . . . v

INDEX OF AUTHORITIES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . vi

STATEMENT OF UNDISPUTED MATERIAL FACTS . . . . . . . . . . . . . . . . . . vii

INTRODUCTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

     A.    BACKGROUND ON SECTION 922(t)(3) . . . . . . . . . . . . . . . . . . . . . 1

     B.    APPLICATION OF SECTION 922(t)(3) TO MICHIGAN
           PERMITS. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

     C.    PROCEDURAL HISTORY BEHIND ATF'S CHANGED
           POSITION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

     I.    ATF'S MICHIGAN PSA CONFLICTS WITH THE PLAIN
         TEXT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

         A.    SECTION 922(t)(3) LOOKS ONLY TO THE FACE OF
             STATE LAW. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

         B.    ATF NOW LOOKS BEYOND STATE LAW TO STATE
             PRACTICES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

         C.    ATF'S NEW STANDARD CONFLICTS WITH THE
             PLAIN TEXT OF SECTION 922(t)(3). . . . . . . . . . . . . . . . . . 8

     II.    ATF'S SPECIFIC CRITICISMS OF MSP PRACTICES . . . . . . . . . 9

         A.    CONTROLLED SUBSTANCE USER. . . . . . . . . . . . . . . . . . 10

B.     MISDEMEANOR CRIME OF DOMESTIC VIOLENCE
            (MCDV). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

III.    MICHIGAN IS NOT A "POINT OF CONTACT" STATE — A
        MADE UP DESIGNATION FOR WHICH THERE IS NO
        STATUTORY AUTHORITY . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

IV.    THE FEDERAL GOVERNMENT HAS REFUSED TO HELP
        MICHIGAN WITH INTERPRETING FEDERAL LAW. . . . . . . . . 18

V.     ATF'S MICHIGAN PSA IS ARBITRARY AND CAPRICIOUS —
        A SOLUTION IN SEARCH OF A PROBLEM . . . . . . . . . . . . . . . . 21

        A.     THERE IS NO EVIDENCE OF A PROBLEM IN
                MICHIGAN. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

        B.     THERE IS SCANT EVIDENCE OF A PROBLEM
                ANYWHERE IN THE COUNTRY . . . . . . . . . . . . . . . . . . . . 22

CONCLUSION. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

## ISSUES PRESENTED

1.    Does MCL 28.426(2) qualify as a matter of law for the exception provided for in 18 U.S.C. § 922(t)(3)?

      Plaintiffs say "Yes"
      Defendants say "Yes"

2.    Whereas MCL 28.426(2) qualifies as a matter of law for the exception provided for in 18 U.S.C. § 922(t)(3), do Defendants have any authority to unilaterally disqualify the Michigan CPL from being used under that exemption, based on the theory that Michigan must investigate information *not* "provided by NICS" and create new disqualifying records that were *not* in "the NICS database"?

      Plaintiffs say "No"
      Defendants say "Yes"

3.    Is the NICS exception in 18 U.S.C. § 922(t)(3) to be determined based only on the face of MCL 28.426(2), without regard to consistency and perfect compliance in implementation of the state statute?

      Plaintiffs say "Yes"
      Defendants say "No"

## <u>STATEMENT OF CONTROLLING AUTHORITY</u>

MCL 28.426(2) qualifies as a matter of law for the exception provided for in 18 U.S.C. § 922(t)(3).  ATF has no authority under federal law to supplement that statute with additional criteria, or to examine how MCL 28.426(2) is being implemented in practice by Michigan authorities.

# INDEX OF AUTHORITIES

## STATUTES

18 U.S.C. Section 922 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1, *passim*

18 U.S.C. Section 925A . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

Brady Handgun Violence Prevention Act (Pub.L. 103–159, 107 Stat. 1536). . 1, 15

MCL 28.426(2). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3, 5

## REGULATIONS

27 C.F.R. 478.102(d) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

28 C.F.R. Section 25. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12, *passim*

63 *Fed. Reg.* 8381 (Feb. 19, 1998). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2, 6

63 *Fed. Reg.* 58275 (Oct. 29, 1998) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

## CASES

*Murphy v. Nat'l Collegiate Athletic Ass'n*, 138 S. Ct. 1461 (2018) . . . . . . . . . . 16

*Printz v. United States*, 521 U.S. 898 (1997). . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*United States v. Castleman*, 572 U.S. 157 (2014) . . . . . . . . . . . . . . . . . . . . . . . 14

*United States v. Hayes*, 555 U.S. 415 (2009). . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*Voisine v. United States*, 136 S. Ct. 2272, 579 U.S. ___ (2016) . . . . . . . . . . . . . 14

## STATEMENT OF UNDISPUTED FACTS

The parties have agreed, through their counsel, to submit the following Statement of Undisputed Facts in Support of the parties' briefing on their respective motions for summary judgment.  These facts are agreed to as undisputed solely for the purposes of summary judgment in the above-captioned litigation and not for any other purposes.

1.     Plaintiff, Donald J Roberts, II, is a United States citizen.

2.     The events or omissions giving rise to this suit occurred in Roscommon County, Michigan, a county within this district.

3.     As of March 7, 2020, Mr. Roberts had no disqualification that would prevent him from acquiring, keeping, or bearing arms.

4.     Mr. Roberts is a member of Gun Owners of America, Inc.

5.     Mr. Roberts is a resident of McBain, Michigan.

6.     Mr. Roberts possesses a valid unexpired Michigan CPL issued March 16, 2016 and expiring February 24, 2021.

7.     On March 7, 2020, Mr. Roberts visited a federal firearms licensee doing business as H&H Fireworks, Guns and Sporting Goods at 8979 W. Houghton Lake Dr., Houghton Lake, MI 48629.

8.      Mr. Roberts visited said FFL for the purpose of purchasing a shotgun with his unexpired Michigan CPL.

9.      Upon inquiry and presentment of his CPL, Mr. Roberts was advised that sale of the firearm using his unexpired Michigan CPL could not be completed unless he submitted to a FBI NICS background check, consistent with the ATF's March 3, 2020, Michigan Public Safety Advisory.

10.     Consistent with ATF instructions, the FFL refused to make the sale, and Mr. Roberts left the store without purchasing the firearm.

11.     Were it not for the challenged agency action, Mr. Roberts would, subject to the discretion of the FFL, be able to use his Michigan CPL in lieu of a background check to purchase firearms at a federally licensed firearms dealer, as authorized by 18 U.S.C. § 922(t)(3).

12.     Plaintiff, Gun Owners of America, Inc. ("GOA") is a California non-stock corporation with its principal place of business at 8001 Forbes Place, Springfield, VA 22151.

13.     GOA is organized and operated as a non-profit membership organization that is exempt from federal income taxes under IRC § 501(c)(4).

14.     GOA was incorporated in 1976 to preserve, protect, and defend the Second Amendment rights of gun owners.

15.   GOA has thousands of members and supporters, including residents of the Eastern District of Michigan, who possess Michigan CPLs, and who would use them to purchase firearms, but for the challenged agency action.

16.   On October 29, 1998, ATF sent an "OPEN LETTER TO ALL MICHIGAN FEDERAL FIREARMS LICENSEES," stating that "[t]he Michigan permit to purchase a handgun ... will [] qualify as an alternative to the NICS check...."

17.   On March 24, 2006, Defendant ATF issued an "Open Letter to Michigan Federal Firearms Licensees" ("2006 Open Letter") which stated that, "Michigan's Concealed Pistol Licenses (CPLs) issued on or after November 22, 2005 will qualify as an alternative to a [NICS] check."

18.   ATF's 2006 Open Letter instructed Michigan FFLs that, when transferring firearms, they would be permitted to accept Michigan CPLs in lieu of running a NICS check.

19.   On March 3, 2020, ATF issued a "PUBLIC SAFETY ADVISORY TO ALL MICHIGAN FEDERAL FIREARMS LICENSEES," which states that ATF's "March 24, 2006 [letter] is rescinded as of the date of this letter...."

20.   The parties stipulate that Complaint Exhibits A, B and C, being ATF communications, are admissible for the purpose of this motion.

## INTRODUCTION

**A.      Background on Section 922(t)(3).**

On November 30, 1993, President Clinton signed into law the Brady

Handgun Violence Prevention Act (Pub.L. 103–159, 107 Stat. 1536).  *See*

Administrative Record, ECF No. 16-2, ATF000135-145 (hereinafter referenced by

Bates numbers).  Generally speaking, the Brady Act prohibits certain categories of

persons from obtaining or possessing firearms and requires that, before a federally

licensed dealer can transfer a firearm, he first must run a background check

through the FBI's National Instant Criminal Background Check System ("NICS").

*See* 18 U.S.C. Section 922.  However, because the NICS system had yet to be

established in 1993, the Brady Act contained various interim provisions effective

from February 28, 1994 until November 30, 1998.  *See* 18 U.S.C. Section 922(s).

On November 30, 1998, temporary section (s) expired, and permanent section (t)

took its place, including the provision at issue in this case, section 922(t)(3)

(known as "permanent Brady"), which provides that a NICS check is not required

if the transferee possesses a qualifying permit:

> (3) Paragraph (1) shall not apply to a firearm transfer between a
> licensee and another person if—
> (A)(i) such other person has presented to the licensee a permit that —

(I) allows such other person to possess or acquire a firearm;[1] and
(II) was issued not more than 5 years earlier by the State in which the
transfer is to take place; and
(ii) **the law of the State provides** that such a permit is to be issued
only after an authorized government official has verified that the
information available to such official does not indicate that
possession of a firearm by such other person would be in violation of
law.... [Emphasis added.]

## B.   Application of Section 922(t)(3) to Michigan Permits.

With the impending November 30, 1998 effective date of permanent section

(t), on October 29, 1998, ATF sent an "OPEN LETTER TO ALL MICHIGAN

FEDERAL FIREARMS LICENSEES."  Compl. ¶ 11.  The 1998 Open Letter

announced the implementation of the permanent NICS system and opined that the

Michigan "permit to purchase a handgun" (known as a "LTP") "will [] qualify" as

a NICS alternative under 922(t)(3), but that a Michigan "concealed weapons

permit" does "not qualify."  In 2004, after 2001 changes to the Michigan statute,

ATF issued a subsequent letter to Michigan FFLs, stating that its interpretation

had not changed — the LTP still qualified as a NICS alternative, but the

"Concealed Pistol Permit" still did not.  ATF000003.

In 2005, Michigan again changed its law.  Michigan HB 4978 (Enacted,

November 22, 2005) created a requirement that a "concealed pistol license"

---

[1]  ATF has always held that a permit "to possess or acquire a firearm"
includes a concealed carry permit.  *See* 63 *Fed. Reg*. 8381 (Feb. 19, 1998).

2

("CPL") is not to be issued unless Michigan officials first conduct a NICS

background check.   MCL 28.426(2).  Based on this change, on February 7, 2006,

then-Attorney General of Michigan Mike Cox wrote to ATF, requesting

confirmation that the 922(t)(3) exemption would now apply to the CPL.  On

March 24, 2006, ATF replied in agreement with the Michigan Attorney General's

assessment, opining that the Michigan CPL now qualified for exemption under

922(t)(3).  Compl. Exhibit A.  ATF issued an "Open Letter to Michigan Federal

Firearms Licensees" ("2006 Open Letter") announcing that **both** types of

Michigan licenses — the LTP and CPL — were now valid NICS exemptions.  *Id*.

Thus, as of March 24, 2006, ATF acknowledged that "the law of the State

[of Michigan]" meets the criteria set out in Section 922(t)(3).  Indeed, MCL

28.426(2) states, in pertinent part, that:

> A county clerk shall not issue a license to an applicant under section
> 5b unless both of the following apply:
> (a) The department of state police, or the county sheriff under section
> 5a(4), **has determined through the federal national instant**
> **criminal background check system that the applicant is not**
> **prohibited under federal law from possessing or transporting a**
> **firearm**.
> (b) If the applicant is not a United States citizen, the department of
> state police has verified through the United States Immigration and
> Customs Enforcement databases that the applicant is not an illegal
> alien or a nonimmigrant alien.  [Emphasis added.]

*This Michigan statute has not changed in any way* since 2005.  The "law of the

State [of Michigan] provides" in 2020 exactly what it did in 2005. Yet in spite of *no change* in the Michigan statute, ATF recently reversed its 2006 position.

### C.     Procedural History Behind ATF's Changed Position.

In March of 2019, ATF obtained information regarding how Michigan authorities were processing state CPL applications and, on March 22, 2019, ATF senior policy counsel stated that "we are going to need to reopen the case on Michigan alternate permits." ATF000023. On April 9, 2019, the topic was discussed at a quarterly meeting of ATF officials. ATF000030. Thereafter, in June of 2019, the FBI conducted an "audit of Michigan" ("2019 Audit") with respect to the state's issuance of CPL permits. After receiving input and responses from Michigan, the FBI issued a report on its findings. ATF000006-22. Pursuant to that FBI report, in September of 2019, ATF inspectors then conducted a "NICS re-check" of a "sampling" of persons who had used Michigan CPLs in lieu of NICS checks ("2019 Re-Check"), attempting to uncover whether prohibited persons had improperly obtained and used Michigan CPLs to obtain firearms. ATF000062-63. Together, the 2019 Audit and the 2019 Re-Check form the factual basis for ATF's decision to revoke the Michigan CPL as a NICS alternative.

On March 3, 2020, ATF issued a "PUBLIC SAFETY ADVISORY TO ALL

MICHIGAN FEDERAL FIREARMS LICENSEES" ("Michigan PSA"), which states that ATF's "March 24, 2006 [letter] is rescinded as of the date of this letter...."  Compl. Exhibit B.  The Michigan PSA acknowledges *that the text of MCL 28.426(2) remains unchanged.*  However, the Michigan PSA claims that, "[i]n spite of" MCL 28.426(2)'s requirements,  "ATF recently received information ... that Michigan CPLs have been, and continue to be issued to certain applicants without a determination by Michigan officials as to whether the applicant is prohibited under Federal law from possessing or transporting firearms."[2]  *Id.*  In other words, while acknowledging that MCL 28.426(2) *on its face still* qualifies for a Section 922(t)(3) exemption, ATF now claims that its requirements are not being adhered to *in practice* by state officials.  Compl. ¶ 22.

## ARGUMENT

## I.   ATF'S MICHIGAN PSA CONFLICTS WITH THE PLAIN TEXT.

### A.   Section 922(t)(3) Looks Only to the Face of State Law.

As discussed above, 18 U.S.C. Section 922(t)(3) looks only to whether "the law of the State provides" for the requirement stated in 923(t)(A)(ii).  As ATF has

---

[2]  For now, the Michigan LTP continues to qualify as a NICS exemption, although an ATF e-mail states that the agency's new interpretation "may affect the LTP" at a later date.  ATF000033.

admitted, and presumably still admits,[3] the relevant Michigan statute (which has

not changed since 2005) contains that requirement — it unambiguously requires a

NICS check prior to the issuance of a CPL.  For many years, ATF applied Section

922(t)(3) as written.  When ATF first promulgated regulations to implement

Section 922(t)(3), it stated clearly that "information 'available' to State permit

officials ... will include the *information provided by NICS*...." ATF000166

(emphasis added).[4]  Consistent with this understanding, the Michigan State Police

("MSP") *always* runs a NICS check before issuing a CPL, and *always* rejects CPL

applications for persons NICS reports are prohibited.[5]

---

[3]  ATF states that its action against Michigan's NICS exemption is due to actions taken by state officials "notwithstanding the express requirements of ... MCL 28.426...."  ATF000051 (draft of March 3, 2020 Michigan PSA).

[4]  *See also* 27 C.F.R. 478.102(d); 63 *Fed. Reg.* 8381 (Feb. 19, 1998) ("[i]n construing the language of the statute, it is ATF's position that ... 'the information available to' State officials will include *the NICS database*.") (emphasis added); 63 *Fed. Reg.* 58275 (Oct. 29, 1998) ("'the information available to' State officials who issue permits will include a NICS check."); ATF000056 (ATF briefing paper) ("Section 478.102(d)(1)(iii) clarifies that the information available to such official includes the NICS (*i.e.*, the authorized government official must conduct a NICS background check of the nonlicensee before issuing such permit).");  May 2018 ATF "Guidance" on "state NICS alternate permits" (making clear that the gold standard for qualifying alternative permits is that "[t]he State law must provide that a full NICS check will be required," and that "a NICS check will be conducted for every permit applicant."

[5]  MSP reports that, "in every reported instance where a NICS background check produced information that indicated an applicant was ineligible for a CPL

### B.    ATF Now Looks Beyond State Law to State Practices.

Recently, however, ATF has contrived a new standard for measuring

compliance with Section 922(t)(3).  No longer is it good enough that Michigan

officials *run* a NICS check through the FBI and *deny* CPLs to those with

*disqualifying* records.  No longer is it sufficient that Michigan rely on information

*in* "the NICS database" and "information provided *by* NICS."  Rather, ATF now

seeks to compel Michigan to investigate information *not* "provided by NICS" and

create new disqualifying records that were *not* in "the NICS database."  This is the

main bone of contention here — ATF has added new requirements to the statute.

An example of ATF's new standard would arise in a case where a

background check uncovers an ambiguous, incomplete, or unclear record that is

*potentially* disqualifying under 18 U.S.C. Section 922(g) — meaning NICS is not

sure whether the person is prohibited or not.  In such cases, even though NICS has

no actual information that the person is disqualified, ATF seeks to force Michigan

officials to *investigate* and *gather information outside the NICS system* about the

ambiguous record, subsequently to *make legal determinations* about the

*potentially disqualifying* record and, if disqualifying, to *add new prohibiting*

---

because a statutory disqualification applies, the MSP CPL Unit has denied CPL
applications accordingly."  ATF000020.

*records* into NICS.[6]  It is one thing to require MSP to contact NICS prior to issuing a permit, but ATF actually seeks to commandeer (*See Printz v. United States*, 521 U.S. 898 (1997)) the resources of MSP to comply with its new approach.  But if ATF is not satisfied with the law Congress wrote, it should ask Congress to amend it, rather than doing so by bureaucratic fiat.  ATF has essentially taken the position that Michigan should do the federal government's job for it, and if Michigan refuses, gun owners across the state will be punished by revocation of the 922(t)(3) exception.

### C.  ATF's New Standard Conflicts with the Plain Text of Section 922(t)(3).

ATF's new position conflicts with the plain text of 922(t)(3), which requires that a state official has "*verified* that the information *available* to such official does not indicate that possession of a firearm by such other person would be in violation of law."  Emphasis added.  ATF's current position is a long way from mere *verification* based on *available* information supplied by the FBI.  What ATF now requires of Michigan is to go beyond "verification" of  "information available," and instead to *investigate* records, to *gather* additional information, to

---

[6] As noted below, this stands in stark contrast to what the FBI does when a Michigan FFL runs a background check for a firearm purchase.  For gun purchases, it is NICS itself that conducts any additional investigations and makes any determinations as to whether a person is prohibited.

*make* complex legal determinations about that information, and to *create new information* (additional NICS records) — records which previously were not "available."  The system fashioned by Congress in Section 922(t)(3) imposed no such onerous requirement on the states.[7]  As Michigan notes, there is no "federal law requiring a state agency ... to make a final determination of factual and legal issues in applying federal law...."  ATF000010.  MSP is not a bureau of the ATF.  On the contrary, as Michigan notes, its "authority only extends to querying the NICS for existing prohibitions, not to make [sic] new prohibitions determinations based on information discovered during research."  ATF 000009.

## II.   ATF'S SPECIFIC CRITICISMS OF MSP PRACTICES.

The rift between the FBI/ATF and Michigan involves how MSP treats

---

[7]  Not only does ATF's revocation of the Michigan CPL exemption conflict with the plain text of the statute, but also Section 922(t)(3) gives ATF no authority to enforce its requirements.  Rather, the question as to what "the law of the State provides" is a purely legal question.  Certainly, ATF can take a position as to whether a particular state's statute qualifies, but there is simply no basis for the agency's position that it gets to grant or revoke an exception, or to conduct an investigation and render a decision based on facts uncovered during an "audit" or "re-check."  There is nothing in Section 922(t)(3) which permits a *factual* predicate to be the basis for any determination of exemption.  Rather, a determination as to whether a particular state statute qualifies under Section 922(t)(3) is a purely *legal* question based on the four corners of a given statute.

records related to three federally prohibiting criteria:  (i) fugitive from justice,[8] (ii)

controlled substance user, and (iii) misdemeanor crime of domestic violence

("MCDV").  ATF000009.  To be clear, ATF's concerns have nothing to do with

persons for whom there is an *existing* disqualifying record in NICS.  It is

indisputable that Michigan conducts a NICS check in *every* case and denies a CPL

for *any* NICS disqualifying record.  Rather, ATF now demands that Michigan

should go beyond NICS to investigate "information discovered during research"

(*id.*), to "adjudicat[e]" any *potential* disqualifying information, and to "make new

prohibition determinations."  ATF000018.

### A.    Controlled Substance User.

ATF appears to have advanced at least three curious theories as to why

---

[8]  While ATF's Michigan PSA relied only on MCDV and drug use as
reasons for its revocation of the Michigan CPL exemption, the FBI's 2019 Audit
additionally finds fault with the "fugitive from justice" criterion.  The FBI's 2019
Audit complains that "MSP is not denying applicants that may have an active
warrant" even though, as Michigan points out, "the most-current NICS guidance
does not require a denial [merely] on the basis of an 'active warrant' alone."
ATF000014-15.  On the contrary, federal law prohibits a person from possessing a
firearm if he is a "fugitive from justice."  18 U.S.C. Section 922(g)(2).  As
Michigan has noted, this determination "requires extensive fact finding," and
"internal concerns have been raised regarding the MSP's authority to essentially
become an adjudicative agency in applying 18 USC 922(g)(2) and related NICS
guidance, some of which includes provisions not expressly found in applicable
law."  ATF000014.  Because the legal determination as to whether someone is a
"fugitive from justice" is "not limited to objective, readily ascertainable facts,"
Michigan has declined to make such determinations.

Michigan is not eligible for a 922(t)(3) exception due to its handling of drug records.

**Not Adequately Denying.** First, the FBI's 2019 Audit complains that "MSP will not deny an applicant that has possession of marijuana charges on their record." ATF000015. Of course, a "marijuana charge" *itself* is not a prohibiting factor under federal law. Rather, federal law only prohibits firearm possession by someone "who is an unlawful user of or addicted to any controlled substance," and separately someone with a *felony* drug conviction. 18 U.S.C. Section 922(g)(1) and (3). Simply having a drug "charge" does not meet either criteria. As Michigan points out, it denies CPLs to those with felony drug convictions (or any other NICS prohibiting record). ATF000015. However, determining if a person is an "unlawful user" or "addicted" is not a cut and dry question, and Michigan notes that "concerns have been internally raised as to whether it is appropriate and necessary for the MSP ... to make and enter a final determination of factual and legal issues in applying federal law." ATF000016.

**Not Adequately Reporting.** Second, ATF claims Michigan is not entitled to a 922(t)(3) exception because it is not adequately reporting drug users to NICS. The FBI claims that, because "[r]ecreational marijuana is now legal in Michigan ... MSP is *no longer reporting* the use of such *to the NICS Indices* [and] MSP legal

11

advisors have opined that the applicants cannot be denied if the prohibition is not in the NICS Indices." ATF000015 (emphasis added).

First, as Michigan points out, the state's legalization of marijuana "has not currently impacted whether or not a statutory disqualification is reported...." *Id.* Second, qualification under Section 922(t)(3) is not tied to whether a state reports state records *to NICS*, only whether it obtains information *from NICS*. Indeed, a state's decision whether to report its own records to NICS is an *entirely voluntary process*, and it cannot be penalized for any alleged failure to do so. *See* 28 C.F.R. Section 25.4. Third, adopting ATF's theory would gut the 922(t)(3) exception, as it would permit revocation of 922(t)(3) exceptions for every state that does not report as many state records as the government would like. At bottom, a state's alleged failure to report drug records to NICS has no bearing on 922(t)(3) eligibility.

**Not Adequately Creating.** Third, ATF appears to claim that Michigan is not entitled to a 922(t)(3) exception because it is not aggressively charging people for drug possession. ATF000036. Yet as Michigan points out, "[f]or example, if an [sic] MSP trooper finds someone in possession/use of marihuana and does not enter that possession/use into the NICS Index, there will not be a NICS Index record...." ATF000037. Since there is *no crime* committed under state law, *no*

*criminal record* is created, and thus then there is *nothing to report* to NICS.  ATF

and FBI have no authority to require that states criminalize certain behavior, that

police and prosecutors have no discretion but to arrest and charge that behavior, or

even that states report convictions and drug usage to NICS.  Certainly, Section

922(t)(3) eligibility has nothing to do with it.  Applied nationwide, ATF's theory

would require revocation of 922(t)(3) eligibility for many states.

### B.    Misdemeanor Crime of Domestic Violence (MCDV).

Trudging further into the unknown, the FBI's 2019 Audit complains that

"MSP will not deny an applicant that has a MCDV on their record if it is not

already in the NICS Indices."  ATF000016.  Yet as Michigan points out, a CPL

applicant is denied "if he or she is [already] entered into NICS as having an

MCDV conviction."  ATF000016.  However, Michigan notes the inherent

difficulties in making determinations as to whether a particular record qualifies as

a MCDV and *should be* in NICS,[9] an inquiry that often presents one of the most

---

[9]  Michigan points to problems with MCDV determinations, including "non-uniform or incomplete reporting," "the possibility that many misdemeanor offenses include disjunctive elements that may (but do not necessarily) constitute disqualifying conduct," the "interpretation of quite old case records that were very likely not created in contemplation" of MCDV, and "applying the 'civil rights restored' MCDV exception" which "can in some cases present considerable questions of law and fact."  ATF000017.

complex and debated legal questions in federal firearms law.[10]   Nothing in Section

922(t)(3) requires Michigan to make such difficult legal determinations in order

for the CPL to qualify as a NICS alternative.   Michigan has chosen to act under

the statute as written, not submit to ATF's *ultra vires* policy objectives.

## III.   MICHIGAN IS NOT A "POINT OF CONTACT" STATE — A MADE UP DESIGNATION FOR WHICH THERE IS NO STATUTORY AUTHORITY.

ATF bases its claims above — that Michigan has a *federal* duty to

investigate records outside of NICS, decide upon issues of *federal* law, and then

create additional disqualifying *federal* records for entry into NICS — in part on its

assertion that Michigan "is a partial POC concerning the issuing the [sic] LTP and

issuing of the CPL."   ATF000022.   This bogus claim is a red herring.   There is no

such thing as a "point of contact" state when it comes to issuing firearm *licenses*.

A "point of contact" state (a term not found in any statute but rather created

---

[10]   Whether a particular statute, particular element of a statute, or particular charged offense qualifies as an MCDV has resulted in numerous fact-dispositive opinions, including from the U.S. Supreme Court.   *See United States v. Hayes*, 555 U.S. 415 (2009); *United States v. Castleman*, 572 U.S. 157 (2014); *Voisine v. United States*, 136 S. Ct. 2272, 579 U.S. ___ (2016). The FBI itself often is unsure if a particular conviction is an MCDV.   In response to a 2015 FOIA request, FBI stated that it had "no records" identifying which state statutes qualify as MCDVs. https://www.scribd.com/document/473095410/FBI-MCDV-FOIA-Response.

administratively by the FBI[11]) is defined in regulation as "a state or local law

enforcement agency serving as an intermediary between an FFL and the federal

databases checked by the NICS."  28 C.F.R. Section 25.2.  *Michigan is not one of*

*those states*.  Michigan has no state-level background check for firearm sales.  But

when requesting a NICS check for a CPL, MSP is not acting as an intermediary

(for the transfer of a firearm) between the FFL and the FBI.  Rather, MSP's

purpose for contacting NICS is its own — the issuance of a state permit.  In

Michigan, FFLs contact NICS directly, without any "contact" with state officials.

And now that ATF issued the Michigan PSA, the CPL no longer exempts a gun

buyer from undergoing a NICS check; Michigan FFLs contact NICS directly.[12]

Michigan as well disputes that it is a POC, something that has always been a

---

[11]   When implementing the Brady Act's background check requirement, the FBI found that various states already were performing their own background checks for firearm sales, and wanted to continue to do so.  Thus, the FBI devised a system which permitted certain states with pre-existing background check systems to harmonize and avoid duplication with the Brady Act's November 1998 implementation of the NICS system.  For such states, rather than contacting NICS directly, an FFL contacts a designated state agency, which in turn (i) contacts NICS on behalf of the FFL and (ii) conducts a state level background check.

[12]   FBI documents belie the claim that Michigan is a POC state, listing Michigan as one of 36 "Non Point-of-Contact" states. https://www.fbi.gov/file-repository/nics-participation-map.pdf/view. *See also* ATF000167 (differentiating between states as POCs and as issuers of NICS alternative permits).

**voluntary** status (to benefit the state) that a state can choose — or decline.[13]  As a 1998 ATF document explains, POC status is for "States [which] have *agreed to serve* as POCs for the FBI," and "for the States that *will be participating* as POCs..."  ATF000166-67 (emphasis added).  Now, however, the ATF and FBI seek to force **involuntary** POC status upon Michigan, in violation of the anti-commandeering principle.  Indeed, the Supreme Court has observed that "conspicuously absent from the list of powers given to Congress [much less to ATF] is the power to issue direct orders to the governments of the States." *Murphy v. Nat'l Collegiate Athletic Ass'n*, 138 S. Ct. 1461, 1476 (2018).  Yet when ATF tells the State MSP to research non-federal records, investigate lower court proceedings, make a determination based on federal law, and to add information to NICS, it commandeers state personnel to carry out a mere ATF policy objective.  ATF has turned a voluntary program into a compulsory one and weaponized a status that was designed to be a privilege for states that want it, morphing it into a burden for states that do not.[14]

---

[13]   *See* ATF000015 ("MSP [] lacks authority of a POC state"); ATF000019 (noting the "obvious distinction between the responsibilities of a POC-designated state, which the MSP is not").

[14]   Michigan has noted the "obvious distinction" between the more complex POC duty to investigate records and make determinations under 28 C.F.R. Section 25.2 and the statute at issue here, 18 U.S.C. Section 922(t)(3)(A), which requires

It is no secret why the FBI would seek to bootstrap the POC terminology relating to firearm *sales*, graft it onto the Michigan process for firearm *permits*, and then claim Michigan to be a POC state when it comes to the issuance of state CPLs.  That is because POC states — who, unlike Michigan, have developed the infrastructure to run their own background checks — typically make final determinations for NICS about ambiguous, potentially disqualifying records.  For other states that are not POCs, the FBI assumes that role.[15]

Finally, the regulation defining a POC (with respect to firearm *sales*) states that "[a] POC will receive NICS background check requests from FFLs, check state or local record systems, perform NICS inquiries, determine whether matching records provide information demonstrating that an individual is disqualified from possessing a firearm under Federal or state law, and respond to FFLs with the

only that a state official "verif[y] that the information available to such official does not indicate that possession of a firearm by the transferee would be in violation of federal, state, or local law."  ATF000019.

[15]  There is an additional reason that the FBI might be seeking to force Michigan to make NICS determinations.  18 U.S.C. Section 925A provides a cause of action for anyone wrongly denied the transfer of a firearm, including "an action against the State or political subdivision ... or against the United States, as the case may be," based on whomever is "responsible for providing the erroneous information...."  By forcing Michigan to make the determination, it is Michigan that would report any disqualifications to NICS, and thus Michigan (not the FBI) that would be liable (including for attorney's fees) under Section 925A.

results of a NICS background check."  28 C.F.R. Section 25.2.  By classifying Michigan as a POC state, the FBI seeks to impose this regulatory (not statutory) task to make determinations as to eligibility.  But aside from the fact that Michigan is not a POC state, Section 25.2 is not a statute that prohibits or requires anything.  Rather, it is a "definitions" section, defining those characteristics that POCs have.  Since Michigan *does not have* any of those characteristics, it logically follows that it *is not* a POC state.  The FBI, however, attempts to recast Section 25.2's *definitions* as *mandates* — and that states it arbitrarily designates as POCs *must do* certain things.

## IV.   THE FEDERAL GOVERNMENT HAS REFUSED TO HELP MICHIGAN WITH INTERPRETING FEDERAL LAW.

Even as the ATF and the FBI seek to require Michigan state authorities to independently make complex and highly factual determinations about the application of federal law prior to issuing permits, the FBI itself is unwilling to perform that task — a task that it admits it already performs for Michigan sales of firearms.  As an ATF document explains, "Unlike a NICS check on a potential firearm purchaser, for alternate permit issuance, FBI NICS does not investigate or determine whether the prospective permit holder is prohibited; rather, it provides access through the NICS Index so that the State or local government officials can

18

make that determination themselves. *See* 28 C.F.R. 25.6(j)." ATF000104;

ATF000057. Yet nothing in Section 25.6 requires such a distinction — certainly,

nothing prohibits either the FBI or the ATF from making determinations when

questionable records arise from NICS checks related to CPLs.

In fact, the opposite is true. In 1998, ATF noted that it "has been careful to

*ensure that there is parity* between the background check required of permittees

and the NICS check undergone by other purchasers of firearms." ATF000170

(emphasis added). Now, contrary to that principle, while the FBI will investigate

and make final determinations for Michigan gun sales, it refuses to do the same for

Michigan CPLs. This disparate treatment is irrational. The FBI and ATF already

have the infrastructure and personnel, along with the technical and legal

experience, to make determinations about prohibited records. They are also tasked

by law with maintaining the NICS system and the integrity of the records therein.

As Michigan noted in response to the 2019 Audit, "[t]he State of Michigan

would like to take this opportunity to renew its request to collaborate with NICS to

identify — and ultimately make final determinations with respect to —

information that may indicate the presence of federal firearm prohibitions."

ATF000021. In fact, Michigan "originally proposed a cooperative arrangement ...

in September 2017," whereby the state would "gather relevant records that could

19

potentially constitute a federal prohibition, and refer that information to NICS so that NICS may make and enter the final determination under federal law."[16]  *Id.*

What's more, Michigan has been an open book on this issue, providing the FBI and the ATF with information about every outstanding question as to possible prohibiting records.  *See* ATF000038-43.  Michigan has even kept records on the 50 permits that have been issued to those with outstanding questions, so that it later could "go and revoke the permits" if either the ATF or the FBI later instructs that the permittee is disqualified.  ATF000053.  With the information that Michigan has provided, either the ATF or the FBI could easily determine if a particular record is disqualifying, report its findings to Michigan, and add any prohibiting record to NICS.  In other words, the dispute in this case is entirely of the FBI and the ATF's own creation, and the problem could be easily remedied by the ATF and the FBI simply agreeing to assist Michigan in making a mere 50 determinations about potentially disqualifying records.  That sure seems like a silly place for ATF to draw a line in the sand, to the disadvantage of Michigan gun owners — yet here we are.

---

[16]  *See also* ATF000034-35 ("MSP has advised they will request the documentation needed to research the prohibition however they are not finalizing any research as they believe the FBI or ATF should review the documentation and determine if it meets the federal prohibition.").

## V.   ATF'S MICHIGAN PSA IS ARBITRARY AND CAPRICIOUS — A SOLUTION IN SEARCH OF A PROBLEM.

### A.   There Is No Evidence of a Problem in Michigan.

Try as it might, ATF has been unable to uncover any evidence of a problem

beyond mere speculation to justify its decision to revoke the Michigan CPL as a

NICS alternative.  Indeed, both the FBI 2019 Audit and the ATF 2019 Re-Check

found a grand total of *zero evidence* that any prohibited person had ever used a

Michigan CPL to obtain a firearm.[17]  As part of its 2019 Re-Check, ATF reviewed

hundreds of records across Michigan, in cases where buyers used CPLs to obtain

firearms without a NICS check.  In summarizing its findings, ATF sheepishly

admitted that its sampling "did not identify a [single] prohibited CPL holder using

a CPL to circumvent a NICS check and obtain a firearm...."  ATF000062-63.  One

would think that the ATF would have thrown in the towel at this point.

---

[17]   In an April 9, 2019 email, the FBI reported to ATF that Michigan sent "63 CPL applications" to county clerks without a final determination as to potentially disqualifying records.  ATF000028.  The FBI claimed that, having followed up on these applications, "50 CPLs were issued" to "*potentially* prohibit[ed]" persons.  *Id.* (emphasis added).  On July 22, 2019, the FBI again wrote to ATF to note that, for those 50 permits, "we *do not have the end results*." ATF000053 (emphasis added).  Even in this litigation, ATF refers to this list of Michigan CPL applicants as having "*potentially* prohibiting" records. Certification of Administrative Record at 2, Item #13 (emphasis added).  In other words, it appears that neither the FBI nor the ATF has bothered to investigate to determine if Michigan permits have been issued to anyone who is *actually* prohibited.

The utter lack of evidence supporting the challenged action is confirmed by the language used in ATF's Michigan PSA.  In a July 16, 2019 (ATF000046) *draft* version of the Michigan PSA, ATF claimed that "[b]ecause Michigan officials issued CPLs to individuals who *are* federally prohibited, firearms *were* subsequently transferred to these individuals, thereby creating a substantial public safety concern."  ATF000052 (emphasis added).  Yet by the time ATF issued its Michigan PSA in March of 2020, it claimed only that CPLs were "issued to applicants who were *likely* prohibited."[18]  Michigan PSA at 2 (emphasis added).  Nevertheless, in spite of the complete lack of any evidence showing it to be so, ATF continues to claim that the current Michigan system "poses a public safety risk...."  ATF000063.  Defendants' decision to rescind Michigan's NICS exemption for CPLs is based on speculation, not fact.

## B.     There Is Scant Evidence of a Problem Anywhere in the Country.

Apparently not content with the results (or lack thereof) of its 2019 Audit and 2019 Re-Check in Michigan, from January to April 2020, ATF conducted a *nationwide* "re-check" involving a "sampling" (*i.e.*, fishing expedition) of records

---

[18]  ATF uses carefully crafted adjectives to conceal its speculation.  *See also* ATF000057 ("appeared"); ATF000058 ("potentially" and "appeared"); ATF000098 ("likely prohibited").

from FFLs across the country in states that still have NICS alternative permits. *See* Compl. ¶¶30-35; ATF000269-70.  ATF inspectors were instructed to randomly sample sales that had been completed with NICS alternative permits in lieu of a NICS check.  In violation of federal regulations (*See* 28 C.F.R. § 25.6(a)), ATF inspectors were instructed to run NICS checks on the purchasers long after they had purchased their firearms, in the hopes of identifying prohibited persons who had used state permits to obtain firearms.

In June of 2020, Plaintiff GOA filed a FOIA request with ATF, seeking records related to this NICS Alternative Permit Sampling Initiative ("2020 Sampling").  In response, ATF provided Plaintiff GOA with its results, which speak for themselves.  *See* ATF000293-312.  Having sampled 5,249 transactions where state permits were used as NICS alternatives, ATF was able to come up with only four records of transactions to prohibited persons.  ATF000311.  And, of those four, two purchasers became prohibited *after* the relevant state permit was issued.  ATF000312.  This means that after all of its searching, ATF was only able to find two persons in the entire United States who (allegedly) were wrongly issued permits and then later (allegedly) used those permits to unlawfully obtain a firearm.  This hardly justifies the unauthorized action ATF has taken here, to the detriment of law-abiding gun owners across Michigan.

23

## **CONCLUSION**

In 1998, ATF considered and rejected the claim that it now resurrects here — that it may add provisions to a Congressional Act, so that a few prohibited persons do not obtain firearms.  In 1998, ATF noted the limitations on its authority, explaining that while "[t]here may be rational policy reasons" to add requirements to the statute, "'rationality is not enough. [ATF] need[s] authority.'" ATF000173 n.2.  In 1998, ATF noted: "[t]here is no question that the recognition of five-year permits as alternatives to a NICS check *may result in the purchase of firearms by individuals with Federal firearms disabilities*," concluding that "it appears that this is an *inevitable result of the law*, and not something that ATF can address through the regulations."  ATF000175 (emphasis added).

In 2020, however, ATF repudiates its own principles.  ATF claims that, because the system might not work *in every case* (allegedly), or that a few potentially prohibited persons *might* otherwise improperly acquire a firearm under 922(t)(3), ATF now also claims the authority to require states to go beyond 922(t)(3).  But the agency is tasked with adherence to the statute that Congress wrote, regardless of whether it provides a perfect result the agency seeks. Here, ATF has misinterpreted the statute in order to assume a power that Congress never gave it — to weigh the *effectiveness* of a state's permitting process at keeping

24

guns out of the hands of prohibited persons, in determining whether a state's permit constitutes an alternative to NICS under Section 922(t)(3).

Rather, Section 922(t)(3) provides a black-and-white, cut-and-dry, straightforward legal standard, which looks *only* to the face of Michigan state law. Such inquiry takes only a few lines of legal analysis.  Since 2004, ATF has admitted that the Michigan statute meets the Section 922(t)(3) test, because it requires that a NICS background check be run prior to the issuance of any CPL or LTP.  ATF speculation as to problems with how MSP *implements* that statute and the agency's attempts to invoke fear that a few *potentially* prohibited persons *might* gain access to firearms are irrelevant and should be ignored.

Plaintiffs ask this Court declare Michigan's statute, on its face, qualifies as a NICS alternative under Section 922(t)(3), declare ATF's contrary actions (including the Michigan PSA) unlawful, and enjoin their enforcement because they exceed ATF's statutory authority.  Section 922(t)(3) grants no such authority.

Respectfully submitted,
PENTIUK, COUVREUR & KOBILJAK PC

/s/ Kerry L. Morgan
BY:   KERRY L. MORGAN (P32645)
2915 Biddle Avenue, Suite 200, Wyandotte, MI  48192
T: (734) 281-7100
Dated:          Kmorgan@pck-law.com
September 25, 2020   *Counsel for Plaintiffs*

25

## CERTIFICATE OF SERVICE

On September 25, 2020, I certify that I electronically filed this document

with the Clerk of the Court through the ECF System, which will send notification

of such electronic filing to all counsel of record registered electronically.

/s/ Kerry L. Morgan

BY:   KERRY L. MORGAN (P32645)
2915 Biddle Avenue, Suite 200
Wyandotte, MI  48192
T: (734) 281-7100
Kmorgan@pck-law.com
*Counsel for Plaintiffs*

26