UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

GUN OWNERS OF AMERICA, INC.
and DONALD J. ROBERTS II,

                Plaintiffs,                           Case No. 1:20-cv-10639

v.                                         Honorable Thomas L. Ludington
                                                 United States District Judge

U.S. DEPARTMENT OF JUSTICE, *et al.*,

                Defendants.

_____/

**OPINION AND ORDER (1) DIRECTING PARTIES TO MEET AND CONFER
REGARDING LETTER TO MICHIGAN ATTORNEY GENERAL, (2) DIRECTING
DEFENDANTS TO FILE SUPPLEMENTAL RECORD, AND (3) DIRECTING
PLAINTIFFS TO FILE ANY OBJECTIONS TO SUPPLEMENTAL RECORD**

      Plaintiff challenges the Bureau of Alcohol, Tobacco, and Firearm's (ATF) decision to issue

a public-safety advisory regarding Michigan's concealed pistol licenses (CPLs). The Advisory

informs federal firearm licensees (FFLs) that the ATF no longer views the Michigan CPL as a

valid background-check exception. Gun Owners of America and one of its members, Donald J.

Roberts II, have sued the ATF, its Acting Director,[1] and the U.S. Department of Justice to

invalidate the Advisory.

      As in most Administrative Procedure Act[2] challenges to the merits of an action of a federal

agency, the factual record here was limited to the facts that the Agency considered at the time of

its decision. *See Roberts v. DOJ*, 507 F. Supp. 3d 864, 871–74 (E.D. Mich. 2020). That

---

[1] At the time this case was filed, Regina Lombardo was the Acting Director. As of April 2022, the
Acting Director is Gary M. Restaino. Under Federal Rule of Civil Procedure 25, the substitution
of Restaino for Lombardo occurred automatically. *See* Fed. R. Civ. P. 25(d) ("An action does not
abate when a public officer who is a party in an official capacity dies, resigns, or otherwise ceases
to hold office while the action is pending. The officer's successor is automatically substituted as a
party.").

[2] 5 U.S.C. § 551 *et seq.*

administrative record reflected the ATF's efforts to engage the Michigan State Police (MSP) and the Michigan Attorney General. However, because neither were parties to this case, there was no information about their perspective beyond what the ATF summarized.

Recently, the Sixth Circuit Court of Appeals remanded the case and vacated this Court's decision granting summary judgment for Defendants. *See Gun Owners of Am., Inc. v. DOJ*, No. 21-1131, 2021 WL 5194078, at *1 (6th Cir. Nov. 9, 2021) [hereinafter *Gun Owners*]. At bottom, the Sixth Circuit was "unwilling to accept" either side's view of the relevant statute and suggested that the parties supplement the administrative record to address "several follow-up questions." *See id.* at *5 (noting that "[t]he record would benefit from more detail about" the background-check process, "the kind of process involved in issuing th[e] advisory," "the requirements of state law," and "[the ATF's] legal position").

The parties do not agree about what the Sixth Circuit contemplated on remand. That is, *who* should supplement the record and *how*. This Court directed the parties to file supplemental briefing on those issues.

Defendants propose a two-step approach in which they first would supplement the record with explanatory declarations and other documents from the Michigan Attorney General, the FBI-NICS, and the ATF. Then they would allow Plaintiffs to challenge the record's adequacy before both sides file supplemental briefs on the merits.

Plaintiffs propose a more extensive process. Instead of supplementing the record with additional agency documents, Plaintiffs suggest opening a six- to nine-month discovery period to allow the parties to obtain discovery through traditional devices like depositions and interrogatories. Plaintiffs argue that the Sixth Circuit intended for "both sides" to robustly

supplement the record, and that Defendants' supplementation would be too one-sided. ECF No. 35 at PageID.595 (quoting *Gun Owner*s, 2021 WL5194078, at *5)

Having carefully weighed these proposals, this Court finds that Defendants' approach strikes the proper balance between expediency and fairness. To that end, the parties will be directed to proceed consistent with Defendants' recommendation, including the unusual suggestion to prepare a letter to the Michigan Attorney General.

## I.

### A.

The relevant facts are neatly summarized in the Sixth Circuit's opinion. *See Gun Owners of Am., Inc. v. DOJ*, No. 21-1131, 2021 WL 5194078, at *1–2 (6th Cir. Nov. 9, 2021).

In 1993, Congress enacted the Brady Handgun Violence Prevention Act to help prevent felons and other people from possessing a firearm. *Id.* at *1. Under the Brady Act, FFLs must use a federally maintained database—the National Instant Criminal Background Check System (NICS) database—to verify that a firearm transferee is not prohibited from possessing the firearm. *Id.* Certain transferees, however, are exempt from this requirement, including those who possess a "qualifying state-issued permit"—sometimes called a "Brady alternate." *Id.* (quoting *Abramski v. United States*, 573 U.S. 169, 172 n.1 (2014)). Instead of submitting to a background check, such transferees may complete a firearm purchase by presenting the FFL with their qualifying permit, which is often a state-issued CPL.

Since the NICS system was established, many states, including Michigan, have taken advantage of the Brady-alternate exception by passing laws designed to conform with the federal requirements.[3] *Id.* Enacted in 2005, Michigan's CPL statute requires "'[t]he department of state

---

[3] The relevant federal requirements are briefly discussed in Section I.B., *infra*.

police, or the county sheriff' to 'determine[ ] through the federal national instant criminal background check system that the applicant [for the license] is not prohibited under federal law from possessing or transporting a firearm.'" *Id.* (quoting MICH. COMP. LAWS § 28.426). Apparently satisfied with Michigan's law, the ATF released a public-safety advisory in 2005, informing FFLs that the Michigan CPL was a valid Brady alternative. *Id.*

That all changed in 2017, however, when the Michigan State Police (MSP) informed the ATF of its view that the Brady Act required state officials to only "'access[ ]' the information in the NICS databases," not to "conduct further 'research' as to whether applicants for concealed-pistol licenses were federally prohibited." *Id.* at *2. The exact reason for this change remains unclear, but by all accounts, the MSP seemed uncomfortable with the prospect of researching "federal prohibitions that lacked an identical state-law 'equivalent,' like the federal prohibition on possessing a gun after a misdemeanor conviction for domestic violence." *Id.* (citing 18 U.S.C § 922(g)(9)).

The ATF and the MSP initially tried to overcome their differences. *Id.* But after a new Michigan Attorney General took office in 2019, their relationship soured again. *Id.* Based on advice from unnamed "legal counsel," the MSP informed the ATF that it would no longer conduct additional research on "difficult-to-match misdemeanor domestic-violence offenses." *Id.* Later, the FBI conducted a CPL audit in Michigan, which "identified 'at least 50' concealed-pistol licenses that 'had been approved for issuance to applicants who,' according to the government, 'appeared to be federally prohibited due to a conviction for a misdemeanor crime of domestic violence.'" *Id.*

In March 2020, the ATF issued a public-safety advisory "informing [Michigan FFLs] that the Michigan [CPL] no longer qualified under § 922(t)(3) as a valid alternative to a federal

background check." *Id.* Four days later, Michigan CPL holder and Gun Owners of America member Donald J. Roberts II tried to purchase a firearm from a Michigan FFL. When the FFL told Roberts that he could not rely on his CPL, he left the store and promptly sued Defendants under the APA. *Id.*

### B.

Both sides agree that the principal question in this case is whether the ATF acted within its statutory authority and discretion by issuing the Advisory. That question, in turn, depends on the meaning of the language providing for the Brady alternative. As relevant here, the Act provides:

> (3) [The background-check requirement] shall not apply to a firearm transfer between a[n] [FFL] and another person if--
>> (A)(i) such other person has presented to the licensee a permit that--
>>> (I) allows such other person to possess or acquire a firearm; and
>>> (II) was issued not more than 5 years earlier by the State in which the transfer is to take place; and
>> (ii) the law of the State provides that such a permit is to be issued only after an authorized government official has verified that the information available to such official does not indicate that possession of a firearm by such other person would be in violation of law[.]

18 U.S.C. § 922(t)(3) (emphasis added).

Subsection (ii) is the key point of contention. At summary judgment, Plaintiffs argued that, by using the phrase "the law of the State," Congress intended for the ATF to look no further than the statutory law of the State in question. ECF No. 17 at PageID.418–19. And because Michigan's CPL law facially satisfies the Brady-alternative requirements, Plaintiffs concluded that the ATF had no authority to withdraw recognition of the Michigan CPL based on the opinions of the MSP's unnamed counsel. *Id.* at PageID.420–21.

Defendants, by contrast, argued that because subsection (ii) requires state officials to "verif[y]" that "the information available" "does not indicate" a federal prohibition, the statute naturally contemplated some level of research and analysis. ECF No. 21 at PageID.464–65. This

interpretation was consistent with the Brady Act's purpose, they argued, because it prevented States from feigning compliance with the Brady-alternative exception. *Id.* at PageID.466–69.

Applying *Skidmore* deference, this Court found the ATF's interpretation persuasive based on the "text, design, and purpose of the Brady Act." *Roberts v. DOJ*, 507 F. Supp. 3d 864, 875 (E.D. Mich. 2020). Specifically, this Court noted that the dictionary definition of "law" encompassed "customs, practices, [and] rules," not just statutory codes, and that the ATF's interpretation prevented States from "feign[ing] compliance with the Brady Act by enacting statutes that they had no intention of enforcing." *Id.* at 876.

This Court also found that the ATF did not abuse its discretion, citing MSP's explicit statement that it would no longer research certain federal prohibitions. *See id.* at 879–80 ("[T]he MSP has not been made aware of federal law requiring a state agency in our position to make a final determination of factual and legal issues in applying federal law under 18 USC 922(g) and (n) . . . ." (quoting MSP Resp. to 2019 ATF Audit, ECF No. 16-1 at PageID.97)).

For those reasons, Defendants' motion for summary judgment was granted.

## C.

On appeal, the Sixth Circuit took a more critical view of the ATF's action and its administrative record. Although the Sixth Circuit agreed that Plaintiffs had stretched the statute's literal meaning "too far," it refused to adopt the ATF's interpretation that put the onus for additional research on the MSP. *See Gun Owners*, 2021 WL 5194078, at *3

The problem with the ATF's interpretation, according to the Sixth Circuit, was that it required state officials to complete "difficult matching problems." *Id.* at *4. For example, federal law prohibits people with state-law "misdemeanor crime of domestic violence" convictions from possessing firearms. *Id.* That term is defined to include (1) "the use or attempted use of physical

force, or the threatened use of a deadly weapon" (2) "committed by" a person with a certain domestic relationship to the victim, including "a current or former spouse, parent, or guardian." 18 U.S.C. § 921(a)(33)(A)(ii). Michigan, like other states, has a domestic-violence statute that is more inclusive than the federal statute. *See* MICH. COMP. LAWS § 750.81 (covering violence against "resident or former resident of . . . household"). So, under the ATF's reading, if a CPL applicant has a domestic-violence conviction from Michigan, then the MSP might have to investigate the specific facts of her offense to determine whether she would be federally prohibited from possessing a firearm. *See Gun Owners*, 2021 WL 5194078, at *4.

In addition to these and other practical difficulties, the Sixth Circuit criticized the ATF's approach for lacking a sound textual basis. As the Sixth Circuit explained, "[the Brady Act] requires only that the State 'verify that the information available' 'does not indicate' federally prohibited status"; Congress did not require the State to "verify that the circumstances of the underlying offense do not violate federal law." *Id.* Stated in more categorical terms, the Sixth Circuit "reject[ed] the position that there is no limit—not even a reasonableness limitation—to a state official's duty to root out matches between federal prohibitions and state laws." *Id.*

In short, the Sixth Circuit found itself "unwilling to accept" either side's interpretation of the Act. *Id.* Yet rather than decide the case on the record before it, the Sixth Circuit remanded the case "to allow both sides to account for what [it] h[ad] said so far in pressing their respective legal arguments and, if appropriate, to supplement the record." *Id.* at *5. Specifically, the Sixth Circuit identified "several follow-up questions" that "could benefit from more 'available' 'information'":

> The requirements of state law, to start, remain unclear. As for the requirements of federal law, there are gaps as well, some legal, some administrative. The record would benefit from more detail about what the NICS database reveals when it comes, for example, to identifying disqualifying domestic-violence misdemeanor convictions and what kinds of resources are needed to go beyond that information to identify potential matches. At the same time, it is not clear from the ATF

advisory—or the kind of process involved in issuing that advisory—what the agency's legal position is when it comes to the Brady Act's obligation on state officials.

*Id.*

## II.

### A.

Given the Sixth Circuit's opinion, the parties agree that the administrative record must be supplemented. The question, again, is *who* should supplement the record and *how*.

Defendants propose a multifaceted approach addressing three topics from the Sixth Circuit's opinion: (1) the MSP's legal position, (2) the ATF's legal position, and (3) the factual operation of the NICS database. Regarding the MSP's legal position, Defendants propose either inviting briefing from the Michigan Attorney General or certifying the question to the Michigan Supreme Court.[4] ECF No. 36 at PageID.613. Regarding the ATF's legal position, Defendants propose submitting a declaration from the ATF outlining its legal position at the time of the Advisory. *Id.* at PageID.614. Regarding the NICS database, Defendants propose submitting either operational documents or an explanatory declaration from FBI-NICS. *Id.* at PageID.613–14. Defendants also propose allowing Plaintiffs to challenge the supplemental record's adequacy before the parties prepare supplemental briefs. *Id.* at PageID.614–16.

Plaintiffs' approach is decidedly more expansive. Relying on the Sixth Circuit's instruction that "*both* sides" be allowed to "account for what [it] h[ad] said," *see Gun Owners*, 2021 WL 5194078, at *5, Plaintiffs ask this Court to open a six- to nine-month discovery period and thereby

---

[4] In January 2022, shortly after remand, Defendants sent a letter to the Michigan Attorney General, asking her to confirm her views regarding the Michigan CPL, the Brady Act, and the MSP's obligations. *See* ECF No. 36-1. But Attorney General Dana Nessel never responded. ECF No. 38 at PageID.631.

allow them to conduct depositions and to serve interrogatories on officials from the ATF, FBI, and MSP, *see* ECF No. 35 at PageID.599–602. Plaintiffs fear that giving control of the supplementation process to Defendants would allow them to "cover [their] tracks" with "post hoc justification[s]." *Id.* at PageID.595–99.

**B.**

Although Plaintiffs' position has some persuasive force, Defendants' proposal ultimately strikes the proper balance between fairness to the parties and judicial economy.

"When courts review an agency decision, '[t]he APA requires courts to review the whole record or those parts of it cited by the party.'" *Little Traverse Lake Prop. Owners Ass'n v. Nat'l Park Serv.*, 883 F.3d 644, 657 (6th Cir. 2018) (quoting *Sierra Club v. Slater*, 120 F.3d 623, 638 (6th Cir. 1997)). "[T]he focal point for judicial review should be the administrative record already in existence, not some new record made initially in the reviewing court." *Id.* (quoting *Kroger Co. v. Reg'l Airport Auth. of Louisville & Jefferson Cnty.*, 286 F.3d 382, 387 (6th Cir. 2002)). "[S]upplementation of the record before the reviewing court is rare and requires 'exceptional circumstances.'" *Id.* (quoting *Charter Twp. of Van Buren v. Adamkus*, 188 F.3d 506 (6th Cir. 1999) (unpublished table decision)).

Generally, supplementation of the record is appropriate "when an agency has deliberately or negligently excluded certain documents from the record, or when a court needs 'background' information to determine whether the agency has considered all relevant factors." *Id.* at 657–58 (quoting *S. Forest Watch, Inc. v. Jewell*, 817 F.3d 965, 977 (6th Cir. 2016)).

This case falls into the latter category, as this Court needs additional "background." *Id.* Although Plaintiffs reference various documents that they believe were not included in the record, *see* ECF No. 35 at PageID.599–601 (claiming that the ATF relied on "communications between

- 9 -

the FBI, ATF, and MSP that were not summarized or produced"), there is no reason to believe that such documents, if they exist, were "deliberately or negligently excluded," *Little Traverse*, 883 F.3d at 657.

And if what this Court and the Sixth Circuit need is simply additional background, then it is unclear why Defendants' multifaceted approach is insufficient. As previously noted, Defendants intend to introduce internal documents and declarations regarding the operation of the NICS database, the Michigan Attorney General's legal position, and the ATF's legal position—all of which the Sixth Circuit identified as topics of interest. *See Gun Owners*, 2021 WL 5194078, at *4–5. Plaintiffs are correct that "courts may not rely on litigation affidavits that provide post hoc rationalizations for the agency's action." ECF No. 37 at PageID.625 (quoting *Lewis v. Babbitt*, 998 F.2d 880, 882 (10th Cir. 1993)). But there is no indication that Defendants' declarations would provide "post-hoc rationalizations," or that Defendants could answer the Sixth Circuit's questions without declarations.[5] *See Gun Owners*, 2021 WL 5194078, at *5 (seeking "[the ATF's] legal position . . . when it comes to the Brady Act's obligation on state officials"). Further, it is well established that courts may "obtain affidavits from the agency that provide additional explanations of the reasons for its decision." *Lewis*, 998 F.2d at 882 (citing *Camp v. Pitts*, 411 U.S. 138, 142 (1973)).

As for the Sixth Circuit's instruction "to allow both sides to account for what [it] h[ad] said . . . and, if appropriate, to supplement the record," the key phrase is "if appropriate." The Sixth Circuit did not expressly authorize this Court to compel agency testimony, as it has done in other

---

[5] To the extent that such information could be obtained through depositions, as Plaintiffs have suggested, this case is particularly inapt for such discovery given the potential for questioning to cross into privileged territory. *See U.S. Fish & Wildlife Serv. v. Sierra Club, Inc.*, 141 S. Ct. 777, 785 (2021) (noting that agencies need not disclose "predecisional, deliberative documents" under the deliberative-process privilege).

cases. *See, e.g.*, *Sherwood v. Tenn. Valley Auth.*, 842 F.3d 400, 407 (6th Cir. 2016) (directing district court to compile administrative record and authorizing it to "order the agency's decision-maker to testify"). Nor did it expressly authorize a period of discovery. Instead, the Sixth Circuit left it to this Court to define the appropriate limits of supplementation. And until Plaintiffs can show some specific inadequacy in Defendants' supplemental record, it would be inappropriate to sanction a wide-ranging discovery expedition, especially one that might last six to nine months.

### III.

Accordingly:

1. The parties are **DIRECTED** to meet and confer regarding a letter addressed to the Michigan Attorney General (AG).[6] The letter must invite the AG to file briefing stating her position on the MSP's duties under the Brady alternate exception. The letter must also state that if the AG does not respond, Defendants will subpoena her for the production of relevant documents. The parties must submit a jointly proposed version of the letter **on or before June 7, 2022**. If approved, this Court will direct Defendants to serve a copy of the letter on the AG by first-class mail.

2. Defendants are **DIRECTED** to file the supplemental record no later than **30 days** after the earlier of the following:

   a. the date on which the AG serves her response to this Court's letter; or

   b. the date on which the AG, having not responded to this Court's letter and having been served with a subpoena, serves her response to the subpoena.

---

[6] This directive is consistent with the Sixth Circuit's recommendation that "[t]hrough it all, the parties may wish to consider whether this is a dispute that lends itself to negotiation and mediation, including the possibility of a negotiation that includes the Michigan Attorney General and the Michigan State Police." *Gun Owners*, 2021 WL 5194078, at *5.

3. Plaintiffs are **DIRECTED** to file any objections they have to the supplemental record no later than **30 days** after the date on which Defendants file it.

It is **SO ORDERED**.


Dated: May 18, 2022                                  s/Thomas L. Ludington
                                                     THOMAS L. LUDINGTON
                                                     United States District Judge