UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

GUN OWNERS OF AMERICA, INC.
and DONALD J. ROBERTS II,

              Plaintiffs,                            Case No. 1:20-cv-10639

v.                                          Honorable Thomas L. Ludington
                                                  United States District Judge

U.S. DEPARTMENT OF JUSTICE, *et al.*,

              Defendants.

_____/

**OPINION AND ORDER (1) DENYING PLAINTIFFS' MOTION FOR
RECONSIDERATION AND (2) DIRECTING DEFENDANTS TO SERVE LETTER**

        This action involves an Administrative Procedure Act challenge to a public-safety advisory issued by the Bureau of Alcohol, Tobacco, and Firearms (ATF). Recently, this Court established a schedule for Defendants to supplement the administrative record and directed the parties to prepare a letter to the Michigan Attorney General ("Michigan AG"). *See Gun Owners of Am., Inc. v. DOJ*, No. 1:20-CV-10639, 2022 WL 1714625, at *6 (E.D. Mich. May 27, 2022). Plaintiffs have since filed a motion for reconsideration, asking this Court to discard the letter and to certify a question to the Michigan Supreme Court. ECF No. 40.

        Because Plaintiffs have not shown a persuasive reason for involving the Michigan Supreme Court at this juncture, their motion for reconsideration will be denied, and Defendants will be directed to serve a copy of their proposed letter on the Michigan AG by first-class mail.

**I.**

        At the center of this case is the ATF's decision to issue a public-safety advisory regarding Michigan's concealed pistol licenses (CPLs). After Congress passed the Brady Handgun Violence Prevention Act of 1993, Michigan enacted a statute designed to allow Michigan CPL holders to

avoid submitting to a federal background check every time they purchased a firearm. The statute requires Michigan officials to "determine[] through the federal national instant criminal background check system that the applicant [for the license] is not prohibited under federal law from possessing or transporting a firearm.'" *Gun Owners of Am., Inc. v. DOJ*, No. 21-1131, 2021 WL 5194078, at *1 (6th Cir. Nov. 9, 2021) (quoting MICH. COMP. LAWS § 28.426)). This language is intended to conform with a background-check exception in the Brady Act for permitholders from states where "the law of the State provides that such a permit is to be issued only after an authorized government official has verified that the information available to such official does not indicate that possession of a firearm by such other person would be in violation of law." *Id.* at *3 (quoting 18 U.S.C. § 922(t)(3)(A)(ii)).

For a while, the ATF was satisfied with Michigan's CPL process. *Id.* at *1. But that changed in 2017, when the ATF learned that the Michigan State Police (MSP)—the agency tasked with enforcing Michigan's CPL statute—was no longer conducting "further research" to determine whether some CPL applicants might be prohibited by federal law from possessing a firearm. *Id.* at *2. A years-long dispute ensued between the ATF and the MSP over the requirements of the Brady Act, and in March 2020, the ATF issued a public-safety advisory informing federal firearm licensees that it no longer viewed the Michigan CPL as a valid background-check exception. *Id.*

Gun Owners of America and one of its members, Donald J. Roberts II, have sued the ATF, its Acting Director, and the U.S. Department of Justice to invalidate the Advisory. Their primary contention is that because the Brady Act refers to the "law of the State," and Michigan's CPL law facially satisfies the Brady Act's requirements, the ATF had no authority to withdraw recognition of the Michigan CPL based on the MSP's conduct and opinions. *Id.* at *3. Defendants, on the other hand, contend that the Brady Act requires some level of research and analysis by state officials,

because it requires them to "verify" that "the information available" "does not indicate" a federal prohibition. *Id.* at *4.

As in most Administrative Procedure Act challenges, the administrative record in this case was limited to the facts that the ATF considered at the time of its decision. *See Roberts v. DOJ*, 507 F. Supp. 3d 864, 871–74 (E.D. Mich. 2020). The record reflected the ATF's efforts to engage the MSP and the Michigan AG, but those efforts were ultimately rebuffed. *See id.* at 872; *see also* ECF No. 21 at PageID.460–61. Applying *Skidmore* deference, this Court adopted the ATF's interpretation and entered summary judgment for Defendants. *See Roberts*, 507 F. Supp. 3d at 875–77.

Recently, the Sixth Circuit Court of Appeals vacated this Court's decision and remanded the case to gather "more 'available' information." *See Gun Owners*, 2021 WL 5194078, at *5. The Sixth Circuit was "unwilling to accept" either side's view of the Brady Act and suggested that the parties supplement the administrative record to address "several follow-up questions." *See id.* at *5 (concluding that "[t]he record would benefit from more detail about" the background-check process, "the kind of process involved in issuing th[e] advisory," "the requirements of state law," and "[the ATF's] legal position").

On remand, the parties could not agree on how to implement the Sixth Circuit's decision. Defendants believed that the Sixth Circuit's decision called for a two-step approach: First, they would supplement the administrative record with explanatory declarations and other documents from the Michigan AG, the FBI-NICS, and the ATF; then, they would allow Plaintiffs to challenge the record's adequacy before dispositive briefing. *See* ECF No. 36 at PageID.611–16. Plaintiffs, by contrast, proposed a more extensive process. Instead of supplementing the administrative record with additional agency documents, Plaintiffs suggested opening a six- to nine-month discovery

period to allow the parties to obtain discovery through depositions, interrogatories, and other traditional devices. ECF No. 35 at PageID.599–602. This approach was preferable, they argued, because the Sixth Circuit intended for "both sides" to supplement the administrative record, not for Defendants to "curate a brand-new, one-sided record." *Id.* at PageID.595.

After carefully weighing the parties' interpretations of the Sixth Circuit's decision and their proposals, this Court found that Defendant's approach "str[uck] the proper balance between fairness to the parties and judicial economy." *Gun Owners*, 2022 WL 1714625, at \*5. Although Plaintiffs concerns about a "one-sided record" appeared genuine, they were based on little more than speculation about Defendants' motives. *See id.* at \*5–6. The parties were therefore directed to proceed with Defendants' proposal, the first step of which was the preparation of a letter soliciting the Michigan AG's opinion about the MSP's duties under the Brady Act. *Id.* at \*6.

Once again, however, the parties have been unable to reach an agreement and have submitted two competing solicitation letters. ECF No. 41. Plaintiffs have also filed a motion for reconsideration, asking this Court to discard the letter process altogether. ECF No. 40.  The proper way forward, they argue, is not to inquire with the Michigan AG, but to certify the meaning of "the law of the State" to the Michigan Supreme Court. *Id.* at PageID.651–52. According to Plaintiffs, the Michigan AG has no statutory authority to respond to the letter, even if she has an interest in doing so. Plaintiffs also argue that any response she provides would not be a binding interpretation of Michigan law. *Id.* at PageID.653–54.

Because this Court finds that a hearing is unnecessary, it will proceed to address Plaintiffs' motion on the papers. *See* E.D. Mich. LR 7.1(h)(3) ("No response to [a motion for reconsideration] and no oral argument are permitted unless the court orders otherwise.").

## II.

In this District, motions for reconsideration of nonfinal orders are governed by Local Rule

7.1(h)(2), which provides:

> (2)    Non-Final Orders. Motions for reconsideration of non-final orders are
> disfavored. They must be filed within 14 days after entry of the order and may be
> brought only upon the following grounds:
>> (A)    The court made a mistake, correcting the mistake changes the
>> outcome of the prior decision, and the mistake was based on the record and
>> law before the court at the time of its prior decision;
>> (B)    An intervening change in controlling law warrants a different
>> outcome; or
>> (C)    New facts warrant a different outcome and the new facts could not
>> have been discovered with reasonable diligence before the prior decision.

E.D. Mich. LR 7.1(h)(2).

## III.

## A.

Plaintiffs argue that this Court's decision to send a letter to the Michigan AG was erroneous

because the Michigan AG (1) lacks authority to respond to the letter and (2) cannot provide a

binding interpretation of Michigan law. *See* ECF No. at PageID.651–54. Rather than sending a

solicitation letter to the Michigan AG, Plaintiffs propose that this Court certify the meaning of

"law of the State" to the Michigan Supreme Court. *Id.* at PageID.657–58.

Plaintiffs' position lacks merit for multiple reasons. First, Plaintiffs appear to

misunderstand the Michigan AG's statutory authority. They claim that the Michigan AG cannot

respond to the letter because doing so would exceed her authority under Michigan Compiled Laws

§ 14.32. *Id.* at PageID.653. But section 14.32 does not define when the AG *may* give her opinion;

it defines when the AG *must* give her opinion—specifically, when she receives a request from

certain public bodies and officials, which, notably, do not include this Court. *See* MICH. COMP.

LAWS § 14.32 ("It shall be the *duty* of the attorney general, when required, to give his opinion upon

all questions of law submitted to him by the legislature, or by either branch thereof, or by the governor, auditor general, treasurer or any other state office . . . ." (emphasis added)). This Court is unaware of any provision of Michigan law that would prohibit the AG from voluntarily responding to a federal inquiry.

Second, the Michigan AG need not provide—and is not being asked to provide—a binding interpretation of Michigan law. She is being asked to clarify, if she so wishes, the opinion of her office on the requirements of the Brady Act, because the Sixth Circuit specifically faulted Defendants for relying on interagency hearsay.[1] *See Gun Owners*, 2021 WL 5194078, at *4 ("All [the ATF] has are ostensible statements by unidentified individuals in the Michigan State Police who spoke to unidentified people in the Michigan Attorney General's office—along with an unexamined audit that by itself does not show how state law works and that does not by itself show what the Brady Act requires."). Because the MSP purports to rely on guidance from the Michigan AG, her opinion is directly relevant to whether the ATF acted within the scope of its authority.

Third, certifying the meaning of "law of the State" to the Michigan Supreme Court would be futile, because the Michigan Supreme Court cannot provide a binding interpretation of federal law. *See Commodities Exp. Co. v. Detroit Int'l Bridge Co.*, 695 F.3d 518, 528 (6th Cir. 2012) ("[A] state court's opinion on an issue of federal law . . . is entitled to no deference whatsoever." (quoting *First Am. Title Co. v. Devaugh*, 480 F.3d 438, 455 (6th Cir. 2007))). The Michigan Supreme Court could, of course, provide a binding interpretation of Michigan's CPL statute. But at this juncture,

---

[1] The Sixth Circuit even went as far as suggesting that the parties, the MSP, and the Michigan AG consider mediating the case. *See Gun Owners*, 2021 WL 5194078, at *5.

the MSP's compliance with Michigan law is not the primary issue. Rather, the primary issue is whether the MSP complied with *federal law*.[2] *See Gun Owners*, 2021 WL 5194078, at \*4–5.

It might become advisable to certify a question regarding the meaning of Michigan's CPL statute to the Michigan Supreme Court at some point. But at this stage, there does not appear to be "an unsettled question of [Michigan] law" that would "likely to control the outcome" of this case, as required for purposes of certification. *See* E.D. Mich. LR 83.40 (providing procedure for certification).

For these reasons, Plaintiffs' motion for reconsideration will be denied.

**B.**

As a final matter, this Court must address the parties' competing letters. *See* ECF No. 41. Defendants' draft neatly recites the relevant factual and procedural background and, consistent with this Court's direction, asks the Michigan AG for "[her] position on the MSP's duties under the Brady [Act]." *Id.* at PageID.664. The only difference between Defendants' draft and Plaintiffs' draft is that Plaintiffs' draft includes additional language regarding the operation of Michigan Compiled Laws § 14.32, which Plaintiffs believe deprives the Michigan AG of authority to respond to the letter. *See* ECF No. 41-2 at PageID.667.

Because Plaintiffs' interpretation of section 14.32 seems to be erroneous, *see* discussion *supra* Section III.A., Defendants' draft letter will be adopted. Accordingly, Defendant will be

---

[2] Plaintiffs seem to still believe that the plain meaning of Michigan's CPL statute is dispositive. But the Sixth Circuit squarely rejected that argument in its remand opinion. *See Gun Owners*, 2021 WL 5194078, at \*3 ("[Plaintiffs] argue that 'the law of the State' permits the ATF (and us) to inquire only whether a state statute honors the relevant language of the federal law. That is a bridge too far . . . A State, in short, could not pass a seemingly compliant state statute, then ignore it for all time." (internal citations omitted)).

- 7 -

directed to serve a copy of their letter, along with enclosures, on the Michigan AG by first-class mail.

### IV.

Accordingly, it is **ORDERED** that Plaintiffs' Motion for Reconsideration, ECF No. 40, is **DENIED**.

Further, it is **ORDERED** that Defendants are **DIRECTED** to serve a copy of their letter, ECF No. 41-1, and all proposed enclosures, on the Michigan Attorney General, by first-class mail, **no later than August 5, 2022**.

Dated: May 18, 2022                          s/Thomas L. Ludington
                                             THOMAS L. LUDINGTON
                                             United States District Judge