UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

GUN OWNERS OF AMERICA,
INC.; DONALD J. ROBERTS, II,

        Plaintiffs

v

UNITED STATES DEPARTMENT
OF JUSTICE; BUREAU OF
ALCOHOL, TOBACCO, FIREARMS
AND EXPLOSIVES; REGINA
LOMBARDO,

        Defendants.

_____/

Case No. 1:20-cv-10639

Honorable Thomas L.
Ludington
United States District Judge

**STATE OF MICHIGAN'S AMICUS CURIAE BRIEF**

Fadwa A. Hammoud (P74185)
Michigan Solicitor General
Counsel of Record

Jessica A. McGivney (P64533)
Assistant Attorney General
Attorneys for Amicus Curiae
Michigan Dep't of Attorney
General
State Operations Division
P.O. Box 30736
Lansing, MI 48909
(517) 335-7573

Dated: September 30, 2022

# TABLE OF CONTENTS

<u>Page</u>

Index of Authorities ......................................................................................... ii

Statement of Jurisdiction ............................................................................. iii

Statement of Question Presented ............................................................... iv

Statutes Involved .............................................................................................. v

Statement of *Amicus Curiae* ..................................................................... xiii

Introduction ...................................................................................................... 1

Argument ............................................................................................................ 4

I.    The Michigan Firearms Act only requires the Michigan State
       Police to conduct its verification using information that is
       contained in the Michigan law enforcement information
       network and in the national instant criminal background
       check system .......................................................................................... 4

Conclusion and Relief Requested .................................................................. 9

i

# INDEX OF AUTHORITIES

<u>Page</u>

**Cases**

*Detroit Public Schools v. Conn,*
  863 N.W.2d 234 (Mich. Ct. App. 2014) ...................................................5

*South Dearborn Environmental Improvement Ass'n, Inc v. Dep't of
  Environmental Quality,*
  917 N.W.2d 603 (Mich. 2018)................................................................5

*Tomecek v. Bavas,*
  759 N.W.2d 178 (Mich. 2008)................................................................4

**Statutes**

Mich. Comp. Laws § 28.425b...................................................................3, 5

Mich. Comp. Laws § 28.426(2) ...............................................................2, 4

## STATEMENT OF JURISDICTION

In an opinion and order dated May 27, 2022, this court

ordered that:

> The parties are DIRECTED to meet and confer regarding a
> letter addressed to the Michigan Attorney General (AG).
> The letter must invite the AG to file briefing stating her
> position on the MSP's duties under the Brady alternate
> exception.  The letter must also state that if the AG does not
> respond, Defendants will subpoena her for the production of
> relevant documents. . . .  If approved, this Court will direct
> Defendants to serve a copy of the letter on the AG by first-
> class mail.

**STATEMENT OF QUESTION PRESENTED**

1.   The Michigan Firearms Act provides that the Michigan
     Department of State Police (MSP) shall "verify" whether an
     applicant qualifies for a concealed pistol license relying on
     information from the Michigan law enforcement information
     network and the national instant criminal background check
     system.  The federal agencies that oversee federal firearms
     regulations have determined that the MSP's review does not
     meet federal guidelines for bypassing federal background
     checks.  Does the Michigan Firearms Act require the MSP to
     conduct its verification using information that is not
     contained in the criminal-information databases?

     State of Michigan's answer: No.

## STATUTES INVOLVED

Section 5b of the Michigan Firearms Act, MCL 28.425b provides in pertinent part:

(1) To obtain a license to carry a concealed pistol, an individual shall apply to the county clerk in the county in which the individual resides.  The applicant shall file the application with the county clerk in the county in which the applicant resides during the county clerk's normal business hours.  The application must be on a form provided by the director of the department of state police and allow the applicant to designate whether the applicant seeks an emergency license.  The applicant shall sign the application under oath.

\* \* \*

(6) The department of state police shall verify the requirements of subsection (7)(d), (e), (f), (h), (i), (j), (k), and (m) through the law enforcement information network and the national instant criminal background check system and shall report to the county clerk all statutory disqualifications, if any, under this act that apply to an applicant.

(7) The county clerk shall issue and shall send by first-class mail a license to an applicant to carry a concealed pistol within the period required under this act if the county clerk determines that all of the following circumstances exist:

\*\*\*

(d) Based solely on the report received from the department of state police under subsection (6), the applicant is not the subject of an order or disposition under any of the following:

(i) Section 464a of the mental health code, 1974 PA 258, MCL 330.1464a.

v

(ii) Section 5107 of the estates and protected individuals code, 1998 PA 386, MCL 700.5107.

(iii) Sections 2950 and 2950a of the revised judicature act of 1961, 1961 PA 236, MCL 600.2950 and 600.2950a.

(iv) Section 6b of chapter V of the code of criminal procedure, 1927 PA 175, MCL 765.6b, if the order has a condition imposed under section 6b(3) of chapter V of the code of criminal procedure, 1927 PA 175, MCL 765.6b.

(v) Section 16b of chapter IX of the code of criminal procedure, 1927 PA 175, MCL 769.16b.

(e) Based solely on the report received from the department of state police under subsection (6), the applicant is not prohibited from possessing, using, transporting, selling, purchasing, carrying, shipping, receiving, or distributing a firearm under section 224f of the Michigan penal code, 1931 PA 328, MCL 750.224f.

(f) Based solely on the report received from the department of state police under subsection (6), the applicant has never been convicted of a felony in this state or elsewhere, and a felony charge against the applicant is not pending in this state or elsewhere at the time he or she applies for a license described in this section.

* * *

(h) Based solely on the report received from the department of state police under subsection (6), the applicant has not been convicted of a misdemeanor violation of any of the following in the 8 years immediately preceding the date of application and a charge for a misdemeanor violation of any of the following is not pending against the applicant in this

vi

state or elsewhere at the time he or she applies for a license
described in this section:

> (i) Section 617a (failing to stop when involved in a
> personal injury accident), section 625 as punishable
> under subsection (9)(b) of that section (operating while
> intoxicated, second offense), section 625m as
> punishable under subsection (4) of that section
> (operating a commercial vehicle with alcohol content,
> second offense), section 626 (reckless driving), or a
> violation of section 904(1) (operating while license
> suspended or revoked, second or subsequent offense) of
> the Michigan vehicle code, 1949 PA 300, MCL
> 257.617a, 257.625, 257.625m, 257.626, and 257.904.

> (ii) Section 185(7) of the aeronautics code of the state of
> Michigan, 1945 PA 327, MCL 259.185 (operating
> aircraft while under the influence of intoxicating liquor
> or a controlled substance with prior conviction).

> (iii) Section 29 of the weights and measures act, 1964
> PA 283, MCL 290.629 (hindering or obstructing certain
> persons performing official weights and measures
> duties).
> (iv) Section 10 of the motor fuels quality act, 1984 PA
> 44, MCL 290.650 (hindering, obstructing, assaulting, or
> committing bodily injury upon director or authorized
> representative).

> (v) Section 80176 as punishable under section
> 80177(1)(b) (operating vessel under the influence of
> intoxicating liquor or a controlled substance, second
> offense), section 81134 as punishable under subsection
> (8)(b) of that section (operating ORV under the
> influence of intoxicating liquor or a controlled
> substance, second or subsequent offense), or section
> 82127 as punishable under section 82128(1)(b)
> (operating snowmobile under the influence of

intoxicating liquor or a controlled substance, second offense) of the natural resources and environmental protection act, 1994 PA 451, MCL 324.80176, 324.80177, 324.81134, 324.82127, and 324.82128.

(vi) Section 7403 of the public health code, 1978 PA 368, MCL 333.7403 (possession of controlled substance, controlled substance analogue, or prescription form).

(vii) Section 353 of the railroad code of 1993, 1993 PA 354, MCL 462.353, punishable under subsection (4) of that section (operating locomotive under the influence of intoxicating liquor or a controlled substance, or while visibly impaired, second offense).

(viii) Section 7 of 1978 PA 33, MCL 722.677 (displaying sexually explicit matter to minors).

(ix) Section 81 (assault or domestic assault), section 81a(1) or (2) (aggravated assault or aggravated domestic assault), section 115 (breaking and entering or entering without breaking), section 136b(7) (fourth degree child abuse), section 145n (vulnerable adult abuse), section 157b(3)(b) (solicitation to commit a felony), section 215 (impersonating peace officer or medical examiner), section 223 (illegal sale of a firearm or ammunition), section 224d (illegal use or sale of a self-defense spray), section 226a (sale or possession of a switchblade), section 227c (improper transportation of a loaded firearm), section 229 (accepting a pistol in pawn), section 232a (improperly obtaining a pistol, making a false statement on an application to purchase a pistol, or using false identification to purchase a pistol), section 233 (intentionally aiming a firearm without malice), section 234 (intentionally discharging a firearm aimed without malice), section 234d (possessing a firearm on prohibited premises), section 234e (brandishing a firearm in public), section 234f

(possession of a firearm by an individual less than 18 years of age), section 235 (intentionally discharging a firearm aimed without malice causing injury), section 235a (parent of a minor who possessed a firearm in a weapon free school zone), section 236 (setting a spring gun or other device), section 237 (possessing a firearm while under the influence of intoxicating liquor or a controlled substance), section 237a (weapon free school zone violation), section 335a (indecent exposure), section 411h (stalking), or section 520e (fourth degree criminal sexual conduct) of the Michigan penal code, 1931 PA 328, MCL 750.81, 750.81a, 750.115, 750.136b, 750.145n, 750.157b, 750.215, 750.223, 750.224d, 750.226a, 750.227c, 750.229, 750.232a, 750.233, 750.234, 750.234d, 750.234e, 750.234f, 750.235, 750.235a, 750.236, 750.237, 750.237a, 750.335a, 750.411h, and 750.520e.

(x) Former section 228 of the Michigan penal code, 1931 PA 328.5

(xi) Section 1 (reckless, careless, or negligent use of a firearm resulting in injury or death), section 2 (careless, reckless, or negligent use of a firearm resulting in property damage), or section 3a (reckless discharge of a firearm) of 1952 PA 45, MCL 752.861, 752.862, and 752.863a.

(xii) A violation of a law of the United States, another state, or a local unit of government of this state or another state substantially corresponding to a violation described in subparagraphs (i) to (xi).

(i) Based solely on the report received from the department of state police under subsection (6), the applicant has not been convicted of a misdemeanor violation of any of the following in the 3 years immediately preceding the date of application unless the misdemeanor violation is listed under

ix

subdivision (h) and a charge for a misdemeanor violation of any of the following is not pending against the applicant in this state or elsewhere at the time he or she applies for a license described in this section:

(i) Section 625 (operating under the influence), section 625a (refusal of commercial vehicle operator to submit to a chemical test), section 625k (ignition interlock device reporting violation), section 625l (circumventing an ignition interlock device), or section 625m punishable under subsection (3) of that section (operating a commercial vehicle with alcohol content) of the Michigan vehicle code, 1949 PA 300, MCL 257.625, 257.625a, 257.625k, 257.625l, and 257.625m.

(ii) Section 185 of the aeronautics code of the state of Michigan, 1945 PA 327, MCL 259.185 (operating aircraft under the influence).
(iii) Section 81134 (operating ORV under the influence or operating ORV while visibly impaired), or section 82127 (operating a snowmobile under the influence) of the natural resources and environmental protection act, 1994 PA 451, MCL 324.81134 and 324.82127.

(iv) Part 74 of the public health code, 1978 PA 368, MCL 333.7401 to 333.7461 (controlled substance violation).
(v) Section 353 of the railroad code of 1993, 1993 PA 354, MCL 462.353, punishable under subsection (3) of that section (operating locomotive under the influence).

(vi) Section 167 (disorderly person), section 174 (embezzlement), section 218 (false pretenses with intent to defraud), section 356 (larceny), section 356d (second degree retail fraud), section 359 (larceny from a vacant building or structure), section 362 (larceny by conversion), section 362a (larceny--defrauding lessor), section 377a (malicious destruction of property),

x

section 380 (malicious destruction of real property), section 535 (receiving or concealing stolen property), or section 540e (malicious use of telecommunications service or device) of the Michigan penal code, 1931 PA 328, MCL 750.167, 750.174, 750.218, 750.356, 750.356d, 750.359, 750.362, 750.362a, 750.377a, 750.380, 750.535, and 750.540e.

(vii) A violation of a law of the United States, another state, or a local unit of government of this state or another state substantially corresponding to a violation described in subparagraphs (i) to (vi).

(j) Based solely on the report received from the department of state police under subsection (6), the applicant has not been found guilty but mentally ill of any crime and has not offered a plea of not guilty of, or been acquitted of, any crime by reason of insanity.

(k) Based solely on the report received from the department of state police under subsection (6), the applicant is not currently and has never been subject to an order of involuntary commitment in an inpatient or outpatient setting due to mental illness.

* * *

(m) Based solely on the report received from the department of state police under subsection (6), the applicant is not under a court order of legal incapacity in this state or elsewhere.

Section 6 of the Michigan Firearms Act, MCL 28.426, provides in full:

(1) An issuing agency shall not issue a license to an applicant under section 21 unless both of the following apply:

(a) The issuing agency has determined through the federal national instant criminal background check system that the applicant is not prohibited under federal law from possessing or transporting a firearm.

(b) If the applicant is not a United States citizen, the issuing agency has verified through the United States Immigration and Customs Enforcement databases that the applicant is not an illegal alien or a nonimmigrant alien.

(2) A county clerk shall not issue a license to an applicant under section 5b unless both of the following apply:

(a) The department of state police, or the county sheriff under section 5a(4), has determined through the federal national instant criminal background check system that the applicant is not prohibited under federal law from possessing or transporting a firearm.

(b) If the applicant is not a United States citizen, the department of state police has verified through the United States Immigration and Customs Enforcement databases that the applicant is not an illegal alien or a nonimmigrant alien.

## STATEMENT OF *AMICUS CURIAE*

The plaintiffs, Gun Owners of America, Inc., and one of its
members, filed the underlying lawsuit in 2020 alleging that the federal
agency defendants (Department of Justice or DOJ) unlawfully rescinded
recognition of Michigan's concealed pistol licenses (CPL) as constituting
an "alternative permit" for purposes of satisfying—and bypassing—
certain federal firearms background check requirements.  This Court
granted summary judgment in favor of DOJ; however, on appeal, the
Sixth Circuit Court of Appeals remanded the case and vacated this
Court's opinion, ruling in pertinent part that the parties needed to
supplement the administrative record to address "several follow-up
questions."

On remand, this Court directed the parties to "meet and confer
regarding a letter addressed to the Michigan Attorney General [(AG)]."
The Court further directed that the letter "must invite the AG to file
briefing stating her position on the [Michigan Department of State
Police's] [(MSP's)] duties under the Brady alternate exception" and
must also "state that if the AG does not respond, Defendants will
subpoena her for the production of relevant documents."

On August 2, 2022, the DOJ sent a letter to AG Dana Nessel inviting her to submit a statement pursuant to the court's order. Separately, the AG has acknowledged receipt of the DOJ's letter and indicated the intent to file a responsive statement by September 30, 2022.  The AG provides the following brief in support of their statement as an *amicus curiae* so as to apprise the Court of the State of Michigan's interpretation with respect to MSP's obligations under Michigan law to verify the eligibility of CPL applicants.

While respecting the Court's jurisdiction to adjudicate the underlying controversy, which involves federal questions, the AG wishes to alert the Court that the instant inquiry potentially implicates information that is protected from disclosure by the attorney-client privilege and the work-product doctrine, respectively.

Subject to those constraints, and while reserving the right to assert, or reassert, these privileges as may be necessary, the AG hereby offers this statement to: (1) provide clarity as to the State of Michigan's interpretation as to the Michigan Firearms Act; and (2) indicate the scope of MSP's obligations when conducting background checks in the verification of eligibility for applicants of CPLs under said statute.

## INTRODUCTION

This controversy arises due to a 2020 determination by federal authorities that Michigan CPLs no longer qualify as an alternative to federally conducted criminal background checks that are otherwise required by the Brady Handgun Violence Prevention Act for certain types of firearms purchases or transfers.  Prior to this determination, which was communicated to the State of Michigan on March 3, 2020, Michigan CPLs could be used in certain circumstances to bypass federal background checks that would otherwise be required.  The federal Bureau of Alcohol, Tobacco, Firearms and Explosives (ATF), which administers the bypass program—in which certain state-issued firearms permits are designated as so-called "alternative permits"— explained that its determination was driven by the results of an audit it conducted relative to MSP's "compliance with the use of [the Law enforcement Information Network (LEIN) and the National Instant Criminal Background Check System (NICS)]" in the execution of its background checks of CPL applications."

In pertinent part, the audit found that the background checks that MSP conducted under the Michigan Firearms Act for CPL applicants,

which entail the verification of whether information available through LEIN and NICS indicates the presence of federal disqualifications, lacked the requisite thoroughness for use as an "alternative" to federally conducted criminal background checks.  The audit concluded that for Michigan CPLs to again qualify as an "alternative permit," the State of Michigan would need to demonstrate that the background checks involve not only the review of information contained in the criminal information databases, but also any additional research and investigation that might otherwise be required for MSP to independently determine that the applicant "is not prohibited under federal law from possessing or transporting a firearm."  Mich. Comp. Laws § 28.426(2).[1]

As is accurately depicted in the Sixth Circuit Court's November 9, 2021 opinion (slip opinion at p. 2), the crux of this controversy is whether the Michigan Firearms Act provision that MSP "verify" the presence of certain federally prescribed disqualifiers "through" certain

_____

[1] As noted by the Sixth Circuit Court of Appeals, the additional investigation can be extensive, particularly in reviews involving a misdemeanor crime of domestic violence, which is not uniformly defined across the United States.  In such instances, information contained in LEIN and NICS does not necessarily indicate the presence of a disqualification.  Additional investigation would be required to verify that the circumstances of the underlying offense do not violate federal law.

criminal-information databases requires MSP to ascertain that the circumstances of the underlying offense(s) do not violate federal law, or whether said provision calls only for MSP to verify that the available information "does not indicate" the applicant is federally disqualified. As explained ahead, when considered in light of the statutory scheme as a whole and the language used by the Legislature, the most natural reading of the Michigan Firearms Act is that the Legislature intended, in pertinent part, for MSP to verify and determine *on the basis of information contained in LEIN and NICS*, respectively, whether the individual is disqualified under the provisions therein enumerated. Accordingly, Michigan law does not contemplate, let alone require, that MSP conduct additional inquiries beyond those sources in making the requisite determinations.

## ARGUMENT

I.   **The Michigan Firearms Act only requires the Michigan State Police to conduct its verification using information that is contained in the Michigan law enforcement information network and in the national instant criminal background check system.**

This inquiry is governed by section 5b of the Firearms Act, Mich. Comp. Laws § 28.425b, which prescribes the requirements for obtaining a CPL.  Subsection 5b(6) provides, in pertinent part, for MSP to verify whether the applicant meets certain requirements for licensure:

> The department of state police shall verify the requirements of subsection (7)(d), (e), (f), (h), (i), (j), (k) and (m) through the law enforcement information network and the national instant criminal background check system and shall report to the county clerk all statutory disqualifications, if any, under this act that apply to an applicant.[2]

The "requirements of subsection (7)(d), (e), (f), (h), (i), (j), (k), and (m)" encompass, *inter alia*, felony convictions and certain specified misdemeanor convictions.  The LEIN and NICS are computerized non-

---

[2] Concomitantly, section 6(2) of the Firearms Act, Mich. Comp. Laws § 28.426(2), provides, in pertinent part:  "A county clerk shall not issue a license to an applicant under section 5b unless . . . (a) [t]he department of state police . . . has determined *through the federal national instant criminal background check system* that the applicant is not prohibited under federal law from possessing or transporting a firearm."  (Emphasis added.)  Here, again, it is the State of Michigan's position that the Firearms Act does not require investigation of potential disqualifying offenses *beyond* that which is contained in the federal national instant criminal background check system.

public databases that contain criminal justice information concerning criminal activity and mental status adjudications.

When interpreting a statute, the primary rule of construction is to discern and give effect to the Legislature's intent, of which the most reliable indicator is the clear and unambiguous language of the statute. *Tomecek v. Bavas*, 759 N.W.2d 178, 185–186 (Mich. 2008). The language must be enforced as written, giving effect to every word, phrase, and clause. *South Dearborn Environmental Improvement Ass'n, Inc v. Dep't of Environmental Quality*, 917 N.W.2d 603, 608 (Mich. 2018). In *Detroit Public Schools v. Conn*, 863 N.W.2d 234, 381 (Mich. Ct. App. 2014), the Michigan Court of Appeals explained:

> [N]othing may be read into a statute that is not within the intent of the Legislature apparent from the language of the statute itself. Courts may not speculate regarding legislative intent beyond the words expressed in a statute. Hence, nothing may be read into a statute that is not within the manifest intent of the Legislature as derived from the act itself. [Quotation marks and citations omitted.]

A review of the plain language of subsection 5b(6) of the Firearms Act reveals the unambiguous requirement that MSP "shall verify" the presence of prescribed debarments through the use of LEIN and NICS and "shall report to the county clerk all statutory disqualifications."

Mich. Comp. Laws § 28.425b(6).  Accordingly, § 5b(6) specifies that, in conducting the requisite background check, MSP *must* query the prescribed criminal-information databases and determine, on the basis of that information, whether any of the listed disqualifications apply. The statute's plain language does not, however, reflect the intent that MSP is obligated to verify—by conducting *additional* research and investigation to independently determine the presence of federally disqualifying offenses—that the circumstances underlying reported offenses do not violate federal law.

Thus, for the instant inquiry, the question is whether the Michigan Firearms Act *requires* MSP to perform its verification as to the presence of federal disqualifications beyond that which is contained in LEIN and NICS.  The answer to that question is "no."

Beyond the matter of technical interpretation, it bears remembering that even aside from the fact that the statute does not direct the MSP to conduct external investigations and to make independent determinations, the duty if required to do so is not as straight-forward as it might first appear.  First, as already noted, the information contained in LEIN and NICS is neither complete nor is it

necessarily indicative as to whether an individual is federally disqualified from possessing a firearm.  As this Sixth Circuit Court of Appeals observed, inquiries of this nature create "difficult matching problems."  For instance, as it relates to the "misdemeanor crime of domestic violence," which is a federal firearms debarment, LEIN and NICS do not designate (or label) crimes thusly.  So, while a LEIN or NICS check might indicate a conviction of "assault" (or an offense-code corresponding with the same), a determination as to whether the offending conduct involved the federally prescribed definition of "misdemeanor crime of domestic violence" cannot necessarily be made solely on the basis of information contained in the criminal-information systems.  This is not merely a matter of having to cross-reference local criminal ordinances or codes, but rather it would necessitate ascertaining information underlying the offense (e.g., relationship of the victim to the offender or the degree to which physical force was involved) and exercising independent discretion in determining that the offending conduct meets the criteria for a federal debarment.

In addition, and with these systematic limitations in mind, it cannot be seriously questioned that the type and amount of work

involved would be significant considering that MSP processes over 200,000 CPL applications annually.  These considerations shed new light on the question at hand: *where the Michigan Firearms Act provides for MSP to determine "through the federal national instant background check system that the applicant is not prohibited under federal law from possessing or transporting a firearm," does the statute contemplate MSP making those determinations independently with respect to external information?*  Here, again, the answer is "no."  There is nothing in the plain language of the Michigan Firearms Act that expressly empowers, let alone explicitly requires, MSP to make independent determinations based on external information or to marshal the resources that would be required to do so.

## CONCLUSION AND RELIEF REQUESTED

To comply with this order, the State of Michigan hereby provides this statement to explain the interpretation and application of the state firearms statute at issue.

Respectfully submitted,

Fadwa A. Hammoud (P74185)
Michigan Solicitor General
Counsel of Record

/s/ Jessica A. McGivney
Jessica A. McGivney (P64533)
Assistant Attorney General
Attorneys for *Amicus Curiae*
Michigan Dep't of Attorney General
State Operations Division
P.O. Box 30754
Lansing, MI 48909
517-335-7573

Dated:  September 30, 2022