UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

GUN OWNERS OF AMERICA, INC. and
DONALD J. ROBERTS II,

                Plaintiffs,                Case No. 1:20-cv-10639

v.                                        Honorable Thomas L. Ludington
                                        United States District Judge

UNITED STATES DEPARTMENT OF
JUSTICE, *et al*.,

                Defendants.
_____

## PLAINTIFFS' MOTION FOR AN ORDER: 1) STRIKING PARTS OF THE RECORD; 2) PERMITTING LIMITED DISCOVERY; AND 3) FOR LEAVE TO SUPPLEMENT THE RECORD, BASED ON OBJECTIONS TO THE SUPPLEMENTAL ADMINISTRATIVE RECORD

      NOW COME Plaintiffs, GUN OWNERS OF AMERICA, INC., and

DONALD J. ROBERTS II, by and through their counsel, and hereby Move this

Court for an Order: 1) Striking parts of the record, 2) Permitting limited discovery,

and 3) For leave to permit Plaintiffs to supplement the record, based on Objections

to the Supplemental Administrative Record, for the reasons set forth in their attached

Brief in support. As per LR 7.1, there was a conference between attorneys of record

on the motion in which the Plaintiffs' Counsel explained the nature of the motion

and its legal basis, and requested, but did not obtain, concurrence in the relief sought.

Respectfully submitted,

Dated: November 28, 2022

By: /s/Kerry L. Morgan
*Kerry L. Morgan (P32645)
PENTIUK, COUVREUR & KOBILJAK, P.C.
2915 Biddle Avenue, Suite 200
Wyandotte, MI 48192
Main: (734) 281-7100
F: (734) 281-7102
kmorgan@pck-law.com
*Counsel for Plaintiffs

Stephen D. Stamboulieh
Stamboulieh Law, PLLC
P.O. Box 428
Olive Branch, MS 38654
(601) 852-3440
MS Bar No. 102784
stephen@sdslaw.us

## CERTIFICATE OF SERVICE

Karen Zurbo-Miller, is employed by PENTIUK, COUVREUR & KOBILJAK, P.C., and on November 28, 2022, e-filed and served the Attorneys of record using this Court's e-filing and e-service system.

/s/Karen Zurbo-Miller
Karen Zurbo-Miller
Legal Assistant

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

GUN OWNERS OF AMERICA, INC. and
DONALD J. ROBERTS II,

      Plaintiffs,                Case No. 1:20-cv-10639

v.                                Honorable Thomas L. Ludington
                                United States District Judge

UNITED STATES DEPARTMENT OF
JUSTICE, *et al*.,

      Defendants.
_____

### PLAINTIFFS' BRIEF IN SUPPORT OF OBJECTIONS TO THE SUPPLEMENTAL ADMINISTRATIVE RECORD AND MOTION FOR AN ORDER: 1) STRIKING PARTS OF THE RECORD; 2) PERMITTING LIMITED DISCOVERY; AND 3) FOR LEAVE TO SUPPLEMENT THE RECORD

This case involves a challenge to a March 3, 2020 "Public Safety Advisory" by the Bureau of Alcohol, Tobacco, Firearms, and Explosives ("ATF"), issued to Michigan federal firearms licensees ("FFL"), revoking the Michigan concealed pistol license ("CPL") as an alternative to the National Instant Background Check System ("NICS") for firearm sales within the state.

On November 9, 2021, the U.S. Court of Appeals for the Sixth Circuit remanded this case to this Court for further proceedings, in order "to allow both

1

sides to account for what we have said so far in pressing their respective legal arguments and, if appropriate, to supplement the record."   (ECF No. 29, Op. at 9). On February 15, 2022, this Court issued an Order Reopening Case and Directing Post-Remand Briefing.   (ECF No. 34, Page ID. 592-593).   After supplemental briefing and argument by the parties laying out their respective positions concerning discovery and further supplementing the Administrative Record (ECF Nos. 35, 36, 37, and 38), the Court determined that, "[a]lthough Plaintiffs' position has some persuasive force, Defendants' proposal ultimately strikes the proper balance between fairness to the parties and judicial economy."   (ECF No. 39 at 9).

Thus, rather than permitting Plaintiffs at the outset to supplement the record through discovery, the Court instead instructed Defendants (i) to request a brief from the Michigan Attorney General "stating her position on MSP's duties under the Brady alternate exception," and then (ii) "to file the supplemental record no later than 30 days" thereafter.   *Id.* at 9.   The Court ordered Plaintiffs thereafter "to file any objections they have to the supplemental record...."   *Id.* at 10.   Plaintiffs then moved for reconsideration (ECF No. 40) arguing, *inter alia*, (i) that obtaining the Michigan Attorney General's opinion would not "shed any light on what was before the agency when it took action," (ii) in any event such opinion would not have the force of law about "the law of the State," (iii) that a subpoena should issue

2

to the Michigan AG regarding documents relating to any position that existed at the time of the challenged action, and (iv) that the Court alternatively should certify the question to the Michigan Supreme Court which would be able to provide a definitive answer on the issue.   *Id.* at 4-6.

On July 29, 2022, the Court denied Plaintiffs' reconsideration motion holding, *inter alia*, that the Michigan Attorney General "is not being asked to provide [] a binding interpretation of Michigan law," and deferring the question whether to certify the question of state law to the Michigan Supreme Court. (ECF No. 42).   Concurrently, the parties each proffered proposed drafts of a letter from Defendants to the Michigan Attorney General.   (ECF No. 41).   Ultimately, the Court sided with the version offered by Defendants, and ordered that it be submitted to the Michigan Attorney General.   (ECF No. 41 at 7-8).

### The Michigan Amicus Brief

On September 30, 2022, in response to Defendants' letter inviting the submission of a brief, the Michigan Solicitor General filed a "State of Michigan's Amicus Curiae Brief."   (ECF No. 45).   This amicus brief purports to be "the State of Michigan's interpretation" with respect to MSP's obligations under Michigan law to verify the eligibility of CPL applicants, and takes the position that "the Michigan Firearms Act [does not] require the MSP to conduct its verification using

information that is not contained in the criminal-information databases." *Id.* at iv, xiv. Under the Attorney General's view, the MSP is only "to verify and determine on the basis of ...information available through LEIN and NICS...." *Id.* at 2-3. According to the brief, "Michigan law does not contemplate, let alone require, that MSP conduct additional inquiries beyond those sources in making the requisite determinations." *Id.* at 3. According to the brief, this interpretation is required by the text of MCL 28.425(b), which requires verification "through" LEIN and NICS, not through other databases or information. *See also* MCL 28.426(2) ("determined through" NICS).

Finally, from a practical perspective, the Attorney General reiterated the "difficult matching problems" raised by the Sixth Circuit, wherein a follow-up investigation "based on external information" involves not only referencing "local criminal ordinances or codes," but also "ascertaining information underlying the offense" and "exercising independent discretion in determining that the offending conduct meets the criteria for federal debarment," a task that MSP is ill-equipped to do. *Id.* at 7-8; *see also* ATF000017 at ECF No. 46-1, Page ID. 750.

### The Supplemental Administrative Record

Subsequent to the filing of the Attorney General's amicus brief, Defendants filed its Supplemental Administrative Record on October 31, 2022. (ECF Nos. 46,

46-1, 46-2, and 46-3). This supplemental record appears identical to the original Administrative Record provided by Defendants in July of 2020 (ECF No. 16), with the exception of the addition of three documents at the end (Doc. Nos. 66, 67, and 68), consisting of (i) a copy of Michigan's previously reference amicus brief, (ii) an Affidavit of Eric Epstein, ATF Senior Policy Counsel, and (iii) an Affidavit of Celeste M. Cochran, an FBI custodian of records.

Plaintiffs object to certain portions of the record, and argue, *infra*, (i) that the Michigan amicus brief and portions of the Epstein Affidavit should be struck, and (ii) that the supplemental record continues to be deficient in various aspects, and (iii) renew their request that this Court granted limited discovery in this case with corresponding leave to supplement the Administrative Record.

## ARGUMENT

### I.    Portions of the Supplemental Administrative Record are Inappropriate and Should Be Struck.

#### A.    Doc. No. 66 (Michigan Amicus Brief; ECF No. 46-3, Page ID 1049-1072).

First, Defendants include the State of Michigan Amicus Curiae Brief (Doc. No. 66; ECF No. 46-3, Page ID 1049-1072), which has been summarized above. Although Plaintiffs do not object to the filing of this amicus brief, or its inclusion in the record of this litigation, Plaintiffs do object to Defendants' inclusion of the Attorney General's amicus brief in the Supplemental Administrative Record.

5

Indeed, as this Court already has noted, in an APA case "'the focal point for judicial review should be the administrative record already in existence, not some new record made initially in the reviewing court.'" (ECF No. 39 at 9 (citation omitted)); *see also* at 1 ("the factual record here was limited to the facts that the Agency considered at the time of its decision"). Moreover, the Court explained that "supplementation of the record is appropriate" only, as pertains here, when "this Court needs additional 'background'" information about what occurred during the decision making process, in order to determine "'whether the agency has considered all relevant factors.'" *Id.* (citation omitted).

The inclusion of the Attorney General's amicus brief in the administrative record serves neither of these purposes, as it never once makes any statement relating to what the Michigan Attorney General's *position was prior to* the challenged agency action (*i.e.*, prior to March 3, 2020). Rather, the amicus brief instructs the Court only as to what the Attorney General's *position is currently*. Although the Attorney General's current position arguably might help the Court determine the meaning of Michigan law (although, as argued below, it is not authoritative and, in fact, binds no one), her amicus brief could not possibly have been considered or relied on by the agency when it issued the 2020 Public Safety Advisory challenged here.

6

Likewise, neither of the supplemental declarations submitted by Defendants reference the Attorney General's amicus brief, nor claim that Defendants relied on that stated position when taking the challenged action.  Nor could they.  Rather, inclusion of the Attorney General's amicus brief in the record now represents the realization of Plaintiffs' "fear that giving control over the supplementation process to Defendants would allow them to 'cover [their] tracks' with 'post hoc justification[s].'" (ECF No. 39 at 9; ECF No. 35 at 5 (Plaintiffs arguing that "confirmation that the Attorney General *currently* agrees with what ATF thought *in the past*" does not save the challenged action.")).

One of Plaintiffs' main arguments throughout this litigation has been that the challenged agency action was arbitrary and capricious, because it was made based on ATF's assumption that the personal opinion of a low-ranking and unidentified lawyer within the Michigan State Police in fact represented the position of the Michigan Attorney General, and thus an authoritative interpretation of "the law of the State" of Michigan.  (*See* ECF No. 23 at 10-11).  As Plaintiffs alleged, this assumption was contrary to all then-available evidence, which uniformly indicated that the Michigan Attorney General *had not taken a position* on the issue (ATF000010, ATF000024, ATF000026, ATF000033, ATF000036, ATF000037, ATF000058; ECF No. 46-1, Page IDs. 743, 757, 759, 766, 769, 770 and 791,

respectively), and in direct conflict with the previous interpretations by two prior Michigan Attorneys General.   Since Plaintiffs' whole point is that the ATF made its decision *without input* from the Michigan Attorney General, the agency should not be permitted to *post hoc* rationalize its actions with the position that the Attorney General has taken now.   Plaintiffs thus request that this Court strike Doc. No. 46 (ECF No. 46-3, Page ID. 1049-1072) from the Supplemental Administrative Record.[1]

### B.    Doc. No. 67 (Epstein Declaration) (ECF No. 46-3, Page IDs. 1073-1079).

Second, Defendants include a Declaration of Eric M. Epstein, Senior Policy Counsel at ATF, dated January 21, 2022 (Doc. No. 67; ECF No. 46-3, Page IDs. 1073-1079).   This document is dated January 21, 2022, shortly after the Sixth Circuit's opinion was issued, but before this Court's status conference with the parties and ordering of additional proceedings (ECF Nos. 31 and 39).   The Epstein Declaration in part purports to explain ATF's legal position on the use of NICS and state qualification as a Brady alternate.   *See* ¶ 10 ("ATF interprets the term 'the law of the State' ... to include not only statutes, but also the practices and

---

[1]  Plaintiffs again submit that the Sixth Circuit's reference to an Attorney General opinion meant discovering whether an opinion existed previously, not obtaining an opinion now.   The Court's statement certainly was not an invitation to Defendants to add such any opinion to the record to justify a decision ATF took years ago.

interpretations of State officials authorized to implement State law.").   Thus, the Epstein Declaration in part appears to be what was envisioned by the Sixth Circuit and this Court.   *See* ECF No. 29; 6th Cir. Op. at 10 ("it is not clear from the ATF advisory ... what the agency's legal position is when it comes to the Brady Act's obligation on state officials."); ECF No. 39 at 8 ("Defendants propose ... addressing ... the ATF's legal position....").

However, the Epstein Declaration then goes much further than that, providing not only the agency's legal position but also attempting to interject new facts and testimony into the record.   This includes facts and testimony that conflict with the evidence already before this Court, have been provided only to advance the government's position during litigation, and which have not been subject to cross-examination or rebuttal by Plaintiffs.   First, apparently parroting what ATF believes the Sixth Circuit wants to hear, the Epstein Declaration claims that "ATF does not interpret the term 'verified' to require a State to provide limitless resources to render such a determination."   *Id.* ¶13; *cf.* 6th Cir. Op. at 9; ECF No. 29 ("We [] reject the position that there is no limit — not even a reasonableness limitation — to a state official's duty to root out matches between federal prohibitions and state laws that do not appear on the face of the conviction.").   Of course, the Epstein Declaration does not provide any delineating principle on what

constitutes "limitless resources," other than claiming that "where a State has information available to it, including conviction records and police reports, an authorized State official must review that information to make a determination..." *Id.*

In order to flesh out what ATF believes must occur, the Epstein Declaration claims that state officials must "apply, *but not interpret*, Federal law...." *Id.* ¶ 14. First, Epstein claims that, "[t]o assist State officials in applying Federal law, CJIS routinely provides guidance and training...." *Id.* Second, with respect to interpreting, the Epstein Declaration claims that "ATF field attorneys (Division Counsel) are available by phone and email to interpret Federal Law for State licensing officials ...to help them make particular Federal prohibited person determinations when a question may arise in a given case." *Id.* Third, the Epstein Declaration claims that "the availability of the ATF Acting Division Counsel (Detroit Field Division) for assistance was communicated to State officials, including a representative of the Michigan Attorney General's Office, during a conference call on June 27, 2017.  During that same call, CJIS also offered to conduct Federal prohibitor training for Michigan licensing officials." *Id.* ¶ 15. There are two problems with these claims.

First, Epstein's claims that FBI personnel and ATF attorneys are standing by

to help MSP "make particular Federal prohibited person determinations" conflicts with the evidence in the record. As Plaintiffs previously have explained (ECF No. 17 at 19-20), in response to the FBI's 2019 Audit, Michigan "renew[ed] its request to collaborate with NICS to identify — and ultimately make final determinations with respect to — information that may indicate the presence of federal firearm prohibitions. The MSP CPL Unit originally proposed a cooperative arrangement of this nature ... in September 2017." ATF000021 (ECF No. 46-1 Page ID. 754); *see also* ATF000017 (ECF No. 46-1 Page ID. 750) ("MSP has ... proactively sought guidance from, federal and state authorities"). Likewise, Michigan "originally proposed a cooperative arrangement ... in September 2017," whereby the state would "gather relevant records that could potentially constitute a federal prohibition, and refer that information to NICS so that NICS may make and enter the final determination under federal law." *Id.* See also ATF000024 (ECF No. 46-1 Page ID. 757) (ATF discussing the MSP review process as "including review of the case/application by a MSP analyst as a second legal review then to the MSP legal team for a 3rd review prior to entry," with no discussion of "ATF field attorneys" being involved in that process).

In other words, contrary to Epstein's representations, the record demonstrates that, for years, Michigan has been seeking the very same help that

Epstein now claims has always been available. Indeed, in a May 28, 2019 email *on which Epstein was copied*, ATF explained that "MSP has advised they will request the documentation needed to research the prohibition however they are not finalizing any research as they believe the FBI or ATF should review the documentation and determine if it meets the federal prohibition." ATF000034-35 (ECF No. 46-1, Page IDs. 767-768). Yet in response to that request from Michigan, Epstein never mentioned the alleged availability of "CJIS ... guidance" or "ATF field attorneys" to help. Epstein's attempt to introduce (or create) new record evidence through his Declaration is entirely improper, conflicts with all existing evidence in the record, and should be struck by this Court. Moreover, this conflicting testimony further evidences the need for real discovery in this case (*see infra*).

Second, the Epstein Declaration improperly attempts to testify by declaration as to the substance of alleged 2017 communications between federal officials and the MSP. *Id*. ¶ 15. Plaintiffs already questioned the lack of information about what occurred during these communications. (ECF No. 35 at 8 ("although ATF relies on the substance of this call as the basis for the challenged action, it provides scant records as to this exchange. Discovery is therefore necessary to uncover the contents of and records related to these important

12

documents and interactions.")).   Apparently sensitive to this hole in the record and, as an apparent participant to these communications, Epstein now attempts to testify as to the substance of those 2017 communications – in a light most favorable to ATF, of course. Epstein Dec. ¶ 15 (Doc. No. 67; ECF No. 46-3, Page IDs. 1073-1079 (claiming that ATF has lavished offers of assistance on MSP, which were rebuffed)).

Not only is Epstein's testimony improper, but also it conflicts with the evidence in the record, including repeated attempts by MSP to seek federal help with making prohibited person determinations, which apparently fell on deaf ears. This Court should not permit Mr. Epstein, after the fact, to provide (in conflict with the record) *his version* of what happened between the federal government and Michigan in 2017, without permitting Plaintiffs the ability to probe the issue.   (*See* ECF No. 39 at 2 (finding previously that "there was no information about the[] perspective [of] the Michigan State Police ... beyond what the ATF summarized [in the record].")) Paragraph 15 of the Epstein Declaration should be struck, and Plaintiffs permitted the opportunity to engage in discovery on this issue (*see infra*). This inquiry is both relevant (since Epstein obviously deemed these communications important enough to discuss in his affidavit) and admissible (because ATF has already made these communications part of the record).  *See*

13

FRE 401-402; F. R. Civ. P. 26(b)(1).

**II.    The Supplemental Administrative Record Remains Deficient, and this Court Should Order Further Supplementation by Defendants.**

In prior briefing, Plaintiffs identified numerous key documents that were not made part of the original Administrative Record, explained their importance, and explained why discovery was necessary to obtain these documents and probe for other similar records which have been omitted from the record.   (*See* ECF No. 35 at 6-8).   However, even when given the opportunity to add these documents to the record, Defendants have failed to do so.   Thus, this Court should order these documents be added to the record, and additionally should allow Plaintiffs limited discovery to determine *what else* Defendants have omitted (*see infra*).

First, the record still does not contain the original February 7, 2006, letter that was sent by the Michigan Attorney General to the ATF, seeking the original qualification for Michigan CPLs as a Brady alternate.   (*See* Compl ¶ 14; ECF No. 35 at 7).   Although this letter was referenced in the Administrative Record and in ATF's March 3, 2020 letter to the current Attorney General revoking the Michigan CPL (ATF000103; ECF No. 46-1 Page ID. 836), it still has not been included in the record.   This letter is important because it represents the opinion of a Michigan Attorney General as to the meaning of state law.   *See* Sixth Cir Op at 6-7; ECF No. 29; ("[t]here could, for example, be ... an opinion by the Michigan Attorney

General that casts light on the statute.").

Second, the record still does not contain the July 2018 "informal opinion" from the Michigan Attorney General (also referenced in ATF's March 3, 2020 letter to the current Attorney General revoking the Michigan CPL), which reportedly granted MSP the ability to make NICS determinations. ATF000104 (ECF No. 46-1 Page ID. 837; ECF No. 35 at 7). This letter is important because it represents the opinion of *another* Michigan Attorney General as to the meaning of state law. *See* Sixth Cir Op at 6-7 (ECF No. 29).

Third, the record still does not contain the April 17, 2019, "informational brief" sent by ATF to the Michigan Attorney General, apparently discussing what ATF believed MSP's legal duties to be under federal law. ATF000026 (ECF No. 46-1 Page ID. 759). This document is important because it goes to show what "the agency's legal position is when it comes to the Brady Act's obligation on state officials." Sixth Cir Op. at 10 (ECF No. 29).

Fourth, the record still does not contain the May 20, 2005, ATF letter to the MSP (ECF No. 35 at 7), referenced in the House Fiscal Agency report cited by this Court in its Opinion, discussing ATF's recommendations about how Michigan could bring state law into line with the requirements of the federal statute. This document is important because it goes to show what "the agency's legal position is

15

when it comes to the Brady Act's obligation on state officials."   Sixth Cir Op. at 10 (ECF No. 29).

Fifth, the record still does not contain any records related to the opinion (if any) of the Michigan Attorney General as it existed *prior to* the issuance of the challenged March 2020 Public Safety Advisory.  As noted, the Michigan amicus brief merely announces the Attorney General's *current* interpretation of state law, with no indication on whether she held that same opinion, a different opinion, or no opinion, prior to March 3, 2020.  This information is critical for the Court to understand facts and information that were actually before the agency when it took the challenged action.  *See* Sixth Cir Op at 6-7 (ECF No. 29; *see also* ECF No. 39 at 11 (the Court explaining that, if the Attorney General did not respond to the request to provide briefing, "Defendants will subpoena her for the production of relevant documents.")).

In sum, the Court should order Defendants to further supplement the administrative record to add these critical and necessary documents, and additionally should order Defendants to subpoena the Michigan Attorney General and Michigan State Police for the records listed above that are not within Defendants' possession.

### III.    This Court Should Grant Plaintiffs Limited Discovery to Supplement the Deficient Record.

Plaintiffs continue to believe that limited discovery is both necessary and appropriate in this case, limited to obtaining (from MSP, FBI, and ATF) facts and records related to what was before the agency when it took the challenged action in March of 2020.

First, as each of the documents in Section II clearly already should have been made part of the administrative record in this case, Plaintiffs are entitled to probe as to what other similar records Defendants may have negligently omitted from the record.

Second, ATF continues to rely on its version of 2017 communications involving MSP, the Michigan AG's office, the FBI, and ATF.   Epstein Affidavit ¶ 15; ATF000104 (ECF No. 46-1, Page ID. 837).  Especially in light of Epstein's improper attempt to introduce testimony as to the substance of these communications, Plaintiffs should be permitted to discovery from the relevant parties regarding what actually transpired.

Third, to find out exactly what assistance (if any) has been offered by FBI and ATF to MSP, Plaintiffs should be permitted discovery to uncover the truth. *See* Epstein affidavit at ¶¶ 14-15 (ECF No. 46-3, Page IDs. 1073-1079).

Fourth, none of the additional materials added to the record by Defendants

17

have answered the Sixth Circuit's question as to the dichotomy between the ways in which CPLs (no final NICS determinations made) and LTPs (final NICS determinations made) are made, as both of them are subject to the same state law and (presumably) the same Attorney General opinion (to the extent that one existed prior to March 3, 2020).  (*See* ECF No. 35; *see also* Sixth Cir. oral argument at 26:00).   This dichotomy of processes within Michigan undermine ATF's claims as to the opinions of state officials about the meaning of state law.

Fifth, even after Defendants' discussion of the operation of the NICS system (Cochrane affidavit) and ATF's legal position with respect to the Brady Act (Epstein affidavit) ATF still has not explained the basis for its legal claim that MSP must *not only* review information and reach determinations about the CPL, *but also* to exercise "authority of a POC state [which Michigan is not], to make and ***enter such a determination***" in the NICS system. ATF000015 (emphasis added) (ECF No. 46-1, Page ID. 748).   Indeed, ATF has taken the legal position that Michigan's determination will govern *not only* whether a person gets a CPL permit (at the state level) *but also* whether they are ever again able to purchase or possess a firearm (at the federal level).   Yet, Defendants still have not provided any explanation for the basis of that position.

18

## **<u>CONCLUSION</u>**

In short, although despite having ample opportunity, Defendants' additions to the record have resolved few, if any, of the concerns Plaintiffs initially raised before this Court as justifications as to why discovery is appropriate.  Nor have Defendants' supplementation answered the questions raised by the Sixth Circuit. Indeed, the entire basis for the challenged action (the recommendation provided MSP by its "legal counsel") still does not have a face or a name.

Plaintiffs, thus, renew their request that the Court allow them limited discovery to probe each of the relevant issues above, none of which represents a "probe into the intent of agency decision makers" (ECF No. 36) but, rather, is designed to uncover the records and information that were before the agency when it took the challenged action. Plaintiffs' also request this Court strike sections of the supplemental record as detailed herein.

Respectfully submitted,

Dated: November 28, 2022    By:   /s/Kerry L. Morgan_____
\*Kerry L. Morgan (P32645)
PENTIUK, COUVREUR & KOBILJAK, P.C.
2915 Biddle Avenue, Suite 200
Wyandotte, MI 48192
Main: (734) 281-7100
F: (734) 281-7102
kmorgan@pck-law.com
*\*Counsel for Plaintiffs*

Stephen D. Stamboulieh
Stamboulieh Law, PLLC
P.O. Box 428
Olive Branch, MS 38654
(601) 852-3440
MS Bar No. 102784
stephen@sdslaw.us

## **CERTIFICATE OF SERVICE**

Karen Zurbo-Miller, is employed by PENTIUK, COUVREUR & KOBILJAK, P.C., and on November 28, 2022, e-filed and served the Attorneys of record using this Court's e-filing and e-service system.

/s/Karen Zurbo-Miller
Karen Zurbo-Miller
Legal Assistant