UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

**GUN OWNERS OF AMERICA et al.,**
      **Plaintiffs,**

                                                   **Case No. 1:20-10639-TLL-PTM**
**v.**                                                **Hon. Thomas L. Ludington**

**U.S. JUSTICE DEPARTMENT et al.,**
      **Defendants.**
_____

**PLAINTIFFS' REPLY TO RESPONSE TO MOTION TO STRIKE**

Come now, Plaintiffs, by and through counsel and for their Reply to Defendants' Response (ECF No. 49), to Plaintiffs' Motion to Strike and for other relief (ECF No. 47), state as follows.

**I.  Michigan's Amicus Brief Should Be Struck from the Record.**

Plaintiffs argued that the Michigan Amicus Brief should be struck from the administrative record, as it (at best) informs the Court as to the Attorney General's position on state law *now* but does not explain what the Attorney General's position was when the challenged action was taken. Pls.' Mot. at 6, ECF No. 47 ("Mot."). In response, Defendants mischaracterize Plaintiffs' argument as "that the Court should not have directed the Michigan AG to provide a statement of her position ... but instead should have directed the AG to provide solely her position in 2020 on this issue." Defs.' Resp. in Opp. at 5, ECF No. 49 ("Opp."). That is not Plaintiffs' argument. Rather, Plaintiffs "object[ed] to Defendants' inclusion of the Attorney General's amicus brief

1

in the Supplemental Administrative Record." Mot. at 5. Even if Michigan's Amicus Brief might help the Court determine the meaning of Michigan law, it does not help in evaluating the correctness of ATF's action taken nearly three years ago.

In their motion for reconsideration, Plaintiffs argued that obtaining the Michigan AG's opinion would not further this case, as it would not answer the question about the AG's opinion in 2020. Mot. for Reconsideration at 4, ECF No. 40. This Court disagreed, holding that the Michigan AG "is being asked to clarify, if she so wishes, the opinion of her office on the requirements of the Brady Act...." Opinion & Order (Jul. 29, 2022), at 6, ECF No. 42. But Plaintiffs do not believe this Court's conclusion is an "implicit[] reject[ion]" of the argument that the Michigan Amicus should not be included in the administrative record (what was before the agency when it took the challenged action). Defendants' "law of the case doctrine" simply has no application here. Certainly, the "law of the case" is not built on "implic[ation]."

On the contrary, it is axiomatic that a district court's review of agency action includes an analysis of the decision made based on the information before the agency when it made its decision. *See Kroger Co. v. Reg'l Airport Auth.,* 286 F.3d 382, 387 (6th Cir. 2002); *Sierra Club v. Slater*, 120 F.3d 623, 638 (6th Cir. 1997). The Michigan Amicus was not before ATF when it made its decision in March of 2020, and the record is clear that ATF did not know the AG's position at that time; indeed, it appears that not even MSP was sure of her position on this issue. Rather, ATF operated on an *assumption* or belief as to her position. This Court has made clear that judicial review is based on "the

2

facts that the Agency considered at the time of its decision." ECF No. 39 at 1. The Michigan Amicus is not one of those "facts."

Defendants disagree, claiming ATF's 2020 letter was issued based on "the agency's determination" — *i.e.*, speculation of Michigan's position. Opp. at 6. According to Defendants, since the Michigan Amicus Brief allegedly confirms the agency's speculation, it was "consider***ed*** by the agency in making its decision." *Id.* (emphasis added); *see also* at 7. But that is not how it works. ATF did not consider something in 2020 that did not exist until 2022. Defendants actually admit as much, conceding that ATF merely made an "'assumption' regarding the State's position" (Opp. at 7), without actually knowing what that position was.[1]

Finally, Defendants ask this Court to allow inclusion of the Michigan Amicus in the administrative record on the theory that "there is no reason to believe that Michigan's position ... somehow differed from its position just two years ago." Opp. at 7. Not so. First, there are two prior Michigan AG opinions that took the opposite position. *See* Mot. at 8. Second, the record shows that Michigan officials repeatedly

---

[1] Indeed, even the case cited by Defendants makes clear that "the '*post hoc* rationalization' rule 'forbids judges [from] uphold[ing] agency action on the basis of rationales offered by anyone *other than the proper decisionmakers*.'" *Univ. of Colo. Health at Mem. Hosp. v. Burwell*, 164 F. Supp. 3d 56, 65 (D.C. Cir. 2016). *See also Mayo v. Jarvis*, 177 F. Supp. 3d 91, 144 (D.C. Cir. 2016). The ATF — not the Michigan AG — represents the "proper decisionmakers" in this case, and thus the Michigan AG is not the "*agency*, itself" and thus is not permitted to offer "*post hoc* rationalization" for the agency's prior action.[1] *See also Int'l Bhd. of Teamsters, etc. v. NLRB*, 546 F.2d 989, 992 (D.C. Cir. 1976) ("the court is barred from considering rationales urged by others....").

stated that they were *unsure* about the current AG's opinion and were waiting for an update. *Id.* at 7. Third, the fact that Michigan licenses to purchase are issued differently than CPLs indicates that perhaps there was not a uniform position on the issue. *Id.* at 18. In other words, there are plenty of reasons to question whether the Michigan AG's position *now* is the same as her position *then* (if she even had one). Regardless, the APA's requirement that agencies not engage in arbitrary and capricious actions requires something more than a lucky guess before relying on unproven "assumptions."

## II.  Portions of the Epstein Declaration Should Be Struck from the Administrative Record.

Plaintiffs argued that certain portions[2] of the declaration by ATF Senior Policy Counsel Eric Epstein should be struck, as they do not explain ATF's legal position (as the Sixth Circuit requested), but rather improperly attempt to introduce new facts and testimony into the administrative record. Mot. at 8-13. Not only do these facts and testimony conflict with the existing record, but they also represent a thinly veiled attempt to manufacture an after-the-fact story in an effort to justify a prior ATF action. Defendants object on two grounds. First, they claim that the challenged portions of the Epstein Declaration are merely an explanation of the agency's legal position. (Opp.

---

[2] Defendants claim that Plaintiffs asked only that "a paragraph" be struck (Opp. at 8), yet the challenged portions of Epstein's Declaration include both paragraph 14 (everything after the first sentence) and paragraph 15 (in its entirety). *See* Mot. at 10 (identifying the challenged sentences); Opp. at 10-11 (defending the challenged sentences).

4

at 8-12). Second, Defendants claim that the Epstein Declaration's injection of facts and testimony is consistent with the administrative record. *Id.* at 12-15. Neither is true.

### A. Epstein's Declaration Goes Beyond "Providing Additional Explanations."

First, Defendants note that they initially proposed to submit a declaration describing "what the agency's legal position is" and "'outlining [ATF's] legal position at the time of the Advisory.'" Opp. at 8. But that is not what the challenged sentences represent. These portions do not explain the agency's "legal position," but rather improperly (i) make representations about Defendants' willingness to help Michigan, and (ii) provide testimony as to the content of certain communications — in an effort to *justify* (not *explain*) the agency's legal position. The cases cited by Defendants (Opp. at 9) provide that an agency at times may be allowed to "provide additional *explanations* of the reasons for its decision" or "merely illuminate[] *reasons* obscured but implicit in the administrative record" — but neither case permits what ATF seeks to do here (add new facts and testimony to the record).

Indeed, after describing the content of the Epstein Declaration (Opp. at 10-11), Defendants concede that the Declaration not only "explains ATF's position regarding the Brady Act's obligation," but also "further explains that ATF and FBI provide guidance and support [and] clarifies the nature of the federal resources available," and "states that these resources were made available...." *Id.* at 11. Defendants are not permitted to add new facts to the record — if it is necessary to do so to justify the

5

challenged action, then the challenged action must be invalidated. *See Gallo v. Amoco Corp.*, 102 F.3d 918, 923 (7th Cir. 1996) ("the plan administrator can defend his interpretation with any arguments that bear upon its rationality. He cannot augment the administrative record with new facts....").

## B. The Epstein Declaration Conflicts with the Record.

Second, Defendants claim that the Epstein Declaration "does not contradict any record evidence." Opp. at 12. In support, Defendants rely on a page from the administrative record (ATF000276) that discusses an entirely different subject — ATF determining *whether a particular state's permit qualifies* as a NICS alternative. *Id.* This has nothing to do with ATF helping a state make determinations as to the *eligibility of an applicant* for such a qualifying permit.

Next, Defendants claim Plaintiffs' references to the record do not support the contention that Michigan has sought (but failed to receive) help from the ATF and FBI. Opp. at 12-14. Although Defendants concede that "it is true" that MSP was rebuffed when repeatedly seeking a "cooperative arrangement" with FBI, and that MSP had "proactively sought guidance from" federal authorities, Defendants claim that these references are "overly selective" and that "the record contains other materials...." Opp. at 12-13. Defendants reference several additional portions of the record, each of which showing MSP's "refus[als] to meet" with ATF to discuss ATF's demand that MSP make NICS determinations. But again, this is an *entirely different topic.* In other words, Defendants' references to MSP's refusal to keep debating with ATF about the agency's

6

demand that MSP <u>make NICS determinations</u> is *wholly consistent* with Plaintiffs' references to MSP's requests to the federal government to <u>make NICS determinations</u>.

Finally, Defendants claim that another portion of the administrative record supports the Epstein Declaration, referencing a single record description of the June 27, 2017, phone call between federal and state authorities. Opp. at 14-15 (quoting from ATF000057). To be sure, the referenced portion of the record discusses the same phone call (June 27, 2017), but it does not contain the same information contained in the Epstein Declaration. *Cf.* ATF000057 with ATF000345.[3] Indeed, in Defendants' record reference (ATF000057) ATF claims "that … State or local officials were <u>*required to make*</u> a conclusive determination," while the Epstein Declaration quite differently claims that "ATF field attorneys … are available by phone and email … for State licensing officials to <u>*help them make*</u> …. determinations" (ATF000345 ¶ 14). These are very different (in fact opposite) things. Indeed, MSP's continuing consternation has always been not desiring to "make determinations" under federal law. *See, e.g.*, ATF000015 ("the concerns have related to the MSP's authority to make and enter a final determination of factual and legal issues in applying federal law"); *see also* Michigan Amicus at 8 ("the statute does not direct the MSP to … *make independent determinations*")

---

[3] This single reference to a June 2017 phone call (FBI and ATF offering to provide some level of guidance) conflicts with the record cited by Plaintiffs postdating that conference call. *See* Mot. at 11 (September 2017 through May 2019).

7

(emphasis added). In other words, the Epstein Declaration conflicts not only with the administrative record, but also with Michigan's understanding announced in its Amicus.

### III. The Record Should Be Further Supplemented.

Plaintiffs have identified several areas in which the administrative record is deficient, explaining that (i) Defendants have omitted various important documents, and (ii) still have not sought records related to what the Michigan AG's position was at the time of the challenged agency action. Mot. at 14-16. In response, Defendants demur that they "do not possess" these documents. Opp. at 16, 17. First is a letter *sent to ATF* in 2006 by the Michigan AG. Defendants claim "Plaintiffs fail to explain why" this letter is needed. Opp. at 17. Not so. As Plaintiffs noted, the *Sixth Circuit asked for such documents*. Mot. at 14-15. Second, Defendants claims they cannot find a 2018 Michigan "informal opinion," and that "Defendants did not directly or indirectly consider any such document ... in making the decision challenged here...." Opp. at 18. Yet the ATF 2020 letter to the Michigan AG that is challenged here *explicitly referenced this 2018 document*. *See* Mot. at 15.

Third, Defendants speculate that the referenced "informational brief" is likely "a document that MSP," not ATF, created, and that ATF does not possess it. Opp. at 19. At best, it is ambiguous whether ATF or MSP created this document — but if, as Defendants posit, the "informational brief" was created by MSP, then it was after "MSP legal counsel spoke to their AG," meaning it likely would provide insight into the Michigan AG's opinion in 2019 — something the Sixth Circuit has *explicitly instructed be*

8

*uncovered. See* ATF000026; Mot. at 14-15.  Even if Defendants are correct about who wrote this document, it becomes even more important.  Fourth, Defendants claim they "no longer possess any copy" of a 2005 letter *sent by ATF* to MSP about how to bring state law into compliance with federal law.  Yet this Court's December 2020 opinion indicates the relevance of this document, as "M.C.L. § 28.426 [was enacted] "[t]o align the state statute ... with [] federal law."  ECF No. 25 at 7.  Fifth, Defendants claim that any attempt to uncover the position of the Michigan AG near the time of the challenged action would be irrelevant as "there is no reason to believe that the State's position" has changed.  Opp. at 16 n.2.  But again, it is the Sixth Circuit that instructed such evidence should be sought, and Defendants' speculation about what the evidence would show does not cut it.  Sixth Cir. Op. at 6-7; ECF No. 29.

Finally, while Defendants object that discovery is not appropriate here (Opp. at 20-24), they offer little in response to Plaintiffs' several arguments (Mot. at 17-18).  For starters, Defendants continue to offer the wrong test to determine whether discovery is necessary. *Cf.* Opp. at 20-21 with ECF No. 37 at 5 n.4 (explaining the appropriate test). Defendants continue to claim that any opinion by a prior Michigan AG is irrelevant here, even though the Sixth Circuit indicated otherwise. Opp. at 22. Defendants split hairs that, although the Sixth Circuit questioned the unexplained dichotomy between LTPs and CPLs, this was not technically one of the explicit follow-up questions the Court posed. Opp. at 23. Finally, Defendants misunderstand Plaintiffs' point about MSP being required not only to *make* a determination (if a person is entitled

9

to a CPL) but also *enter* that determination in the NICS system (to permanently categorize someone as a prohibited person, forming the basis of a lifetime of denials of future gun purchases and permits — even in other states). The record still does not contain ATF's legal position as to why this additional action is required of Michigan. *Cf.* Mot. at 18 with Opp. at 23 (discussing determining whether someone is a "fugitive from justice" — not the point here).

At bottom, discovery is needed (i) because Defendants' record supplementation has not answered the Sixth Circuit's questions, (ii) because highly relevant documents are still missing from the record, and (iii) because this Court would benefit from the additional information Plaintiffs seek when ultimately deciding the merits of this case.

Respectfully submitted,

*/s/ Kerry Lee Morgan*
Kerry Lee Morgan, Esq.
Pentiuk, Couvreur, &
Kobiljak, P.C.
2915 Biddle Avenue, Suite 200
Wyandotte, MI 48192
(734) 281-7100
Kmorgan@pck-law.com

Robert J. Olson
WILLIAM J. OLSON, P.C.
370 Maple Avenue West, Ste. 4
Vienna, VA 22180
T: (703) 356-5070
T: (540) 450-8777
F: (703) 356-5085
wjo@mindspring.com

Stephen D. Stamboulieh
Stamboulieh Law, PLLC
P.O. Box 428
Olive Branch, MS 38654
(601) 852-3440
MS Bar No. 102784
stephen@sdslaw.us

10

## **CERTIFICATE OF SERVICE**

  I, Kerry Lee Morgan, hereby certify that I have filed with the Clerk of this Court, a true and correct copy of the foregoing document or pleading, utilizing this Court's CM/ECF system, which generated a Notice and delivered a copy of this document or pleading to all counsel of record.


Dated: December 19, 2022.

               */s/ Kerry Lee Morgan*
               Kerry Lee Morgan, Esq.