UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

GUN OWNERS OF AMERICA, INC.
and DONALD J. ROBERTS II,

        Plaintiffs,                          Case No. 1:20-cv-10639

v.                                        Honorable Thomas L. Ludington
                                           United States District Judge

U.S. DEPARTMENT OF JUSTICE, *et al.*,

        Defendants.
_____/

**OPINION AND ORDER GRANTING IN PART PLAINTIFFS' MOTION FOR AN ORDER REGARDING THE SUPPLEMENTAL RECORD, STRIKING AMICUS BRIEF FROM SUPPLEMENTAL RECORD, DIRECTING DEFENDANTS TO SUPPLEMENT THE RECORD, AND SETTING BRIEFING SCHEDULE**

This is an Administrative Procedure Act[1] (APA) case arising out of the Bureau of Alcohol, Tobacco, and Firearm's (ATF) decision to issue a public-safety advisory regarding Michigan's concealed pistol license (CPL). The advisory informed federal firearm licensees (FFLs) that ATF no longer views the Michigan CPL as a valid background-check exception. Gun Owners of America, Inc. and one of its members, Donald J. Roberts II, have sued ATF, its Acting Director,[2] and the U.S. Department of Justice to invalidate the advisory. Importantly, neither the Michigan State Police (MSP), who administer the background checks, nor the Michigan Attorney General, who provides legal guidance to MSP, are parties to this case.

---

[1] 5 U.S.C. § 551 *et seq.*
[2] At the time this case was filed, Regina Lombardo was the Acting Director. In April 2022, the Acting Director was Gary M. Restaino. But as of July 2022, the Acting Director is Steven Dettelbach. Under Civil Rule 25, the substitution of Dettelbach for Restaino was automatic. *See* FED. R. CIV. P. 25(d) ("An action does not abate when a public officer who is a party in an official capacity dies, resigns, or otherwise ceases to hold office while the action is pending. The officer's successor is automatically substituted as a party.").

In November 2021, the Sixth Circuit Court of Appeals remanded the case and vacated this Court's decision granting summary judgment for Defendants. *See Gun Owners of Am., Inc. v. DOJ*, No. 21-1131, 2021 WL 5194078, at *1 (6th Cir. Nov. 9, 2021) [hereinafter *Gun Owners*]. At bottom, the Sixth Circuit was "unwilling to accept" either Party's view of the relevant statute, suggested that the Parties supplement the administrative record to address "several follow-up questions," and encouraged the Parties to negotiate with the Michigan Attorney General and MSP. *See id.* at *5. But the Sixth Circuit's invitation to "the parties" that they "may wish to consider whether this is a dispute that lends itself to negotiation and mediation" *id.*, appears to be frustrated by the fact that neither the MSP or the Michigan Attorney General appear to have any interest in the subject and are not parties to this case.

In October 2022, Defendants filed their "Supplemental Administrative Record" which included three new documents: (1) The Michigan Attorney General's amicus brief; (2) a January 2022 affidavit by ATF Senior Policy Counsel Eric Epstein; and (3) an October 2022 affidavit by FBI Records Custodian Celeste Cochran. ECF No. 46. Four weeks later, Plaintiffs filed a Motion for an Order Regarding the Supplemental Record, taking issue with two of the newly-included documents, seeking to add documents, and seeking leave to conduct limited discovery. ECF No. 47. For reasons explained hereafter, Plaintiffs' Motion will be granted in part and denied in part, and a new dispositive briefing schedule will be set.

**I.**

**A.**

The relevant facts are neatly summarized in the Sixth Circuit's opinion. *See Gun Owners*, 2021 WL 5194078, at *1–2.

In 1993, Congress enacted the Brady Handgun Violence Prevention Act to prevent felons and other persons from possessing a firearm. *Id.* at *1. Under the Brady Act, FFLs must use a federally maintained database—the National Instant Criminal Background Check System (NICS) database—to verify that a firearm transferee is not prohibited from possessing the firearm. *Id.* Certain transferees, however, are exempt from this requirement, including those who possess a "qualifying state-issued permit"—sometimes called a "Brady alternate." *Id.* (quoting *Abramski v. United States*, 573 U.S. 169, 172 n.1 (2014)). Instead of submitting to a background check, these transferees may complete a firearm purchase by presenting the FFL with their qualifying permit, which is often a state-issued CPL.

Since the NICS system was established, many states, including Michigan, have taken advantage of the Brady alternate exception by passing laws designed to conform with federal requirements.[3] *Id.* Enacted in 2005, Michigan's CPL statute requires "'[t]he department of state police, or the county sheriff' to 'determine[ ] through the federal national instant criminal background check system that the applicant [for the license] is not prohibited under federal law from possessing or transporting a firearm.'" *Id.* (quoting MICH. COMP. LAWS § 28.426). Satisfied with Michigan's CPL statute, ATF released a public-safety advisory in 2005 informing FFLs that the Michigan CPL is a valid Brady alternate. *Id.*

That all changed in 2017, however, when MSP informed ATF of its opinion that the Brady Act required state officials only to "'access[ ]' the information in the NICS databases," and not "conduct further 'research' as to whether applicants for concealed-pistol licenses were federally prohibited." *Id.* at *2. The exact reason for this change remains unclear, but by all accounts, MSP seemed uncomfortable with the prospect of researching "federal prohibitions that lacked an

---

[3] The relevant federal requirements are briefly discussed *infra* Section I.B.

identical state-law 'equivalent,' such as the federal prohibition on possessing a gun after a misdemeanor conviction for domestic violence." *Id.* (citing 18 U.S.C § 922(g)(9)).

The ATF and MSP initially tried to overcome their differences. *Id.* But after a new Michigan Attorney General took office in 2019, their relationship soured again. *Id.* Based on advice from unnamed "legal counsel," MSP informed ATF that it would no longer conduct additional research on "difficult-to-match misdemeanor domestic-violence offenses." *Id.* Later, the FBI conducted a CPL audit in Michigan, which "identified 'at least 50' concealed-pistol licenses that 'had been approved for issuance to applicants who,' according to the government, 'appeared to be federally prohibited due to a conviction for a misdemeanor crime of domestic violence.'" *Id.*

In March 2020, ATF issued a public-safety advisory "informing [Michigan FFLs] that the Michigan [CPL] no longer qualified under § 922(t)(3) as a valid alternative to a federal background check." *Id.* Four days later, Michigan CPL holder and Gun Owners of America member Donald J. Roberts II tried to purchase a firearm from a Michigan FFL. When the FFL told Roberts that he could not rely on his CPL and would have to submit to a background check, he left the store and promptly sued Defendants under the APA. *Id.*

**B.**

Both sides agree on the principal question in this case: whether ATF acted within its statutory authority and discretion by issuing the advisory. This question, in turn, depends on the meaning of the language providing for the Brady alternate. As relevant here, the federal statute provides:

> (3) [The background-check requirement] shall not apply to a firearm transfer between a[n] [FFL] and another person if--
>     (A)(i) such other person has presented to the licensee a permit that--
>         (I) allows such other person to possess or acquire a firearm; and

>> (II) was issued not more than 5 years earlier by the State in which the transfer is to take place; and
>
> (ii) the law of the State provides that such a permit is to be issued only after an authorized government official has verified that the information available to such official does not indicate that possession of a firearm by such other person would be in violation of law[.]

18 U.S.C. § 922(t)(3) (emphasis added).

Subsection (ii) is the key point of contention. At summary judgment, Plaintiffs argued that by using the phrase "the law of the State," Congress intended for the ATF to look no further than the statutory law of the State in question. ECF No. 17 at PageID.418–19. And because Michigan's CPL law facially satisfies the Brady alternate requirements, Plaintiffs concluded that the ATF had no authority to withdraw recognition of the Michigan CPL based on the opinions of the MSP's unnamed counsel. *Id.* at PageID.420–21.

Defendants, by contrast, argued that because subsection (ii) requires state officials to "verif[y]" that "the information available" "does not indicate" a federal prohibition, the statute naturally contemplated some level of research and analysis. ECF No. 21 at PageID.464–65 (emphasis omitted). Defendants argued this interpretation was consistent with the Brady Act's purpose because it prevents States from feigning compliance with the Brady alternate exception. *Id*. at PageID.466–69.

Applying *Skidmore* deference, this Court agreed with ATF and found their interpretation persuasive based on the "text, design, and purpose of the Brady Act." *Roberts v. DOJ*, 507 F. Supp. 3d 864, 875 (E.D. Mich. 2020). Specifically, this Court noted that the dictionary definition of "law" encompassed "customs, practices, [and] rules," not just statutory codes, and that ATF's interpretation prevented States from "feign[ing] compliance with the Brady Act by enacting statutes that they had no intention of enforcing." *Id.* at 876.

This Court also found that ATF did not abuse its discretion, citing MSP's unequivocal statement that it would no longer research certain federal prohibitions. *See id.* at 879–80 ("[T]he MSP has not been made aware of federal law requiring a state agency in our position to make a final determination of factual and legal issues in applying federal law under 18 USC 922(g) and (n)" (quoting MSP Resp. to 2019 ATF Audit, ECF No. 16-1 at PageID.97)).

For those reasons, Defendants' motion for summary judgment was granted.

### C.

On appeal, the Sixth Circuit took a more critical view of ATF's action and the administrative record. Although the Sixth Circuit agreed that Plaintiffs had stretched the statute's literal meaning "too far," and noted that "the mere presence of erroneous permit grants in the past" does not, by itself, authorize ATF "to remove a State from the eligibility list," *Gun Owners*, 2021 WL 5194078 at *4, the Sixth Circuit refused to adopt ATF's interpretation that put the onus for additional research on MSP, *see id.*, at *3.

The problem with ATF's interpretation, according to the Sixth Circuit, was that it required state officials to complete "difficult matching problems." *Id.* at *4. For example, federal law prohibits people with state-law "misdemeanor crime of domestic violence" convictions from possessing firearms. *Id.* That term is defined to include (1) "the use or attempted use of physical force, or the threatened use of a deadly weapon" (2) "committed by" a person with a certain domestic relationship to the victim, including "a current or former spouse, parent, or guardian." 18 U.S.C. § 921(a)(33)(A)(ii). Michigan, like other states, has a domestic-violence statute that is more inclusive than the federal statute. *See* MICH. COMP. LAWS § 750.81 (covering violence against "resident[s] or former resident[s] of . . . household[s]"). So, under ATF's reading, if a CPL applicant was convicted of domestic violence in Michigan, MSP might have to investigate the

specific facts of her offense to determine whether she would be federally prohibited from possessing a firearm. *See Gun Owners*, 2021 WL 5194078, at *4.

In addition to these and other practical difficulties, the Sixth Circuit criticized ATF's approach for lacking a sound textual basis. As the Sixth Circuit explained, "[the Brady Act] requires only that the State 'verify that the information available' 'does not indicate'[a] federally prohibited status"; it does not require the State to "verify that the circumstances of the underlying offense do not violate federal law." *Id.* Stated in more categorical terms, the Sixth Circuit "reject[ed] the position that there is no limit—not even a reasonableness limitation—to a state official's duty to root out matches between federal prohibitions and state laws." *Id.*

In short, the Sixth Circuit found itself "unwilling to accept" either side's interpretation of the statute. *Id.* Yet rather than decide the case on the record before it, the Sixth Circuit remanded "to allow both sides to account for what [it] h[ad] said so far in pressing their respective legal arguments and, if appropriate, to supplement the record." *Id.* at *5. Specifically, the Sixth Circuit identified "several follow-up questions" that "could benefit from more 'available' 'information'":

> The requirements of state law, to start, remain unclear. As for the requirements of federal law, there are gaps as well, some legal, some administrative. The record would benefit from more detail about what the NICS database reveals when it comes, for example, to identifying disqualifying domestic-violence misdemeanor convictions and what kinds of resources are needed to go beyond that information to identify potential matches. At the same time, it is not clear from the ATF advisory—or the kind of process involved in issuing that advisory—what the agency's legal position is when it comes to the Brady Act's obligation on state officials.

*Id.*

Additionally, the Sixth Circuit suggested this dispute may "lend[] itself to negotiation and mediation, including the possibility of a negotiation that includes the Michigan Attorney General

and [MSP]." *Id.* But, importantly, neither the Michigan Attorney General nor MSP are parties to this case.

**D.**

Upon remand, the parties agreed that the administrative record should be supplemented, but disagreed about who should supplement the record and how it should be supplemented. So the parties were directed to file supplemental briefing addressing those questions.

Defendants proposed a two-step approach in which they would (1) supplement the record with explanatory declarations and other documents from the Michigan Attorney General, the FBI-NICS, and ATF, and then (2) allow Plaintiffs to challenge the record's adequacy before both sides file supplemental merit briefs. *See* ECF No. 36.

Plaintiffs proposed a more extensive process. Instead of supplementing the record with additional agency documents, Plaintiffs suggested opening a six- to nine-month discovery period, allowing the Parties to obtain discovery through traditional devices like depositions and interrogatories. ECF No. 35. Plaintiffs argued that the Sixth Circuit intended for "both sides" to supplement the record and that Defendants' supplementation would be too one-sided. ECF No. 35 at PageID.595 (quoting *Gun Owner*s, 2021 WL5194078, at *5)

This Court adopted Defendants' approach, finding that it "struck the right balance between fairness to each side and expediency," and directed the Parties "to proceed consistent with Defendants' recommendation, including the unusual suggestion to prepare a letter to the Michigan Attorney General." ECF No. 39 at PageID.638.

On August 2, 2022, the Parties sent a letter to the Michigan Attorney General "inviting" her to file an amicus brief "stating [her] position on the MSP's duties under the Brady alternate exception." ECF No. 41-1 at PageID.664. On September 30, 2022, the Michigan Attorney General

- 8 -

filed her amicus brief, outlining her position that the Michigan Firearms Act does not require MSP to conduct verifications using information that is not contained in the criminal-information database. ECF No. 45 at PageID.724. ("The statute's plain language does not, however, reflect the intent that MSP is obligated to verify—by conducting *additional* research and investigation to independently determine the presence of federally disqualifying offenses—that the circumstances underlying reported offenses do not violate federal law.") (emphasis in original). According to the Michigan Attorney General, the "type and amount of work" such a requirement would necessitate "would be significant considering that MSP processes over 200,000 CPL applications annually." *Id.* at PageID.725–26. Notably, though, the amicus brief did not state what the Michigan Attorney General's position was during the relevant January 2019 to March 2020 time period. *See generally* ECF No. 45.

Then, On October 31, 2022, Defendants filed their supplemental administrative record, which added three documents to the record: (1) the Michigan Attorney General's September 30, 2022, amicus brief; (2) a January 2022 affidavit by ATF Senior Policy Counsel Eric Epstein; and (3) an October 2022 affidavit by FBI records custodian Celeste Cochran. ECF No. 46. Four weeks later, Plaintiffs filed their motion to strike parts of the supplemental record, permit leave to supplement the record, and permit a limited discovery period. ECF No. 47. Defendants oppose Plaintiffs' Motion, arguing the relief Plaintiffs seek is not permitted under the APA. ECF No. 49.

## II.

"When courts review an agency decision, '[t]he APA requires courts to review the whole record or those parts of it cited by the party.'" *Little Traverse Lake Prop. Owners Ass'n v. Nat'l Park Serv.*, 883 F.3d 644, 657 (6th Cir. 2018) (quoting *Sierra Club v. Slater*, 120 F.3d 623, 638 (6th Cir. 1997)). "[T]he focal point for judicial review should be the administrative record already

in existence, not some new record made initially in the reviewing court." *Id.* (quoting *Kroger Co. v. Reg'l Airport Auth. of Louisville & Jefferson Cnty.*, 286 F.3d 382, 387 (6th Cir. 2002)). "[S]supplementation of the record before the reviewing court is rare and requires 'exceptional circumstances.'" *Id.* (quoting *Charter Twp. of Van Buren v. Adamkus*, 188 F.3d 506 (6th Cir. 1999) (unpublished table decision)). Supplementation of the administrative record is appropriate "only if the existing record is insufficient to permit meaningful review consistent with the APA." *Axiom Res. Mgmt., Inc. v. United States*, 564 F.3d 1374, 1381 (Fed. Cir. 2009).

Generally, supplementation of the record[4] is appropriate "when an agency has deliberately or negligently excluded certain documents from the record, or when a court needs 'background' information to determine whether the agency has considered all relevant factors." *Id.* at 657–58 (quoting *S. Forest Watch, Inc. v. Jewell*, 817 F.3d 965, 977 (6th Cir. 2016)). Although courts may obtain affidavits from agencies that provide additional explanations of the reasons for its decision, courts may not rely on litigation affidavits that provide post hoc rationalizations for the agency's action. *Lewis v. Babbitt*, 998 F.2d 880, 882 (10th Cir. 1993)).

### III.

### A.

Plaintiffs first seek to strike two documents from the administrative record: the Michigan Attorney General's amicus brief and Eric Epstein's January 2022 affidavit. ECF No. 47 at PageID.1094–1103.

---

[4] Notably, *supplementation* of the administrative record is distinct from *completion* of the administrative record in APA cases. "Completing the record means including evidence that the agency considered but did not submit. Supplementing the record means introducing evidence that the agency did not consider but is 'necessary for the court to conduct a substantial inquiry.' This distinction is sometimes misunderstood by district and circuit courts," resulting in the terms being inadvertently used interchangeably. Matthew N. Preston II, *The Tweet Test: Attributing Presidential Intent to Agency Action*, 10 BELMONT L. REV. 1, 12–13 (2022) (citing *Colo. Wild v. Vilsack*, 713 F.Supp. 2d 1235, 1238 (D. Colo. 2010)).

The Michigan Attorney General's amicus brief—which does not address her position on the obligations of the MSP *at the time of the challenged agency* action—will be stricken from the administrative record. Importantly, Plaintiffs' Motion does not seek to strike the Attorney General's amicus brief from the docket in *this litigation*, but only from the *administrative record*. *Id.* at PageID.1094. Thus, as Plaintiffs correctly conclude, the "amicus brief could not possibly have been considered or relied on by the agency when it issued the 2020 Public Safety Advisory challenged here." *Id.* at PageID.1095. Thus, it should not be part of the administrative record and will be stricken. *See Jewell*, 817 F.3d at 978 (finding supplementation improper where a party sought to supplement the administrative record with documents that the agency "could not have considered" before making its decision).

But the January 2022 affidavit by ATF Senior Policy Counsel, Eric Epstein, will remain a part of the administrative record. Epstein's affidavit explains ATF's legal position on the use of NICS and state qualification as a Brady alternate *at the time of* the challenged agency action at issue here. *See generally* ECF No. 46-3 at PageID.1073–79. Importantly, it supplements the gaps the Sixth Circuit identified in the administrative record regarding how ATF interpreted the terms "law of the State" and "verified" at the time of the agency action. *Gun Owners*, 2021 WL 5194078 at *5. And, as Defendants argue, such explanation of "reasons obscured but implicit in the administrative record" are permissible. ECF No. 49 at PageID.1123 (quoting *Univ. of Colorado Health at Mem'l Hosp. v. Burwell*, 164 F. Supp 3d 56, 65 (D.D.C. 2016).

Plaintiffs argue that Epstein's affidavit "goes much further" than explaining the agency's legal position by "attempting to interject new facts and testimony into the record" that "conflict with the evidence already before this Court." ECF No. 47 at PageID.1098. But the contents of

Epstein's Affidavit merely explains facts already in the record, so it will not be stricken and will remain a part of the administrative record.

**B.**

In addition to seeking to have parts of the supplemental record stricken, Plaintiffs also seek "further supplementation by Defendants," *see* ECF No. 47 at PageID.1103–05 (emphasis omitted). Specifically, Plaintiffs seek an order directing Defendants to further supplement the record with the following five items:

1. Letter dated May 20, 2005, from ATF to MSP;
2. Letter dated February 7, 2006, from Michigan Attorney General to ATF requesting recognition of Michigan CPLs as an alternative to a NICS background check;
3. July 2018 "informal opinion" from the Michigan Attorney General;
4. "Informational brief" dated April 17, 2019; and
5. Any records "related to the opinion (if any) of the Michigan Attorney General as it existed *prior to* the issuance of the March 2020 [PSA]."

ECF No. 47 at PageID.1103–05. According to Plaintiffs, all five of these items are "critical and necessary" because they reflect the legal positions of different relevant agencies. *Id.* Defendants, on the other hand, assert they "do not possess" any of the five items Plaintiffs request. ECF No. 49 at PageID.1128. Each request will be addressed below.

**1.**

First, Plaintiff requests the record be supplemented with ATF's May 20, 2005, letter to MSP. ECF No. 47 at PageID.1104–05. According to Plaintiffs, the 2005 letter is relevant because it shows ATF's legal position regarding the obligations of state officials under the Brady Act. *Id.* But, as Defendants note, this letter is not relevant to ATF's decision—made almost 15 years later— to issue the March 2020 PSA. ECF No. 49 at PageID.1131. Indeed, ATF did not "rely directly or indirectly" on this latter. *Id.* And, as Defendants point out, the Epstein affidavit adequately explains ATF's legal position on the issue at the time of the challenged agency action, so an outdated legal

position is not necessary for "meaningful review" of the challenged action. *Axiom*, 564 F.3d at 1381. Accordingly, the May 2005 letter will not be added to the administrative record.

**2.**

Next, Plaintiffs seek to supplement the record with a February 7, 2006, letter from the Michigan Attorney General to ATF requesting recognition of Michigan CPLs as an alternative to a NICS background check. ECF No. 47 at PageID.1103. Plaintiffs assert the February 2006 letter "is important because it represents the opinion of a Michigan Attorney General as to the meaning of state law." *Id.* But, much like how ATF's legal position in 2005 is not necessary for meaningful judicial review, the legal opinion of a former Michigan Attorney General in 2006 is not necessary for "meaningful review" of the March 2020 PSA. *Axiom*, 564 F.3d at 1381. Thus, it will not be added to the administrative record.

**3.**

Third, Plaintiffs request the record be supplemented with the Michigan Attorney General's July 2018 "informal opinion" that "reportedly granted MSP the ability to make NICS determinations." ECF No. 47 at PageID.1104. Again, Plaintiffs assert this document is important because it "represents the opinion of *another* Michigan Attorney General" regarding the meaning of state law. *Id.* (emphasis in original).

But ATF asserts it does not possess any kind of "informal opinion" document prepared by the former Michigan Attorney General in July 2018. *See* ECF No. 49 at PageID.1130. True, the position of the former Michigan Attorney General in July 2018 is referenced in the March 2020 letter notifying the Michigan Attorney General that Michigan's CPL no longer qualifies as a Brady alternate permit. ECF No. 46-1 at PageID.837 ("In July 2018, FBI was advised by MSP that your office had granted MSP the authority to make Federal prohibited person determinations and enter

prohibited individuals into the NICS Index."). But that reference merely suggests the former Michigan Attorney General expressed his legal position *to MSP*, which, in turn, notified the FBI. *Id.* It does not suggest the former Attorney General's opinion was ever documented and communicated directly to AFT.

Moreover, although the legal opinion of the *former* Michigan Attorney General might be notable, this opinion did not contribute to ATF's decision to issue the March 2020 PSA. It was the *current* Attorney General's purported position on the issue that incited the agency action.[5] *See* ECF No. 21 at PageID.461 ("In light of Michigan's interpretation of state law as not requiring that a state official 'verif[y]' whether NICS information 'indications' that a CPL applicant is prohibited from acquiring or possessing firearms, ATF decided that its March 2006 open letter was no longer valid. Accordingly, ATF issued the 2020 PSA.") (internal citation omitted). Thus, the former Attorney General's opinion is not *necessary* for "meaningful review" so it will not be added to the administrative record. *Axiom*, 564 F.3d at 1381.

**4.**

Next, Plaintiffs seek to supplement the record with an April 17, 2019 "informational brief" they allege was sent by ATF to the Michigan Attorney General. ECF No. 47 at PageID.1104. If this "informational brief" really was a document created *by* ATF or the FBI and sent to the Michigan Attorney General right before the FBI's audit of Michigan's licensing audit, this Court agrees that it would be relevant. But, importantly, after reviewing the existing administrative

---

[5] Although the March 2020 PSA cites *only* erroneous permit grants as the basis for the decision to revoke Michigan's status as a Brady Alternate state, *see* ECF No. 46-1 at PageID.833–34, the Sixth Circuit noted that "the mere presence of erroneous permit grants in the past" does not, by itself, authorize ATF "to remove a State from the eligibility list," *Gun Owners*, 2021 WL 5194078 at *4. Indeed, as ATF's letter notifying the Michigan Attorney General of the March 2020 PSA suggests, it was *also* the "reversed [] position" of MSP "pending a new opinion from" the Michigan Attorney General that gave rise to the agency action. ECF No. 46-1 at PageID.836–38.

record in context, the reference to the April 17, 2019 "informational brief" made in an April email between FBI employees is referring to an "informational brief" sent by MSP to the Michigan Attorney General. *See* ECF No. 46-1 at PageID.759. But, again, MSP and the Michigan Attorney General are not parties to *this case*. Thus, the April 17, 2019 "informational brief" is not something ATF considered in its decision,[6] so it is not relevant or necessary for meaningful judicial review. *Axiom*, 564 F.3d at 1381.

**5.**

Finally, Plaintiffs seek to add "any records related to the opinion (if any) of the Michigan Attorney General as it existed *prior to* the issuance of the challenged March 2020 Public Safety Advisory." ECF No. 47 at PageID.1105 (emphasis in original). Defendants assert such supplementation is unnecessary because the Michigan Attorney General filed an amicus brief declaring her opinion regarding Michigan's obligations under the Brady Act "and there is no reason to believe that the State's position on its obligations somehow differed from its position two years ago." ECF No. 49 at PageID.1128, n. 2. But, as discussed above, the Michigan Attorney General's amicus brief is limited to her *current* legal position. As the opinion would not reveal the Michigan Attorney General's legal position between January 2019 and March 2020, it should not be part of the administrative record. *See supra*, Part II.A.

Plaintiffs are correct that the Michigan Attorney General's legal position regarding what MSP's obligations were under the Brady Act between January 2019 and March 2020 is relevant. The lingering questions are what the Michigan Attorney General's legal opinion—and presumably corresponding directive to the MSP—*actually was* and *how* and *when* ATF became aware of it.

---

[6] Though the *contents* of the "informational brief" are not necessary to meaningful judicial review, the reference to it in the administrative record is notable because it proves that, as of April 17, 2019, the Michigan Attorney General had not yet articulated a final legal position on the matter.

*See Gun Owners*, 2021 WL 5194078, at *4 (noting that "all [the ATF] has are ostensible statements by unidentified individuals in [MSP] who spoke to unidentified people in the Michigan Attorney General's office."). But because the Michigan Attorney General is not a party to this case, and the record is notably devoid of any communication between the Michigan Attorney General and ATF, those questions are difficult to answer. Indeed, the record suggests the Michigan Attorney General had no interest in communicating with ATF about the issue at all. *See* ECF No. 46-1 at PageID.759 ("As it stands, they are not amenable to having a call.").

However, the record is not clear about whether the Michigan Attorney General ever arrived at a final decision on the issue before the ATF issued the challenged PSA. The administrative record suggests that sometime between January and March 2019, *someone* at the Attorney General's office informed MSP that the legal guidance "ha[d] changed" and that "the issue was delivered to the new [Michigan Attorney General]" but there was "no word yet" on her final opinion. ECF No. 46-1 at PageID.757. In April 2019, someone informed ATF that MSP had sent an "informational brief" to the new Attorney Genera; on April 17, 2019, but no new opinion or guidance had been communicated yet. *Id.* at PageID.759. On May 24, 2019, an MSP representative informed the FBI that it was still "waiting on direction from the Michigan Attorney General." *Id.* at PageID.769.

In sum, there is important background information regarding communications between the Michigan Attorney General and the FBI and ATF about Michigan's legal position and directive to the MSP that is necessary to meaningfully evaluate the basis for ATF's decision. Yet Plaintiffs' request for "any records" related to the Michigan Attorney General's opinion before March 2020 is overbroad. *See* ECF No. 47 at PageID.1105. Indeed, as Defendants note, rather than broad discovery, the "appropriate procedure" is to obtain an additional affidavit from ATF that provides

additional explanation. ECF No. 49 at PageID.1136. Thus, Defendants will be directed to supplement the record with at least one additional affidavit from a knowledgeable ATF or FBI employee addressing the following four inquiries related to their understanding of the Michigan Attorney General's legal position:

1. When ATF became aware of the Michigan Attorney General's changed position on the legal issue.
2. How ATF became aware of the Michigan Attorney General's changed position on the legal issue.
3. What communication, if any, the FBI and/or ATF had with the Michigan Attorney General between January 2019 and March 2020 regarding the issue;
4. Whether ATF ever received communication, from the FBI, MSP, the Michigan Attorney General, or anyone else, that the Michigan Attorney General had rendered a final decision on the issue.

### C.

Finally, Plaintiffs seek permission to engage in "limited discovery" to supplement the record. ECF No. 47 at PageID.1106. But there is a "strong presumption against discovery into administrative proceedings." *NVE, Inc. v. Dep't of Health & Hum. Servs.*, 436 F.3d 182, 195 (3d Cir. 2006).

Dispositively, Plaintiffs have not identified any "reasonable, non-speculative grounds for [their] belief that [] documents were not included in the record." *Blue Ocean Inst. V. Gutierrez*, 503 F. Supp 2d 366, 371 (D.D.C. 2007). Plaintiffs' conclusory statement that they "are entitled to probe as to what other similar records Defendants may have negligently omitted" is nothing more than speculation. ECF No. 47 at PageID.1106. Accordingly, Plaintiffs' request for limited discovery will be denied.

### IV.

Accordingly, it is **ORDERED** that Plaintiff's Motion, ECF No. 47, is **GRANTED IN PART** as follows:

1. It is **ORDERED** that the Michigan Attorney General's amicus curiae brief, ECF No. 46-3 at PageID.1049–72, is **STRICKEN FROM THE ADMINISTRATIVE RECORD**.

2. It is **ORDERED** that Defendants are **DIRECTED** to **SUPPLEMENT THE ADMINISTRATIVE RECORD** by providing at least one affidavit by a knowledgeable ATF or FBI employee **on or before October 27, 2023,** addressing the following inquiries related to ATF's understanding of the Michigan Attorney General's legal position between January 2019 and March 2020:

    1. When ATF became aware of the Michigan Attorney General's changed position on the legal issue;
    2. How ATF became aware of the Michigan Attorney General's changed position on the legal issue;
    3. What communication, if any, the FBI and/or ATF had with the Michigan Attorney General between January 2019 and March 2020 regarding the issue;
    4. Whether ATF ever received communication, from the FBI, MSP, the Michigan Attorney General, or anyone else, that the Michigan Attorney General had rendered a final decision on the issue.

Further, it is **ORDERED** that Plaintiff's Motion, ECF No. 47, is **DENIED IN PART** as to all other requests.

Further, it is **ORDERED** that the Parties are **DIRECTED** to file briefing as follows:

| Filing | Filed on or before |
|---|---|
| Plaintiffs' Motion for Summary Judgment | December 1, 2023 |
| Defendants' Response to Plaintiff's Motion for Summary Judgment | December 22, 2023 |
| Defendants' Cross-Motion for Summary Judgment | December 22, 2023 |
| Plaintiffs' Reply to its Motion for Summary Judgment | January 12, 2024 |
| Plaintiffs' Response to Defendants' Motion for Summary Judgment | January 12, 2024 |
| Defendant's Reply to its Cross-Motion for Summary Judgment | February 2, 2024 |

**This is not a final order and does not close the above-captioned case.**

Dated: September 27, 2023

s/Thomas L. Ludington
THOMAS L. LUDINGTON
United States District Judge