UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

| | |
|---|---|
| GUN OWNERS OF AMERICA, INC., *et al.* <br><br> Plaintiffs, <br> v. <br> U.S. DEPARTMENT OF JUSTICE, *et al.*, <br><br> Defendants. | Case No. 1:20-cv-10639-TLL-PTM <br><br> Hon. Thomas L. Ludington |

### SECOND DECLARATION OF ERIC M. EPSTEIN

I, Eric M. Epstein, hereby declare, under penalty of perjury pursuant to 28 U.S.C. § 1746, as follows:

1. I am employed as the Senior Policy Counsel (Firearms and Explosives) for the Bureau of Alcohol, Tobacco, Firearms, and Explosives (ATF), United States Department of Justice (DOJ). I have been in this position for almost nine years, and have been an ATF attorney for over 30 years. In this position, I review, draft, and interpret the laws and regulations within the authority of ATF, including the Gun Control Act of 1968 (GCA), as amended, and make policy recommendations to executive staff within ATF and

DOJ. This declaration is based on my personal knowledge and belief, as well as information conveyed to me by ATF and Federal Bureau of Investigation (FBI) personnel in the course of my official duties.

2. This declaration supplements my prior declaration on January 21, 2022, and responds to the Court's Order on September 27, 2023, requesting answers to four questions.

3. By letter dated February 7, 2006, Mike Cox, Attorney General for the State of Michigan (Michigan AG), requested recognition by ATF that a Concealed Pistol License (CPL) issued by the State of Michigan qualified as an alternative to the National Instant Criminal Background Check System (NICS) check. The letter explained that the "application process to acquire a concealed pistol permit is an arduous one, requiring extensive training and a thorough background check by a law enforcement agency," citing M.C.L. § 28.425b. The letter further explained that under Michigan law, as recently amended in 2005, before a license is issued, the licensing agency must determine through NICS that the applicant is not prohibited under federal law from possessing or transporting a firearm.

4. On March 24, 2006, ATF issued an Open Letter to all Michigan Federal Firearms Licensees advising them that a CPL issued on or

after November 22, 2005 qualified as an alternative to a NICS check. NICS is administered by the FBI's Criminal Justice Information Services Division (CJIS).

5. On December 1, 2015, the Michigan State Police (MSP) began issuing CPLs.

6. In 2017, ATF learned from CJIS that although MSP was accessing the NICS databases, MSP was not conducting the necessary follow-up to determine whether a CPL applicant was in fact prohibited from possessing firearms if the NICS Indices showed a potential, but not definitive, federal prohibition for which there was no state law equivalent. In particular, MSP legal advisor Steve Beatty had opined in a May 11, 2017 email sent to CJIS, and during a June 17, 2017 teleconference in which I participated, that MSP was not legally required by Michigan state law to "unilaterally investigate, make, and report federal firearms disqualifications on behalf the federal government" or otherwise interpret Federal law. Assistant Attorney General Patrick Fitzgerald of the Michigan AG's Office participated in this teleconference and appeared to support MSP's legal position.

7. As I stated in my January 21, 2022 declaration, ATF interprets the GCA, 18 U.S.C. § 922(t)(3)(A)(ii), to require authorized State officials to apply, *but not to interpret*, Federal law when determining whether a

permit applicant is prohibited from possessing firearms, even in the absence of a state law equivalent. To assist Michigan State officials in applying Federal law, during the June 17, 2017 conference call, CJIS offered to conduct Federal prohibitor training for Michigan officials as it does for numerous other states with NICS alternative permits. Additionally, during that call, ATF Acting Division Counsel (Detroit Field Division) Beth Chatelain offered to assist Michigan officials with specific cases where they may be having particular difficulty applying Federal law to make prohibited person determinations.

8. ATF has recognized at least 24 other states with qualifying NICS alternative permits. These states must conduct research to verify from the information available to them whether the permit applicant is under any federal firearms possession prohibitions. *See* https://www.atf.gov/rules-and-regulations/permanent-brady-permit-chart.

9. In July 2018, MSP informed CJIS and ATF that the then-Michigan AG had granted MSP the "authority" to make determinations regarding whether a misdemeanor crime of domestic violence (MCDV) was prohibiting pursuant to 18 U.S.C. § 922(g)(9).

10. However, on March 21, 2019, Kevin Collins of MSP advised Jill Montgomery of CJIS that MSP would no longer be abiding by the

previous direction regarding research for CPL applications because a new Michigan AG (Dana Nessel) had been elected in January. As a result, 54 CPL applications were being held pending new guidance. MSP's updated position was relayed by Ms. Montgomery to Joann Garrison of CJIS, who emailed it to me on March 22, 2019.

11. On April 9, 2019, Ms. Garrison emailed me and relayed that Mr. Collins had now indicated that although CPL applications had been on hold needing research, MSP legal counsel had now advised MSP to move those applications along. As a result, 63 applications were pushed to the county clerks for issuance, and "[t]his tells the county clerk the applications were qualified by the MSP." Fifty (50) CPL applications were approved and issued without appropriate vetting.

12. Based on an April 16, 2019 email from Ms. Garrison, the availability regarding a date and time for a call with the Michigan AG's Office, and ATF and CJIS was being discussed. A week later, in an email on April 22, 2019 from Ms. Garrison to me and FBI legal counsel Julie Bumgardner, Kevin Collins of MSP "indicated that MSP legal counsel spoke with their AG and they are not interested in having a call to discuss matters that have been previously talked about. They are standing firm that they do not have to conduct research for MCDV." The email further stated that that MSP was waiting to

receive an opinion from the Michigan AG resulting from an informational brief that MSP completed and sent to the Attorney General on April 17, 2019.

13. To the best of my recollection, the April 22, 2019 email was the first time it was communicated to ATF that the Michigan Attorney General's Office had, at least informally, agreed with Mr. Beatty's legal position to revert back to the State of Michigan's May 2017 to July 2018 position that MSP could not lawfully conduct further research on MCDV convictions under Michigan state law. I interpreted MSP's pending request for an "opinion" from the Michigan AG to be a request for issuance of a formal written legal opinion under M.C.L. § 14.32. *See* https://www.michigan.gov/ag/about/faqs/about/ag-opinion#:~:text=Michigan%20law%2C%20MCL%2014.32%2C%20provides,.%20.%20.%22%20Therefore%2C%20private.

14. On April 30, 2019, Ms. Garrison emailed me inquiring as to next steps because Michigan was "not amenable to a discussion on the permit research issue." Ms. Garrison promised to forward the Michigan AG opinion to ATF once she received it.

15. On May 2, 2019, I hosted a conference call between ATF and CJIS personnel to discuss the Michigan AG's refusal to discuss the permit

research issue with ATF. Participating on the call was ATF Detroit Field Division attorney Stephen McQuillan.

16. On May 16, 2019, Mr. McQuillan had a call with Ms. Garrison, and according to his notes, Ms. Garrison stated that "what Michigan wanted NICS to do, NICS doesn't do for any state."

17. That same day, Mr. McQuillan had a lengthy (almost 3 hour) phone call with Mr. Beatty to discuss Michigan's legal position. According to Mr. McQuillan's notes, which are attached to this declaration, Mr. Beatty stated that: (a) MSP had "solicited inputs from AG"; (b) "AG provided guidance to MSP on CPLs"; (c) MSP is "not doing federal firearms determinations," and (d) Mr. Beatty had asked ATF to "show us where under the federal law … requires us to do that."

18. A CJIS audit of Michigan's CPL Program was scheduled for June 2019. On May 24, 2019, Ms. Garrison emailed ATF with information that the CJIS Audit Unit acquired during its pre-audit process. The pre-audit confirmed that 50 CPLs were issued without research, and that MSP did not believe it was responsible for research. Even though MSP had already conveyed its legal position on the issuance of permits, Mr. Collins stated they (MSP) are "currently waiting on direction from the Michigan Attorney General."

19. In response to a question posed by ATF to FBI regarding whether MSP was pulling police reports to check for prohibiting MCDV convictions, Ms. Garrison via email dated May 28, 2019, responded, "Yes. MSP has advised they will request the documentation needed to research the [MCDV] prohibition however they are not finalizing any research as they believe the FBI or ATF should review the documentation and determine if it meets the federal prohibition. They have admitted to issuing permits when there is a potential prohibition that has not been established or cleared."

20. A CJIS closing conference with Michigan officials to discuss its audit findings was scheduled for June 27, 2019. As of June 6, 2019, ATF representatives planned to attend the closing conference.

21. However, on June 17, 2019, Mike Baker, CJIS Audit Unit supervisor, sent an email to Curtis Gilbert, then ATF's Deputy Assistant Director for Enforcement Programs and Services (EPS), which stated in relevant part:

> I have been told the [sic] Mr. Collins was unsure about ATF coming to the out brief. He said that Michigan was not ready to meet with the ATF until the AG came back with an opinion on the matter. Last Thursday, Mr. Collins advised Cheryl that his legal staff stated again they are not ready to meet with the ATF yet. They do have a meeting scheduled this week with the AG but do not anticipate any

> opinion coming out of it.
>
> I just wanted you to be aware of Michigan's mindset with ATF attending before you went into the meeting. If the AG's office is not represented, the state representative(s) most likely will fall back on the fact they are waiting for an opinion from the AG on the matter."

The next day, Mr. Gilbert conveyed this message to others at ATF.

22. On July 22, 2019, Mr. Gilbert received an email from Mr. Baker informing him "that there are 13 permits that were denied and 50 that were sent to the counties with a 'qualified' response (the county could have denied them for other reasons based on their research but we do not have the end results). Michigan has maintained that list to go and revoke the permits, if approved at the county level and the AG decision supports the decision."

23. In an internal ATF email discussion on July 5, 2019, EPS decided that in light of Michigan officials' refusal to meet with then-DAD Gilbert, and the public safety risk of issuing CPLs to potentially prohibited persons, ATF should begin the process of rescinding Michigan's CPL as a NICS alternative by drafting a Public Safety Advisory in July 2019.

24. In an August 20, 2019 email to CJIS, I stated that, as far I was aware, MSP was still waiting on an opinion from the Michigan AG, which may or may not be forthcoming, and as such, ATF could no longer wait for an opinion and was drafting a Public Safety Advisory regarding the Michigan CPL.

25. The Public Safety Advisory went through several rounds of edits within ATF and the Department of Justice through early 2020.

26. With the Public Safety Advisory finalized, on or about March 2, 2020, ATF's then Chief of Staff Joe Allen spoke with Michigan AG's Director of Operations Christine Grossi to advise her that the Public Safety Advisory and accompanying letter to the AG were forthcoming. Mr. Allen was told that AG Nessel was not available for a call that day "but will be briefed by her staff tonight and may request a call tomorrow."

27. On March 3, 2020, Mr. Allen emailed Ms. Grossi copies of the letter and Public Safety Advisory for review, and stated that ATF would "not proceed until you had an opportunity to review." Ms. Grossi responded that they had an opportunity to review the letter.

28. Later that day, ATF issued the Public Safety Advisory to all Michigan Federal Firearms Licensees explaining that ATF had received information from the CJIS Audit Unit that Michigan CPLs have

been, and continue to be, issued to persons who may be prohibited under Federal law from possessing firearms. The advisory then rescinded ATF's Open Letter of March 24, 2006, and advised Michigan licensees that they were required to conduct a NICS background check prior to the transfer of a firearm to a non-licensee, even if the individual possesses a valid, unexpired CPL.

29. To my knowledge, ATF never received a communication from FBI, MSP, the Michigan AG, or anyone else, that the Michigan AG had rendered a formal opinion regarding the NICS background check research issue. I have also been unable to locate any such opinion on the Michigan AG's public website, https://www.michigan.gov/ag/opinions.

I declare under penalty of perjury that the foregoing is true and correct.

Executed this 9th day of November, 2023.

_____

Eric M. Epstein
Senior Policy Counsel (Firearms and Explosives)
Bureau of Alcohol, Tobacco, Firearms and Explosives
United States Department of Justice