# UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF MICHIGAN
## NORTHERN DIVISION

GUN OWNERS OF AMERICA, INC. et al.,
          Plaintiffs,

                                        Case No. 1:20-cv-10639-TLL-PTM
v.                                      Hon. Thomas L. Ludington

U.S. DEPARTMENT OF JUSTICE et al.,
          Defendants.

---

## PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT

COME NOW Plaintiffs, GUN OWNERS OF AMERICA, INC. and DONALD J. ROBERTS II, by and through counsel, and hereby move this Court for entry of summary judgment in their favor.  In support of their Motion, Plaintiffs respectfully submit the accompanying Memorandum in Support of Plaintiffs' Motion for Summary Judgment.

                            Respectfully submitted,

Dated: January 8, 2024      /s/ Kerry L. Morgan
                            *Kerry L. Morgan (P32645)
                            PENTIUK, COUVREUR & KOBILJAK, P.C.
                            2915 Biddle Avenue, Suite 200
                            Wyandotte, MI 48192
                            Main: (734) 281-7100
                            F: (734) 281-7102
                            kmorgan@pck-law.com
                            *Counsel for Plaintiffs

                            Stephen D. Stamboulieh
                            Stamboulieh Law, PLLC
                            P.O. Box 428

1

Olive Branch, MS 38654
(601) 852-3440
MS Bar No. 102784
stephen@sdslaw.us

## **CERTIFICATE OF SERVICE**

I, Kerry L. Morgan, hereby certify that I have filed with the Clerk of this Court a true and correct copy of the foregoing document or pleading, utilizing this Court's CM/ECF system, which generated a Notice and delivered a copy of this document or pleading to all counsel of record.

Dated: January 8, 2024        /s/ Kerry L. Morgan
                              Kerry L. Morgan

## UNITED STATES DISTRICT COURT
### FOR THE EASTERN DISTRICT OF MICHIGAN
### NORTHERN DIVISION

GUN OWNERS OF AMERICA, INC. et al.,
       Plaintiffs,

                              Case No. 1:20-cv-10639-TLL-PTM

v.                                   Hon. Thomas L. Ludington

U.S. DEPARTMENT OF JUSTICE et al.,
       Defendants.

---

### MEMORANDUM IN SUPPORT OF PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT

# TABLE OF CONTENTS

ISSUES PRESENTED . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . iii

STATEMENT OF CONTROLLING AUTHORITY . . . . . . . . . . . . . . . . . . . . . . . iv

INDEX OF AUTHORITIES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . v

ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

    I.    Defendants' Legal Position Has Been Soundly Rejected . . . . . . . . . . 1

    II.   Defendants' October 2022 Record Supplementation Was
          Unhelpful . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

    III.  ATF's November 2023 Declarations Do Not Move the Ball . . . . . . . . 6

          A.    The Speculation Offered in the Second Epstein
                 Declaration Conflicts with the Record . . . . . . . . . . . . . . . . . . . 7

          B.    The Epstein Declaration Is Highly Objectionable
                 on Other Grounds, and Should Be Struck . . . . . . . . . . . . . . . 15

    IV.  Defendants Having Provided No Further Evidence,
          Plaintiffs Must Prevail . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

          A.    Federal Law Looks Only to the Plain Text of State Law . . . . . 17

          B.    The Statutory Context Supports Plaintiffs' Interpretation . . . . 19

    V.   Even if the Michigan Attorney General Had Taken a Definitive
          Position (as of March 2020), Vacatur Is Still Required . . . . . . . . . . 22

    VI.  The 2020 PSA Violates the APA . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

## ISSUES PRESENTED

1. Does MCL 28.426(2) qualify as a matter of law for the exception provided for in 18 U.S.C. § 922(t)(3)?

    Plaintiffs say "Yes"
    Defendants say "Yes"

2. Whereas MCL 28.426(2) qualifies as a matter of law for the exception provided for in 18 U.S.C. § 922(t)(3), have Defendants provided justification sufficient to disqualify the Michigan CPL from being used under that exemption?

    Plaintiffs say "No"
    Defendants say "Yes"

## STATEMENT OF CONTROLLING AUTHORITY

MCL 28.426(2) qualifies as a matter of law for the exception provided for in 18 U.S.C. § 922(t)(3). ATF has no authority under federal law to supplement that statute with additional criteria, or to declare the Michigan Concealed Pistol License ineligible for that exception based on how MCL 28.426(2) is being implemented in practice by the Michigan State Police.

# INDEX OF AUTHORITIES

STATUTES

5 U.S.C. § 706(2)(A) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24, 25

18 U.S.C. § 922(t)(3) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *passim*

18 U.S.C. § 922(t)(4) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19, 20

MCL 28.426(2) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18, 19

RULES

F.R.E. 602 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

F.R.E. 1002 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

REGULATIONS

27 C.F.R. § 478.102(d)(1)(iii) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

CASES

*Am. Fid. Bank & Tr. Co. v. Heimann*, 683 F.2d 999 (6th Cir. 1982) . . . . . . . . . . . 23

*DOC v. New York*, 139 S. Ct. 2551 (2019) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*Ky. Waterways Alliance v. Johnson*, 540 F.3d 466 (6th Cir. 2008) . . . . . . . . . . . . 24

*Makhamreh v. AG DOJ*, 2020 U.S. Dist. LEXIS 194653
    (S.D. Ohio Oct. 20, 2020) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

*Michigan v. EPA*, 576 U.S. 743 (2015) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

*Michigan ex rel. Oakland Cnty. Prosecutor v. Dep't of Corr.*,
    199 Mich. App. 681 (1993) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

*Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.*,
    463 U.S. 29 (1983) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

*Ohio Pub. Interest Research Grp., Inc. v. Whitman*,
    386 F.3d 792 (6th Cir. 2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

*Sierra Club v. Slater*, 120 F.3d 623 (6th Cir. 1997) . . . . . . . . . . . . . . . . . . . . . . . 24

*United States v. Coss*, 677 F.3d 278 (6th Cir. 2012) . . . . . . . . . . . . . . . . . . . . . . . 18

MISCELLANEOUS AUTHORITIES

Antonin Scalia & Brian A. Garner, Reading Law:
    The Interpretation of Legal Texts (2012) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

## STATEMENT OF UNDISPUTED FACTS

The parties previously agreed (ECF #17, 21), through counsel, to the following Statement of Undisputed Facts in Support of the parties' briefing on their respective motions for summary judgment. These facts were agreed to as undisputed solely for the purposes of summary judgment in the above-captioned litigation and not for any other purposes. With the exception of updating Mr. Roberts' permit expiration date, and elimination of reference to exhibits that are not included here, Plaintiffs submit the same set of undisputed facts verbatim.

1.      Plaintiff, Donald J Roberts, II, is a United States citizen.

2.      The events or omissions giving rise to this suit occurred in Roscommon County, Michigan, a county within this district.

3.      As of March 7, 2020, Mr. Roberts had no disqualification that would prevent him from acquiring, keeping, or bearing arms.

4.      Mr. Roberts is a member of Gun Owners of America, Inc.

5.      Mr. Roberts is a resident of McBain, Michigan.

6.      Mr. Roberts possesses a valid unexpired Michigan CPL expiring February 24, 2026.

7.      On March 7, 2020, Mr. Roberts visited a federal firearms licensee doing business as H&H Fireworks, Guns and Sporting Goods at 8979 W. Houghton Lake Dr., Houghton Lake, MI 48629.

8.    Mr. Roberts visited said FFL for the purpose of purchasing a shotgun with his unexpired Michigan CPL.

9.    Upon inquiry and presentment of his CPL, Mr. Roberts was advised that sale of the firearm using his unexpired Michigan CPL could not be completed unless he submitted to a FBI NICS background check, consistent with the ATF's March 3, 2020, Michigan Public Safety Advisory.

10.    Consistent with ATF instructions, the FFL refused to make the sale, and Mr. Roberts left the store without purchasing the firearm.

11.    Were it not for the challenged agency action, Mr. Roberts would, subject to the discretion of the FFL, be able to use his Michigan CPL in lieu of a background check to purchase firearms at a federally licensed firearms dealer, as authorized by 18 U.S.C. § 922(t)(3).

12.    Plaintiff, Gun Owners of America, Inc. ("GOA") is a California non-stock corporation with its principal place of business at 8001 Forbes Place, Springfield, VA 22151.

13.    GOA is organized and operated as a non-profit membership organization that is exempt from federal income taxes under IRC § 501(c)(4).

14.    GOA was incorporated in 1976 to preserve, protect, and defend the Second Amendment rights of gun owners.

15.     GOA has thousands of members and supporters, including residents of the Eastern District of Michigan, who possess Michigan CPLs, and who would use them to purchase firearms, but for the challenged agency action.

16.     On October 29, 1998, ATF sent an "OPEN LETTER TO ALL MICHIGAN FEDERAL FIREARMS LICENSEES," stating that "[t]he Michigan permit to purchase a handgun ... will [] qualify as an alternative to the NICS check...."

17.     On March 24, 2006, Defendant ATF issued an "Open Letter to Michigan Federal Firearms Licensees" ("2006 Open Letter") which stated that, "Michigan's Concealed Pistol Licenses (CPLs) issued on or after November 22, 2005 will qualify as an alternative to a [NICS] check."

18.     ATF's 2006 Open Letter instructed Michigan FFLs that, when transferring firearms, they would be permitted to accept Michigan CPLs in lieu of running a NICS check.

19.     On March 3, 2020, ATF issued a "PUBLIC SAFETY ADVISORY TO ALL MICHIGAN FEDERAL FIREARMS LICENSEES," which states that ATF's "March 24, 2006 [letter] is rescinded as of the date of this letter...."

## BACKGROUND

The facts and procedural history of this case have been well documented, not only in the Sixth Circuit's opinion (6th Cir. ECF No. 35-2), but also in this Court's orders (ECF Nos. 39, 55).  *See also* ECF No. 17 at PageID.414-18 (explaining the statutory foundation).

## ARGUMENT

## I.   Defendants' Legal Position Has Been Soundly Rejected.

On remand, Defendants begin at a marked deficit.  The Sixth Circuit flatly rejected their legal position,[1] finding in Plaintiffs' favor on several key issues.  First,

---

[1] The Sixth Circuit found nothing it liked about Defendants' "far-reaching position … on what state officials must do to ferret out state-law misdemeanor convictions that may implicate federal prohibitions."  ECF No. 35-2 at 7; *see* ECF No. 21 at PageID.465 (ATF claiming that MSP must verify information in NICS "and other 'information'....").   Rather, as the Sixth Circuit explained, requiring "the investigation by the Michigan State Police of *all* facts that might bear on the mismatch problem … is not what the Brady Act says."  ECF No. 35-2 at 8.  Noting the "difficult matching problems" involved when demanding *state* officials make determinations about the application of *federal* law to often-vague state law convictions, the Court explained that "[w]e cannot take one phrase ('verify the information available') and give it a different, and far more burdensome, meaning ('verify that the circumstances of the underlying offense do not violate federal law').  No such directive appears in the statute.").  *Id.*

In sum, as this Court explained, "the Sixth Circuit criticized ATF's approach for lacking a sound textual basis," and "refused to adopt ATF's interpretation that puts the onus for additional research on MSP."  ECF No. 55 at PageID.1160-61.  Likewise, the Sixth Circuit had little appetite for Defendants' argument that "the mere presence of erroneous permit grants in the past establish[es] authority by itself to remove a State from the eligibility list."  ECF No. 35-2 at 8.  Of course, that was the basis for ATF's decision, as stated in the 2020 PSA:  "They [MSP] have admitted to issuing permits when there is a potential prohibition that has not been established

1

after describing the statutory requirements for eligibility under 18 U.S.C. § 922(t)(3), the Sixth Circuit agreed with Plaintiffs that "Michigan law seems to do what federal law requires...." ECF No. 35-2 at 6. In other words, looking only at the face of the Michigan statute, Plaintiffs prevail. And as the Sixth Circuit further explained, "[h]istory suggests a similar conclusion." *Id.* Indeed, the "Michigan legislature sought to bring its law in line with the Brady Act exception" (*id.* at 2-3), adopting language that would track the federal statute, as explained by ATF to Michigan. *See* ECF No. 16-1 at PageID.136. Indeed, as the Sixth Circuit noted, "ATF approved the Michigan permitting system in 2006, and the relevant terms of the Michigan law have not changed since then." ECF No. 35-2 at 6.

Next, the Sixth Circuit explained that the text of state law "usually will suffice by itself." *Id.* However, the Court explained this is "not always" the case, allowing for a limited "inquiry into non-statutory evidence of state law," and thus leaving open the possibility on remand that there might be either (i) a "state-court decision that dilutes the apparent meaning of the statute" or (ii) "perhaps an opinion by the Michigan Attorney General that casts light on the statute." *Id.* at 6-7, 9 (rejecting ATF's contrary argument, *see* ECF No. 21 at PageID.455, 470, that, MSP "legal counsel … promulgate[d] … a change in state law…. State law has thereby

---

or cleared." ECF No. 58-1 at PageID.1204 ¶19 (citing record); *see also* ECF No. 55 at PageID.1168 n.5. In other words, the Sixth Circuit has already rejected the foundation underpinning the 2020 PSA.

changed"). Of course, Defendants have not cited to any Michigan state court opinion on this issue, nor are Plaintiffs aware of any. Neither was the Sixth Circuit. *Id.* at 9 ("ATF has not shown a state-court decision...."). Thus, ATF's only remaining option is to produce a definitive pre-existing Michigan AG opinion[2] which, as the Sixth Circuit explained, was not to be found in the then-existing administrative record, noting that ATF "has not obtained an opinion of the Michigan Attorney General to like effect.... All it has are ostensible statements by unidentified individuals … who spoke to unidentified people...." *Id.* In other words, the Sixth Circuit rejected the administrative record before it on appeal as insufficient to justify the 2020 PSA – something more is needed.[3]

Thus, on remand, this Court provided ATF with not one – but two – opportunities to unilaterally supplement the record and provide evidence

---

[2] Tellingly, prior Michigan Attorneys General (albeit, not the current Attorney General) have taken legal positions deemed compliant with ATF. *See* ECF No. 25 at PageID.552 (referencing then-Attorney General Mike Cox's February 7, 2006 letter and ATF's subsequent March 24, 2006 letter acknowledging agreement with AG Cox's assessment that the Michigan law qualifies); ECF No. 16-1 at PageID.104 (discrediting then-Attorney General Schuette's 2018 opinion as "informal").

[3] The Sixth Circuit also gave another purpose for remand: the opportunity for "negotiation and mediation, including the possibility of a negotiation that includes the Michigan Attorney General and the Michigan State Police." ECF No. 35-2 at 10. But as this Court has explained, "neither the MSP nor the Michigan Attorney General appear to have any interest in the subject and are not parties to this case." ECF No. 55 at PageID.1156. And Defendants refuse to make a few NICS determinations for Michigan: "what Michigan wanted NICS to do, NICS doesn't do for any state." ECF No. 58-1 at PageID.1203 ¶16.

demonstrating the position of the current Michigan Attorney General *as it previously existed* when ATF adopted the 2020 PSA in March of 2020. ECF No. 39 at PageID.646; ECF No. 55 at PageID.1171. But after all of Defendants' new submissions and declarations attempting to justify their actions, no evidence of a Michigan AG opinion has been found. In fact, Defendants finally admit as much, conceding that "*ATF never received a communication from ... anyone* ... that the Michigan AG had rendered a formal opinion regarding the NICS background check research issue." ECF No. 58-1 at PageID.1207 ¶29 (emphasis added); *see also* ECF No. 58-3 at PageID.1214 ¶14 (same for FBI). Those admissions should be dispositive.

In spite of their admissions, Defendants nevertheless attempt to muddy the waters, referencing (but not actually producing) a host of new documents they claim vaguely support them (but on which they apparently did not rely when enacting the 2020 PSA). In reality, these new sources show nothing more than what the Sixth Circuit already found – that "[a]ll [ATF] has are ostensible statements by unidentified individuals ... who spoke to unidentified people...." ECF No. 35-2 at 9. As Plaintiffs explain below, neither (i) the supplemented administrative record issued by ATF in October of 2022 (ECF Nos. 46, 46-1, 46-2, 46-3) nor (ii) the supplemental declarations provided by Defendants in November of 2023 (ECF Nos. 58, 58-1, 58-3) provide any evidence at all that the current Michigan Attorney

General ever took a definitive position (either way) as to the meaning of Michigan law relevant to the issue here.  Because Defendants failed to accomplish on remand what the Sixth Circuit deemed prerequisite to their success, this Court should enter judgment for Plaintiffs, vacate the 2020 PSA, and restore the ability of law-abiding Michigan CPL holders to use their permits to acquire firearms as Congress intended.

## II.    Defendants' October 2022 Record Supplementation Was Unhelpful.

Defendants' October 2022 filings to supplement the record contained nothing to justify the 2020 PSA.  First, the Michigan Amicus Brief (ECF No. 45) "never once makes any statement as to what the" AG's opinion "was prior to the challenged agency action" (ECF No. 47 at PageID.1095), which is why the Court struck it from the administrative record (ECF No. 55 at PageID.1172).  Second, Defendants' Cochran declaration (ECF No. 46-3) was largely unobjectionable, generally explaining the operation of the NICS system, but failing to advance Defendants' case or provide any justification for the 2020 PSA.  Third, the Epstein Declaration (ECF No. 46-3 at PageID.1076) is in conflict with the Sixth Circuit's opinion, interpreting the "law of the State" so broadly as to include "the practices and interpretations of State officials authorized to interpret State law."  *Id.* ¶10.  This would jive with the 2020 PSA, which revoked Michigan CPL eligibility only because MSP changed its procedures.  But what it differs from is the Sixth Circuit's opinion that, at most, only state court opinions or official AG opinions might be relevant to show the meaning

of state law.  ECF No. 35-2 at 9.  Next, apparently parroting what ATF believes the Sixth Circuit wants to hear, the Epstein declaration claimed that, while state officials must go beyond NICS, they need not "provide limitless resources," a standard devoid of any defining principle.  ECF No. 46-3 at PageID.1077-78 ¶¶11-14; *see* ECF No. 47 at PageID.1098-99.  Finally, the Epstein declaration made various red-herring claims that ATF in the past has offered to help Michigan make NICS determinations, claims that are belied by the record.  ECF No. 46-3 at PageID.1078 ¶15; *see* ECF No. 47 at PageID.1099-1103; ECF No. 17 at PageID.431-33.[4]

## III.    ATF's November 2023 Declarations Do Not Move the Ball.

Defendants' most recent filings do not advance their position, which is unsurprising because, if ATF had any *actual* knowledge of the Michigan AG's position, surely it would have introduced it by now.  Rather, Defendants' offerings serve only to buttress the Court's prior finding (ECF No. 55 at PageID.1170) that, as

---

[4] Certainly, more could be said about Defendants' first attempt to supplement the record (*see* ECF No. 47), but Plaintiffs will not belabor the point, given the Court's prior holdings.  As the Court explained in September of this year, "[t]he exact reason for th[e] change" in MSP policy "remains unclear" even after supplementation.  ECF No. 55 at PageID.1157.  Rather, all that is clear is that MSP's new marching orders came from "unnamed 'legal counsel'...."  *Id.* at PageID.1158.  As the Court explained, the Michigan AG's amicus brief did not provide any additional insight, as it "[n]otably ... did not state what the Michigan Attorney General's position was during the relevant January 2019 to March 2020 time period."  *Id.* at PageID.1163; *see also id.* at PageID.1165 (striking brief from the administrative record on that basis).  Thus, as this Court still found – subsequent to ATF's first attempt to supplement the record – "the record is not clear...."  *Id.* at PageID.1170; *see also id.* at PageID.1169 ("lingering questions"); *id.* at PageID.1157 ("remains unclear").

of the date ATF issued the 2020 PSA, *ATF had no idea* as to the legal position of the Michigan AG, meaning the 2020 PSA was promulgated based on a labyrinth of conjecture, not "reasoned decisionmaking."  *Michigan v. EPA*, 576 U.S. 743, 750 (2015).  Importantly, although ATF's most recent declarations name some names and discuss various conversations, not one clearly involves the current Michigan Attorney General, nor does any clearly recount or convey her position on the issue. For ATF, the third time is *not* a charm.

### A. The Speculation Offered in the Second Epstein Declaration Conflicts with the Record.

In his most recent declaration, Epstein relies on (i) various parts of the record that this Court and the Sixth Circuit have already discounted as insufficient,[5] along with (ii) merely referencing several entirely new documents that do not appear ever to have been previously identified in this case, much less included in the administrative record, including various emails (ECF No. 58-1 at PageID.1199, 1202, 1204-05, 1206 ¶¶6, 14, 19, 21, 23, 24, 27) and handwritten notes made by ATF employees (*id.* at PageID.1203 ¶¶16, 17).  Problematically, the Epstein declaration discusses and attempts to testify as to various conversations that were had between *other* parties (*i.e.*, not Epstein) (*id.* at PageID.1206 ¶26) and to the content of emails by *other* persons (again, not Epstein) (*id.* at PageID.1202, 1205, 1206 ¶¶14, 23, 24)

---

[5] For that reason, Plaintiffs do not address Epstein's declaration to the extent it references documents that already are part of the record.

– recounting and characterizing instead of quoting from them directly.   Best evidence, the Epstein declaration is not.[6]

1.      First, Epstein points to a position advanced in a May 2017 email from, and a June 2017 phone call with, "MSP legal advisor Steve Beatty," claiming that, on that call, "Assistant Attorney General Patrick Fitzgerald of the Michigan AG's Office … appeared to support MSP's legal position."   *Id.* at PageID.1199 ¶6. Apparently relying on nothing but his memory of this six-and-a-half-year-old call, Epstein seemingly divines Fitzgerald's purported "support" from the fact that Fitzgerald "participated in the teleconference," as if merely being present constitutes consent and agreement.   *Id.*   In reality, it appears that MSP's position in 2017 never had the blessing of then-AG Bill Schuette, as MSP soon reversed course *at AG Schuette's direction*.  *Id.* at PageID.1200 ¶9.  <u>Thus, it would seem MSP has a history of acting without AG input.  It thus seems more than possible that, when a new AG entered the scene in 2019, MSP seized that opportunity to again revert to its preferred state of affairs, again without seeking AG guidance.</u>

_____

[6] F.R.E. 1002 requires "[a]n original writing, recording, or photograph … to prove its content unless these rules or a federal statute provides otherwise."  It is clear that some of Epstein's declaration is not based on his personal knowledge and is therefore hearsay.  *See* F.R.E. 602: "A witness may testify to a matter only if evidence is introduced sufficient to support a finding that the witness has personal knowledge of the matter."

**2.** Second, Epstein notes that, in April 2019, "MSP legal counsel" was not able to get any direction from the new Michigan AG ("they are not interested in having a call"), and that MSP was "waiting to receive an opinion." *Id.* at PageID.1201-02 ¶12. This document is already part of the record. However, *what is new is the unsupported conclusion Epstein offers* – supported nowhere in the record – "that the [AG's] Office had, at least informally, agreed" with MSP's position. *Id.* at PageID.1202 ¶13. That is clearly *not* what the communications referenced in ¶12 say (or imply). Not to mention, reaching Epstein's conclusion would require reversal of this Court's and the Sixth Circuit's conclusions that nothing in the existing record shows AG agreement.

**3.** Third, Epstein relies (ECF No. 58-1 at PageID.1203 ¶17) on a heretofore unidentified two-page handwritten document (ECF No. 58-2) that he claims to contain the May 2019 notes of a third-party ATF attorney, "Stephen McQuillan," who participated in a call with "MSP legal advisory Steve Beatty."[7] Interestingly, this ATF attorney's name does not appear on his alleged notes, nor has he submitted a declaration about his purported conversation. Nor does Epstein claim to have any direct knowledge of this alleged McQuillan/Beatty call, apparently

---

[7] Epstein also references *another* McQuillan phone call (ECF No. 58-1 at PageID.1203 ¶16) on the *same* day and about the *same* subject but, tellingly, Defendants omit this set of notes in their filings – indicating ATF produced only the materials most favorable to its position.

relaying only what he found in McQuillan's notes, and offering his guess as to its meaning. Epstein does not claim ever to have spoken with or interviewed McQuillan about the call. In other words, anything Epstein divines from the McQuillan notes is no more persuasive than Plaintiffs' (or this Court's) interpretation of those notes.[8] Yet, despite his seemingly having had nothing to do with the Beatty/McQuillan conversation, Epstein conjures up the conclusion that McQuillan's notes show that (i) "MSP had 'solicited inputs from AG'" and (ii) the "'AG provided guidance to MSP on CPLs,'" and (iii) that this guidance was that "MSP 'is not doing federal firearms determinations.'" ECF No. 58-1 at PageID.1203 ¶17.

Epstein claims that these cobbled-together references show that (i) the *current* Michigan AG provided (ii) *definitive* guidance to MSP (iii) that is *favorable* to ATF. None of that is clear from the notes. First, the excerpts on which ATF rely <u>directly follow</u> discussion of a "non-public opinion from the AG in July 2018 to MSP," and <u>directly precede</u> a statement that the "history goes back a while," ECF No. 58-2 at PageID.1208, indicating that the "AG [who] provided guidance" may have been former AG Bill Schuette in 2018. Second, later on in the notes, McQuillan wrote "reached out to AG's office," which would seem entirely unnecessary had the AG

---

[8] What is more, appearing infrequently (only as an email recipient) in the administrative record, there is no indication that Mr. McQuillan had any substantive participation in the decision to issue the 2020 PSA. It is hard to believe that McQuillan's vague, handwritten notes (on which ATF did not rely until now) could suddenly provide Defendants with some new basis to justify the 2020 PSA.

already provided her opinion to MSP.  *Id.* at PageID.1209.  Third, the notes do not clearly state what "guidance" the ambiguous "AG provided."  Although the Epstein declaration cobbles together various phrases (a), (b), (c), and (d) (ECF No. 58-1 at PageID.1203 ¶17), a careful review shows that Epstein's fragments are *cherry-picked from throughout the notes*.  For example, the line "not doing federal firearms determinations" appears *numerous lines after* the phrase "AG provided guidance to MSP."  ECF No. 58-2 at PageID.1208.  Thus, it is far from clear that Beatty was recounting "AG … guidance," rather than stating MSP's unilateral position.

In addition to conflicting with the notes themselves, Epstein's newfound speculation that the current Michigan AG "provided guidance" at some point prior to the May 16, 2019 McQuillan/Beatty phone call is <u>contradicted by numerous other parts of the record</u>.  First, on May 24, 2019, MSP stated that "it was still 'waiting on direction from the Michigan Attorney General.'"  ECF No. 55 at PageID.1170; ECF No. 58-1 at PageID.1203 ¶18.  Which begs the question – why would MSP advise on May 24 that it is "currently waiting on direction" (ECF No. 58-1 at PageID.1203 ¶18) when it had reported on March 16 that the "AG provided guidance" (*id.* ¶17)?  Both statements cannot be true and, between the two, the cryptic and ambiguous (¶17) must yield to the direct and specific (¶18).  Indeed, an agency's attempt to explain its actions in litigation cannot conflict with the record.  *See DOC v. New York*, 139 S. Ct. 2551, 2574, 2575 (2019) (a "supplemental memo that added new,

11

pertinent information to the administrative record … tells a story that does not match the explanation the [agency] gave for [its] decision …. [P]resented … with an explanation for agency action that is incongruent with what the record reveals … we cannot ignore the disconnect....").

To be sure, Epstein offers a slender reed to bridge the disconnect between MSP *having received* an opinion but *yet later still waiting* on direction.  Epstein claims that he "interpreted" the later statements like the May 24 "currently waiting on direction" (ECF No. 58-1 at PageID.1202, 1203 ¶¶13, 18) and the April 22, 2019 statement "waiting to receive an opinion" (*id.* at PageID.1201-02 ¶12) as meaning waiting for "***a formal written legal opinion*** under M.C.L. § 14.32."  *Id.* at PageID.1202 ¶13 (emphasis added).  In other words, attempting to concoct a narrative to save the 2020 PSA, Epstein divines that the Michigan AG *had issued* her position (just informally), and still planned to formalize it in writing at a later date.  But Epstein's speculation is just that – ad hoc conjecture – conjecture undermined by MSP's subsequent May 24 statement to be "currently *waiting on direction* from the Michigan Attorney General."  *Id.* at PageID.1203 ¶18.  Waiting for "direction" is entirely different than waiting for "an opinion."  *See also id.* at PageID.1204 ¶21 (as of June 17, 2019, MSP still waiting "until the AG came back

with an opinion on the matter.");[9] ECF No. 47 at PageID.1096 (collecting record citations showing "that the Michigan Attorney General had not taken a position on the issue.").

Epstein's later statements provide additional confirmation (undermining his speculation above). As Epstein recounts, prior to its issuance, ATF sent the Michigan AG's office a copy of ATF's draft 2020 PSA, who replied that they "had an opportunity to review the letter" and that the AG "will be briefed by her staff tonight." ECF No. 58-1 at PageID.1206 ¶¶27, 26. And yet the AG *still* did not take action. No doubt, if the AG intended to issue a formal written opinion, she would have taken the opportunity to ask ATF for time before the 2020 PSA was issued. Finally, MSP reported it would be "log[ging]" questionable permits that were issued "pending the outcome of the MI AG opinion." ECF No. 16-1 at PageID.124. If the Michigan AG's position was known, MSP would not still be questioning what "the outcome" would be. Nor would it be necessary for MSP to "log" questionable permits pending the AG's decision (*i.e.*, so that those permits could be revoked if the AG ended up taking a position contrary to MSP's).

---

[9] The FBI's Baker declaration provides even further evidence, explaining that, as of April 22, 2019, "MSP was waiting to receive an opinion from the Michigan AG resulting from an informational brief that MSP completed and sent to the Attorney General on April 17, 2019." ECF No. 58-3 at PageID.1213 ¶9.

Thus, Epstein's serial speculation that the Michigan AG had reached and communicated her decision, and only a "formal opinion" was forthcoming, is belied by the overwhelming weight of other evidence to the contrary.  Epstein's conjecture is quintessentially the post-hoc rationalization that is not permitted in APA cases.  *See* ECF No. 39 at PageID.645.  Rather, it is more than clear that, as of May 24, 2019, MSP was not merely waiting on a formal written opinion, but instead had no idea what position the AG might take, if any.  *See* ECF No. 16-1 at PageID.111 (emphasis added) (as of March, "they are waiting on an opinion from the new AG *as to whether* the new AG agrees with the process … there is *no word* yet on the AG's opinion.").  Again, that is the holding this Court and the Sixth Circuit has already reached.  *See* ECF No. 55 at PageID.1170 ("the record is not clear about whether" the AG "ever arrived at a final decision").  Epstein's attempt to skirt these holdings with a newly concocted "interpret[ation]" of the record should be rejected.

**4.**     At the end of his declaration, Epstein admits that "ATF never received a communication from … anyone … that the Michigan AG had rendered a formal opinion regarding the NICS background check research issue."  ECF No. 58-1 at PageID.1207 ¶29; *see also* ECF No. 58-3 at PageID.1211 ¶4 (reporting, after an exhaustive search, "I am not aware of any direct communications between the FBI and the Michigan Attorney General's Office during the requested timeframe and relevant to the subject matter of this litigation"); *id.* at PageID.1214 ¶14.  Those

14

admissions, coupled with the fact that Epstein's second declaration offers no clear

evidence as to the *current* AG's position as it existed when ATF issued the 2020 PSA,

undermine any possible remaining legitimacy for the PSA.

### B. The Epstein Declaration Is Highly Objectionable on Other Grounds, and Should Be Struck.[10]

The Epstein declaration's references to new emails and notes that have never

before been identified in this case should be struck from the record.  Strikingly, this

Court *already ordered* Defendants to supplement the record on May 27, 2022,

supplementation which ATF assured would include this very sort of "internal

documents and declarations regarding … the Michigan Attorney General's legal

position, and the ATF's legal position...."  ECF No. 39 at PageID.645; *see also id.* at

PageID.643.   Although Plaintiffs raised concern that Defendants might seek to

"cover [their] tracks" with "post hoc justification[s]," ECF No. 35 at PageID.599,

595, the Court at that time found "no reason to believe that such documents" of

"communications between the FBI, ATF, and MSP … were 'deliberately or

negligently excluded.'"  ECF No. 39 at PageID.645.  The presumption of regularity

no longer exists.   Rather, Defendants have offered no explanation for why they

(negligently, at best) did not produce the records Epstein now references, when

previously ordered to do so by this Court – records which Defendants use now for

---

[10] In the alternative, Plaintiffs should be granted the document production and other limited discovery they previously sought.

the very content the Court long ago told ATF to make available for review. Defendants had several opportunities to provide evidence supporting the 2020 PSA – in the administrative record, in prior briefing (in this Court and on appeal), on remand, and in the supplemented administrative record. *See Makhamreh v. AG DOJ*, 2020 U.S. Dist. LEXIS 194653, at *10 (S.D. Ohio Oct. 20, 2020) (citation omitted) (Sixth Circuit "cautioned against the 'improper consideration of evidence outside the administrative record and reliance upon post hoc rationalizations for the agency's action.'").

In sum, this Court should reject ATF's eleventh-hour attempt to interject new evidence into the administrative record, evidence that (i) is ambiguous at best, (ii) states only that some "AG" provide some "guidance" but does not clarify which AG or what guidance, (iii) rests on speculation by one ATF attorney about what cobbled-together fragments of another ATF attorney's notes mean, (iv) includes notes created by a person who the record never shows to have been part of the decisionmaking process, (v) is not attested to by the actual party who purportedly participated in the call and allegedly took the notes, (vi) is contradicted by other, subsequent, better evidence, and (vii) is offered well after this Court ordered ATF to produce *precisely* these sort of documents.  The McQuillan notes cannot form a basis for this Court to determine that ATF's 2020 PSA complies with the APA.  *See Makhamreh* at *10-11.

16

A final issue bears emphasis. Plaintiffs previously sought copies of four specific documents they believed would be relevant and material to answering the Sixth Circuit's questions in this case. ECF No. 47 at PageID.1103. In response, Defendants represented about those documents – twice – that "Defendants <u>do not possess them</u>." ECF No. 49 at PageID.1128 (emphasis added). Specifically with respect to a February 7, 2006 letter from the Michigan AG, Defendants represented "<u>Defendants do not possess a copy of this sixteen-year-old letter</u>, and it therefore was not included in the supplemental record." *Id.* at PageID.1129 (emphasis added). Ultimately, the Court denied Plaintiffs' request for that document based on the Court's conclusion that it was not relevant to the March 2020 PSA. ECF No. 55 at PageID.1167. Yet after representing that "Defendants do not possess a copy," Epstein's declaration brazenly references that same February 7, 2006 letter and quotes at length from it. ECF No. 58-1 at PageID.1198 ¶3. In other words, ATF clearly possesses the document it claimed not to possess, and believes it is relevant.

## IV. Defendants Having Provided No Further Evidence, Plaintiffs Must Prevail.

### A. Federal Law Looks Only to the Plain Text of State Law.

As the Sixth Circuit explained, if this were merely a question of statutory interpretation, Plaintiffs win handily. ECF No. 35-2 at 6. And, although the Sixth Circuit disagreed with Plaintiffs' position that nothing else but the federal and state statutes matters (*id.*), this Court has now given Defendants two opportunities to

17

provide evidence showing a contrary authoritative meaning of Michigan law, yet Defendants have shown nothing of the sort.  Thus, all that remains is the statute to demonstrate the "law of the State" of Michigan. 18 U.S.C. § 922(t)(3).

The Sixth Circuit teaches that the "'starting point' for any question of statutory interpretation 'is the language of the statute itself.'" *United States v. Coss*, 677 F.3d 278, 283 (6th Cir. 2012).  As this Circuit detailed, "Plaintiffs argued that by using the phrase 'the law of the State,' Congress intended for ATF to look no further than the statutory law of the State in question," and "Michigan's CPL law facially satisfies the Brady alternate requirements...."  ECF No. 55 at PageID.1159.

Indeed, the plain language of 18 U.S.C. § 922(t)(3) makes clear that a Michigan CPL facially qualifies as a NICS alternative under federal law, providing that a state permit will qualify as a NICS alternative when "the law of the State provides that such a permit is to be issued only after an authorized government official has verified that the information available to such official does not indicate that possession of a firearm by such other person would be in violation of law." *Id.* § 922(t)(3)(A)(ii) (emphases added).  And here, MCL 28.426(2)'s requirements track the language of 18 U.S.C. § 922(t)(3)(A)(ii), stating that no permit shall be issued until "[t]he issuing agency has determined through the federal national instant criminal background check system that the applicant is not prohibited under federal law from possessing or transporting a firearm." *See* ECF No. 17 at PageID.418-22.

18

Because the state statute complies with the federal statute, and because there is no contrary authoritative statement as to the meaning of "the law of the State" of Michigan, Plaintiffs' statutory, textual argument must prevail.  Certainly, if Congress intended to condition NICS exemption on some degree of state *compliance*, it could have done so.  Absent any such clear directive, reading a compliance requirement *into* the statute fails to provide any limiting principle, as ATF could revoke an entire state's NICS exemption based on *one* local clerk's inadvertent failure to run a NICS check on a *single* permit applicant.  *See* ECF No. 1 at PageID.15 ¶¶52-53; *see* ECF No. 16-1 at PageID.138 (claiming Michigan acted "notwithstanding the express requirements of MCL 28.426").  But Section 922(t)(3) means what it says.  Because MCL 28.426(2) "provides" requirements that accord with federal law, the Michigan PSA revoking Michigan's 922(t)(3) exemption is contrary to law and invalid.[11]

## B.   The Statutory Context Supports Plaintiffs' Interpretation.

---

[11] Another ground for vacatur of the 2020 PSA is the "corrective measures" demanded by ATF of Michigan in order to again qualify CPLs for the Section 922(t)(3) exemption.  *See* ECF No. 23 at PageID.518-20; ECF No. 24 at PageID.543-44 (attempting to walk back ATF's categorical demands).  These demands go far beyond anything in the statute, and the Sixth Circuit rejected ATF's argument that "the mere presence of erroneous permit grants in the past establish[es] authority by itself to remove a State from the eligibility list."  ECF No. 35-2 at 8.  If so, then certainly there is no authority to keep a state removed from the eligibility list going forward unless it agrees to correct "erroneous permit grants."  *But see* ECF No. 25 at Page.ID.568-69 (rejecting that claim).

The statute clearly contemplates a lesser burden on state officials than it imposes on the federal government.  Whereas Section 922(t)(3)(A)(ii) discusses "the information **available to such official**," the very next provision of Section 922(t)(4) discusses "the information **available to the system**...."  Utilizing different language, the statute clearly envisions that there is different (lesser) "information" available to state "officials" than available to the NICS "system."  Indeed, NICS is billed as a centralized repository of criminal records and information from around the country, specially *designed* to contain more information than was otherwise available at the time.[12]  It would make no sense to interpret the statute such that there would be *more* information "available to" a state "official" than to "the system."  Rather, the opposite is true – the "information available to the system" is broad and encompassing, while the "information available to such official" is the information contained in NICS.  27 C.F.R. § 478.102(d)(1)(iii); ECF No. 16-2 at PageID.253 ("the information provided by NICS").

Likewise, whereas Section 922(t)(3)(A)(ii) requires a state official "verify"[13] only that the "information available" in NICS "**does not indicate**" prohibited

---

[12]  *See*  https://www.lb7.uscourts.gov/documents/15-41272.pdf (describing NCIC, one of the three databases utilized by NICS, as "the lifeline of law enforcement—an electronic clearinghouse of crime data that can be tapped into by virtually every criminal justice agency nationwide, 24 hours a day, 365 days a year").

[13]  As Plaintiffs argued, "verify" does not include investigations, gathering records, or making legal determinations as to eligibility.  ECF No. 17 at PageID.421-22.

possession,[14] Section 922(t)(4) requires quite more – that NICS determine that the "information available to the system" "**does not demonstrate**" prohibited possession.    Again, Congress intentionally used disparate language, and "demonstrate" ("to make evident or establish … prove"[15]) clearly imposes a higher standard on NICS than "indicate" ("to be a sign of"[16]) imposes on state officials. Again, a contrary interpretation (that "indicate" somehow imposes the same or some higher duty than "demonstrate") would make no sense, because Congress clearly intended to account for the disparate ability of state officials, as compared to the federal government, to access information and make determinations of federal law.

Finally, the statute requires state officials to verify that "information available … does not indicate that possession … **would be** [*i.e.*, not 'might be'] in violation of law."  In other words, NICS is supposed to "demonstrate" ineligibility, while state officials are merely to check whether NICS "indicate[s]" such a determination has been made.  If NICS does not so indicate, state officials may proceed with licensure. This Court appears to have already reached this determination.  ECF No. 55 at

---

[14] As Michigan explained, certain determinations cannot be made definitively "solely on the basis of information contained in" NICS, ECF No. 45 at PageID.725, which is why Michigan has not been making such determinations.  And the Sixth Circuit clearly explained that no such determination is required.  ECF No. 35-2 at 8. No such directive appears in the statute.").
[15] https://www.dictionary.com/browse/demonstrate.
[16] https://www.dictionary.com/browse/indicate.

PageID.1161 (the statute "does not require the State to 'verify that the circumstances of the underlying offense do not violate federal law.'").

In short, "a material variation in terms suggests a variation in meaning." Antonin Scalia & Brian A. Garner, <u>Reading Law: The Interpretation of Legal Texts</u> 170 (2012). Congress clearly designed "the system" so that NICS – not state officials – would have the greatest "information available." And for that reason, Congress clearly intended that NICS – not state officials – would make final determinations (*i.e.*, "demonstrat[ions]") as to a person's eligibility.[17]

## V.   **Even if the Michigan Attorney General Had Taken a Definitive Position (as of March 2020), Vacatur Is Still Required.**

*Even if* the Michigan AG had taken a definitive stance on the issue, the required result (vacatur of the 2020 PSA) would not change. First, because the Sixth Circuit appears to agree with the position taken by MSP – that MSP is *not required* to track down every errant state record across the country, delve into the details of often-difficult-to-access court records, conduct extensive legal research into nuanced issues, and issue binding determinations on the application of federal law to state records. Rather, as the Sixth Circuit explained, "the investigation by the

---

[17] This is consistent with the current Michigan AG's position, who stated that the MSP must only verify "using information that is contained in the Michigan law enforcement information network and in the [NICS]." ECF No. 45 at PageID.722. MSP need not do the job of NICS to track down information outside either system, research factual and legal issues, and conclusively "demonstrate" a person's ineligibility.

Michigan State Police of *all* facts that might bear on the mismatch problem … is not what the Brady Act says."  ECF No. 35-2 at 8.  These "difficult matching problems" (*id.* at 7) have been detailed in the Michigan amicus brief (ECF No. 45 at PageID.724-25), along with Plaintiffs' prior briefing (ECF No. 23 at PageID.522 and n.6).  Nor did the Sixth Circuit approve of ATF revoking the Michigan CPL on the grounds that the MSP may not perfectly disqualify every prohibited person.  ECF No. 35-2 at 8.  In other words, even if "the law of the State" of Michigan was as ATF claims it to be in March of 2020, then Michigan would *still* qualify for a Brady exception, because the Sixth Circuit's interpretation of the relevant statutes seems to be in line with the position in Michigan's amicus brief.

Second and, as noted, even if the Michigan AG's position is (or was) what ATF believes it to be *circa* 2020, there is no evidence that ATF knew that when it promulgated the 2020 PSA.  In other words, even if ATF was ultimately correct, its action cannot stand because, when it took that action, ATF *did not know* if it was correct or not.

Third and finally, even if the Michigan Attorney General had taken a position on the issue, it is of no help to ATF.  First, even if Epstein's unsupported speculation, *supra*, were correct, the Michigan AG definitively has not issued a *formal, written* opinion, the only sort that would matter.  And even if she had, it would not bind this Court.  *See Michigan ex rel. Oakland Cnty. Prosecutor v. Dep't of Corr.*, 199 Mich.

App. 681, 691 (1993); *see also Am. Fid. Bank & Tr. Co. v. Heimann*, 683 F.2d 999

(6th Cir. 1982); *see also* ECF No. 47 at PageID.1095; ECF No. 41-2 at PageID.667;

ECF No. 40 at PageID.654 (collecting cases).

**VI.   The 2020 PSA Violates the APA.**

As this Circuit holds, "[u]nder the APA we must set aside any agency action

that is 'arbitrary, capricious, an abuse of discretion, or otherwise not in accordance

with law.' 5 U.S.C. § 706(2)(A)." *Ohio Pub. Interest Research Grp., Inc. v. Whitman*,

386 F.3d 792, 795 (6th Cir. 2004).   Plaintiffs have demonstrated that ATF's action

here is all the things the APA (and this Circuit) say results in a "must set aside"

outcome.   Defendants here have deprived the Court (and the Plaintiffs) of a thorough

and meaningful review of the "whole record or those parts of it cited by a party" (*see*

5 U.S.C. § 706) because, after round and round of supplementation, the parties and

the Court are still left with the realization that the ATF still lacks the information

necessary to reach the conclusion it did.   *See Sierra Club v. Slater*, 120 F.3d 623, 638

(6th Cir. 1997).   As the Sixth Circuit explained, without such information, ATF's

2020 PSA is contrary to law – Section 922(t)(3).

As the Supreme Court has found, an "agency must explain the evidence which

is available, and must offer a 'rational connection between the facts found and the

choice made.'" *Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.*, 463

U.S. 29, 52 (1983).   But speculation and conjecture (*see* ECF No. 21 at PageID.460,

"apparently due to the election of a new state AG, n.2 "appeared to be," PageID.471

"possibly in consultation with the" AG) are not legally compliant alternatives to

substantial evidence (*see Ky. Waterways Alliance v. Johnson*, 540 F.3d 466, 474 (6th

Cir. 2008) ("agency's factual findings should be accepted if they are supported by

substantial evidence on the record")) and the ATF's "choice" to revoke Michigan's

CPL as a Brady alternate has no rational connection to the lack of evidence put up

by the ATF.   As such, ATF's decision here must be set aside as it is arbitrary,

capricious, an abuse of discretion, or otherwise not in accordance with law. *See* 5

U.S.C. § 706(2)(A).[18]

## Conclusion

For the reasons stated here and in prior briefing (ECF Nos. 1, 17, 23, 47), this

Court should vacate the 2020 PSA and enter judgment for Plaintiffs.

Respectfully submitted,

---

[18] In addition, if an agency action is legislative rather than interpretive, then such action must undergo notice-and-comment or be set aside under the APA.  5 U.S.C. § 706(2)(D); Compl. ¶¶65-70; *Mann Constr., Inc. v. United States*, 27 F.4th 1138, 1143 (6th Cir. 2022).  The 2020 PSA was a legislative rule because it "impose[d] new rights or duties and change[d] the legal status of regulated parties," *id.*, so it must be held "unlawful and set aside."  5 U.S.C. § 706(2).  Prior to the 2020 PSA, dealers did not have to perform NICS background checks on CPL holders.  Now, they go to prison if they fail to.  18 U.S.C. §924(a)(5).

Dated: January 8, 2024

/s/ Kerry L. Morgan
*Kerry L. Morgan (P32645)                    Stephen D. Stamboulieh
PENTIUK, COUVREUR & KOBILJAK, P.C.    Stamboulieh Law, PLLC
2915 Biddle Avenue, Suite 200              P.O. Box 428
Wyandotte, MI 48192                          Olive Branch, MS 38654
Main: (734) 281-7100                         (601) 852-3440
F: (734) 281-7102                            MS Bar No. 102784
kmorgan@pck-law.com                        stephen@sdslaw.us
*Counsel for Plaintiffs

## CERTIFICATE OF SERVICE

I, Kerry L. Morgan, hereby certify that I have filed with the Clerk of this Court a true and correct copy of the foregoing document or pleading, utilizing this Court's CM/ECF system, which generated a Notice and delivered a copy of this document or pleading to all counsel of record.

Dated: January 8, 2024            /s/ Kerry L. Morgan
                                  Kerry L. Morgan